1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA 94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@csgrr.com
5      – and –
   DARREN J. ROBBINS (168593)
6  DAVID C. WALTON (167268)
   CATHERINE J. KOWALEWSKI (216665)
7  655 West Broadway, Suite 1900
   San Diego, CA 92101
8  Telephone: 619/231-1058
   619/231-7423 (fax)
9  darrenr@csgrr.com
   davew@csgrr.com
10 katek@csgrr.com

11 Attorneys for Plaintiff

12 [Additional counsel appear on signature page.]

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15 DANNY McCASLAND, Individually and On )  No. C 07 5545
   Behalf of All Others Similarly Situated,  )
16                                          )  CLASS ACTION
                                            )
17                        Plaintiff,         )  COMPLAINT FOR VIOLATION OF THE
                                            )  FEDERAL SECURITIES LAWS
18      vs.                                  )
                                            )
19 FORMFACTOR, INC., IGOR Y.                )
   KHANDROS, RONALD C. FOSTER and          )
20 RICHARD M. FREEMAN,                      )
                                            )
21                        Defendants.        )  DEMAND FOR JURY TRIAL
   _____ )

22

23

24

25

26

27

28

## INTRODUCTION

1.    This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of FormFactor, Inc. ("FormFactor" or the "Company") between April 26, 2006 and October 24, 2007 (the "Class Period"), against FormFactor and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act").

2.    FormFactor engages in the design, development, manufacture, sale and support of semiconductor wafer probe cards worldwide. FormFactor was founded in 1993 and is headquartered in Livermore, California.

3.    During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. As a result of defendants' false statements, FormFactor stock traded at artificially inflated prices during the Class Period, reaching a high of $49.45 per share on August 30, 2006.

4.    On October 24, 2007, after the market closed, the Company announced that adjustments to inventory valuations may be required with respect to periods prior to the third quarter of 2007. In a press release entitled "FormFactor, Inc. Announces Record Revenue Quarter of $125.3 Million, Up 29% Year Over Year," the Company stated:

> FormFactor, Inc. today announced revenue for the third quarter of fiscal year 2007, ended September 29, 2007. The Company posted record quarterly revenue of $125.3 million. These results compare to revenue of $114.1 million, a 10% increase from the second quarter of fiscal 2007 and $96.8 million, a 29% increase from the third quarter of fiscal 2006. The company had a cash balance of $537 million as of September 29, 2007.
>
> "FormFactor delivered another record revenue quarter driven by strength in DRAM, NOR and KGD as we continued to lead the market for advanced probe cards. As existing customers migrated to our new product platforms and we penetrated emerging markets such as Wire Bond Logic, design activity also increased," said Igor Khandros, CEO of FormFactor.
>
> *The Company said that it is unable at this time to release further income statement data with respect to the third quarter. The Company is currently reviewing its historic practices with respect to inventory valuation in light of issues identified by the Company in the course of preparation of financial statements for the third quarter. Based on the review to date management believes that adjustments to inventory valuations may be required with respect to periods prior to the third quarter of 2007. These potential adjustments could change inventory, gross margin, operating margin and net income from the amounts previously reported for the affected periods. The Company has not yet determined the magnitude of these adjustments or whether the adjustments will be reflected in the*

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 1 -

*third quarter financial statements or in a restatement of the affected periods. The Company believes, however, that its third quarter operating margin and net income per share, without giving effect to adjustments in respect of prior periods, should be not less than the 20.5%-21% and $0.38-$0.40 per share, respectively, provided as management guidance in the Q2 earnings call conducted on July 25, 2007.*

*The Company is working to complete the internal review as promptly as practicable.*

5.      On this news, FormFactor's stock declined $7.70 per share to close at $35.54 per share, a one-day decline of nearly 20% on volume of 8.3 million shares, over eight times the average three-month volume.

6.      The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)      The Company failed to properly account for its obsolete inventory; and

(b)      The Company was experiencing production constraints related to its new Harmony product which would significantly increase its costs and expenses in order to accelerate its production capabilities. Furthermore, the production constraints would significantly raise the risk that customers with older generation products would seek alternative sources such as the Company's competitors or seek to renegotiate their contracts with FormFactor placing serious pressure on the Company's future revenue.

7.      As a result of defendants' false statements, FormFactor's stock price traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 28% from their Class Period high.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

9.      (a)      Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

(b)      FormFactor's principal executive offices are located at 7005 Southfront Road, Livermore, California.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 2 -

**PARTIES**

10.    Plaintiff Danny McCasland purchased FormFactor common stock as described in the attached certification and was damaged thereby.

11.    Defendant FormFactor is the leader in advanced wafer probe cards, which are used by semiconductor manufacturers to electrically test integrated circuits, or ICs. The Company's wafer sort, burn-in and device performance testing products move IC testing upstream from post-packaging to the wafer level, enabling semiconductor manufacturers to lower their overall production costs, improve yields, and bring next-generation devices to market. FormFactor is headquartered in Livermore, California with operations in Europe, Asia and North America. Its stock is traded on the Nasdaq market under the symbol FORM.

12.    Defendant Igor Y. Khandros ("Khandros") is, and at all relevant times was, Chief Executive Officer ("CEO") and a director of FormFactor. During the Class Period, Khandros sold 126,450 shares of FormFactor stock reaping nearly $5.8 million in insider trading proceeds. In addition to his 2006 salary of $436,835, in February 2007, Khandros received a cash bonus of $572,000 awarded for fiscal 2006 performance.

13.    Defendant Ronald C. Foster ("Foster") is, and at all relevant times was, Chief Financial Officer ("CFO") of FormFactor. In addition to his 2006 annual salary of $285,962, Foster received a cash bonus of $261,993 awarded for fiscal 2006 performance.

14.    Defendant Richard M. Freeman ("Freeman") is, and at all relevant times was, Senior Vice President, Operations of FormFactor.

15.    Defendants Khandros, Foster and Freeman (the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of FormFactor's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse

1 facts specified herein had not been disclosed to and were being concealed from the public and that

2 the positive representations being made were then materially false and misleading. The Individual

3 Defendants are liable for the false statements pleaded herein at ¶¶18-23.

4                    **FRAUDULENT SCHEME AND COURSE OF BUSINESS**

5          16.      Defendants are liable for: (i) making false statements; or (ii) failing to disclose

6 adverse facts known to them about FormFactor. Defendants' fraudulent scheme and course of

7 business that operated as a fraud or deceit on purchasers of FormFactor common stock was a

8 success, as it: (i) deceived the investing public regarding FormFactor's prospects and business; (ii)

9 artificially inflated the price of FormFactor's common stock; and (iii) caused plaintiff and other

10 members of the Class to purchase FormFactor common stock at inflated prices.

11                                        **BACKGROUND**

12         17.      FormFactor is the leader in advanced wafer probe cards, which are used by

13 semiconductor manufacturers to electrically test integrated circuits, or ICs. The Company's wafer

14 sort, burn-in and device performance testing products move IC testing upstream from post-packaging

15 to the wafer level, enabling semiconductor manufacturers to lower their overall production costs,

16 improve yields and bring next-generation devices to market. FormFactor is headquartered in

17 Livermore, California with operations in Europe, Asia and North America.

18          **DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED**
                            **DURING THE CLASS PERIOD**
19

20         18.      On April 26, 2006, FormFactor issued a press release entitled "FormFactor, Inc.

Announces 2006 First Quarter Financial Results; Record quarterly revenues of $81.3 million; Net
21

income up 119% year over year." The press release stated in part:
22

> FormFactor, Inc. today announced its financial results for the first quarter of fiscal
23 > 2006. Quarterly revenues were a record $81.3 million, up 13% from $71.8 million in
> the fourth quarter of fiscal 2005, and up 60% from $50.9 million for the first quarter
24 > of fiscal 2005.

25 >          "Following 34% revenue growth in 2005, we achieved record revenues based
> on solid operating performance as we successfully ramped our industry-leading
26 > MEMS facility", said Joseph Bronson, President of FormFactor.

27 >          Net income for the first quarter of fiscal 2006 was $10.8 million or $0.25 per
> share on a fully diluted basis, which included $2.5 million or $0.05 of incremental
28 > FAS 123 ® stock option expense net of tax. This compares to $10.5 million or $0.25

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 4 -

per share on a fully diluted basis for the fourth quarter of fiscal year 2005, and $4.9 million or $0.12 per share on a fully diluted basis for the first quarter of fiscal year 2005, both of which exclude incremental stock-based compensation from the adoption of FAS 123 ®. The effective tax rate for the first quarter of fiscal 2006 was 35.9% compared to 29.1% for the fourth quarter of fiscal 2005 impacting net income by $1.1 million or $0.03 per fully diluted share.

Bookings of $95.9 million for the first quarter of fiscal 2006 also set a company record, with an increase of 17% from $82.2 million for the fourth quarter of fiscal 2005 and an increase of 89% from $50.9 million for the first quarter of fiscal 2005.

Cash, cash equivalents, restricted cash and marketable securities increased by $188 million to $402 million at the end of April 1, 2006 reflecting $182 million of net cash proceeds from our follow-on offering executed in March 2006 and $8.7 million of net cash proceeds from operations and other sources.

"Growing demand for the Company's leading-edge advanced technology products continued this quarter. Our innovation continues to drive a strong product pipeline expanding our leadership position across multiple markets," said CEO Igor Khandros.

19.    On July 27, 2006, the Company issued a press release entitled "FormFactor, Inc. Announces 2006 Second Quarter Financial Results; Record quarterly revenues of $92.4 million, up 77% year over year." The press release stated in part:

FormFactor, Inc. today announced its financial results for the second quarter of fiscal 2006, ended July 1, 2006. Quarterly revenues were a record $92.4 million, up 14% from $81.3 million in the first quarter of fiscal 2006, and up 77% from $52.3 million in the second quarter of fiscal 2005.

"FormFactor had another record quarter, as we continued to make significant progress in addressing our target markets," said Joseph Bronson, President of FormFactor. "We are very pleased with the performance of our manufacturing operations and continue to make ongoing productivity and efficiency improvements."

Net income for the second quarter of fiscal 2006 was $15.3 million or $0.32 per share on a fully diluted basis, which included $2.8 million or $0.06 per share of incremental FAS 123 ( R ) stock option expense net of tax. This compares to $10.8 million or $0.25 per share on a fully diluted basis for the first quarter of fiscal 2006, which included $2.5 million or $0.05 per share of incremental FAS 123 ( R ) stock option expense net of tax. Net income for the second quarter of fiscal 2005 was $5.0 million or $0.12 per share on a fully diluted basis, which was prior to the adoption of FAS 123 ( R ).

Bookings of $96.5 million for the second quarter of fiscal 2006 also set a company record. Bookings for the first quarter of fiscal 2006 and second quarter of fiscal 2005 were $95.9 million and $58.0 million, respectively.

"Key to our growth strategy is our ongoing focus on R&D, where our pipeline remains stronger than ever," said Igor Khandros, CEO of FormFactor. "Innovative new products, manufacturing execution and world-wide infrastructure

1    put FormFactor in a unique position to enable the ongoing reduction in the cost of wafer test for our customers and for continuing long-term growth."

2

3    20.    On October 25, 2006, the Company issued a press release entitled "FormFactor, Inc. Announces 2006 Third Quarter Financial Results; Record Quarterly Revenue of $96.8 Million, Up 55% Year over Year." The press release stated in part:

4

5

6    FormFactor, Inc. today announced its financial results for the third quarter of fiscal 2006, ended September 30, 2006. Quarterly revenues were $96.8 million, up 5% from $92.4 million in the second quarter of fiscal 2006, and up 55% from $62.4 million in the third quarter of fiscal 2005.

7

8    "FormFactor had another record quarter as revenue, production and net income reached historical highs. Demand for advanced probe cards in the third quarter continued to reflect the ongoing trends in the market including customers' ramping production for memory and logic, the transition to advanced nodes, and the ongoing need for higher parallelism in wafer test." said Joseph Bronson, President of FormFactor. "Factory capacity continued to ramp, as production efficiencies and yields increased in many segments of our manufacturing operations."

9

10

11

12    Net income for the third quarter of fiscal 2006 was $15.8 million or $0.33 per share on a fully diluted basis, which included $3.9 million or $0.08 per share of incremental FAS 123 ( R ) stock option expense, net of tax. This compares to $15.3 million or $0.32 per share on a fully diluted basis for the second quarter of fiscal 2006, which included $2.8 million or $0.06 per share of incremental FAS 123 ( R ) stock option expense, net of tax. Net income for the third quarter of fiscal 2005 was $9.8 million or $0.23 per share on a fully diluted basis, which was prior to the adoption of FAS 123( R ).

13

14

15

16

17    Bookings for the third quarter of fiscal 2006 were $90.5 million. Bookings for the second quarter of fiscal 2006 and third quarter of fiscal 2005 were $96.5 million and $62.9 million, respectively.

18

19    "We are pleased with our 63% revenue growth year-to-date," said Igor Khandros, Chief Executive Officer of FormFactor. "We are encouraged by customers' interest in our new Harmony™ NAND Flash product. We are confident in business growth opportunities in 2007 and beyond, driven by our robust product development pipeline, supporting multiple growth drivers in our customers' businesses."

20

21

22    21.    On January 31, 2007, the Company issued a press release entitled "FormFactor, Inc. Announces 2006 Fourth Quarter and Year-End Financial Results." The press release stated in part:

23

24    FormFactor, Inc. today announced its financial results for the fourth quarter and fiscal year 2006, ended December 30, 2006. Quarterly revenues were $98.7 million, up 2% from $96.8 million in the third quarter of fiscal 2006, and up 37% from $71.8 million in the fourth quarter of fiscal 2005. Revenues for the fiscal year ended December 30, 2006 were $369.2 million, up 55% from $237.5 million in fiscal year 2005.

25

26

27

28    Net income for the fourth quarter of fiscal 2006 was $18.9 million or $0.39 per share on a fully diluted basis, which included $4.6 million or $0.09 per share of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

incremental FAS 123R stock option expense, net of tax. This compares to $15.8 million or $0.33 per share on a fully diluted basis for the third quarter of fiscal 2006, which included $3.9 million or $0.08 per share of incremental FAS 123R stock option expense, net of tax. Net income for the fourth quarter of fiscal 2005 was $10.5 million or $0.25 per share on a fully diluted basis, which was prior to the adoption of FAS 123R.

Net income for fiscal year 2006 was $60.8 million or $1.29 per share on a fully diluted basis, which included $13.6 million, or $0.29 per share of incremental FAS 123R stock option expense, net of tax, compared to $30.2 million or $0.73 per share on a fully diluted basis for fiscal year 2005.

"We finished 2006 with another record quarter as revenue and profit reached historical highs. 2006 was an exceptional year for FormFactor, with 55% annual revenue growth, fueled by strong contributions to growth from our Memory and Logic businesses. At the same time, we expanded our product offerings in multiple markets," said Igor Khandros, CEO of FormFactor. "We believe the market outlook for advanced probe cards remains strong as we enter 2007."

22.     On April 25, 2007, the Company issued a press release entitled "FormFactor Announces First Quarter 2007 Financial Results." The press release stated in part:

FormFactor, Inc. today announced its financial results for the first quarter of fiscal 2007. Quarterly revenues were a record $102.3 million, up 26% from $81.3 million in the first quarter of fiscal 2006, and up 4% from $98.7 million in the fourth quarter of fiscal 2006.

Net income for the first quarter of fiscal 2007 was $14.8 million or $0.30 per share on a fully diluted basis, which included $5.2 million or $0.11 per share of stock-based compensation expense, net of tax. This compares to $18.9 million or $0.39 per share on a fully diluted basis for the fourth quarter of fiscal 2006, which included $4.8 million or $0.10 per share of stock-based compensation expense, net of tax. Net income for the first quarter of fiscal 2006 was $10.8 million or $0.25 per share on a fully diluted basis, which included $2.8 million or $0.06 per share of stock-based compensation expense, net of tax.

"We had yet another record quarter, as our customers are accelerating their transition to new technology nodes. This trend and our business momentum reaffirm FormFactor's opportunities in 2007 and beyond," said Igor Khandros, CEO of FormFactor.

23.     On July 25, 2007, the Company issued a press release entitled "FormFactor, Inc. Announces Second Quarter 2007 Financial Results." The press release stated in part:

FormFactor, Inc. today announced its financial results for the second quarter of fiscal year 2007, ended June 30, 2007. Quarterly revenues were a record $114.1 million, up 12% from $102.3 million in the first quarter of fiscal 2007, and up 24% from $92.4 million in the second quarter of fiscal 2006.

Net income for the second quarter of fiscal 2007 was $18.6 million or $0.38 per share on a fully diluted basis, which included $4.2 million or $0.08 per share of stock-based compensation, net of tax. This compares to $14.8 million or $0.30 per share on a fully diluted basis for the first quarter of fiscal 2007, which included $5.2

million or $0.11 per share of stock-based compensation, net of tax. Net income for the second quarter of fiscal 2006 was $15.3 million or $0.32 per share on a fully diluted basis, which included $3.1 million or $0.06 per share of stock-based compensation, net of tax.

"FormFactor had another outstanding quarter - setting revenue, bookings, and operating income records. Our 24% year over year growth was fueled by the particular strength of DRAM, as well as healthy NOR Flash and Logic segments. We continued to focus on the development and qualification of new products in Flash, DRAM and Fine Pitch logic to expand our offerings in multiple applications and innovate to lead the market to the next generation of testing technology," said Igor Khandros, CEO of FormFactor.

24.    On October 24, 2007, FormFactor's stock closed at $43.24 per share.

25.    Then, after the close of the market on October 24, 2007, the Company issued a press release announcing accounting issues with respect to its pre-third quarter 2007 results. The release was entitled "FormFactor, Inc. Announces Record Revenue Quarter of $125.3 Million, Up 29% Year Over Year." The press release stated in part:

FormFactor, Inc. today announced revenue for the third quarter of fiscal year 2007, ended September 29, 2007. The Company posted record quarterly revenue of $125.3 million. These results compare to revenue of $114.1 million, a 10% increase from the second quarter of fiscal 2007 and $96.8 million, a 29% increase from the third quarter of fiscal 2006. The company had a cash balance of $537 million as of September 29, 2007.

"FormFactor delivered another record revenue quarter driven by strength in DRAM, NOR and KGD as we continued to lead the market for advanced probe cards. As existing customers migrated to our new product platforms and we penetrated emerging markets such as Wire Bond Logic, design activity also increased," said Igor Khandros, CEO of FormFactor.

The Company said that it is unable at this time to release further income statement data with respect to the third quarter. The Company is currently reviewing its historic practices with respect to inventory valuation in light of issues identified by the Company in the course of preparation of financial statements for the third quarter. Based on the review to date management believes that adjustments to inventory valuations may be required with respect to periods prior to the third quarter of 2007. These potential adjustments could change inventory, gross margin, operating margin and net income from the amounts previously reported for the affected periods. The Company has not yet determined the magnitude of these adjustments or whether the adjustments will be reflected in the third quarter financial statements or in a restatement of the affected periods. The Company believes, however, that its third quarter operating margin and net income per share, without giving effect to adjustments in respect of prior periods, should be not less than the 20.5%-21% and $0.38-$0.40 per share, respectively, provided as management guidance in the Q2 earnings call conducted on July 25, 2007.

The Company is working to complete the internal review as promptly as practicable.

26.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The Company failed to properly account for its obsolete inventory; and

(b)    The Company was experiencing production constraints related to its new Harmony product which would significantly increase its costs and expenses in order to accelerate its production capabilities. Furthermore, the production constraints would significantly raise the risk that customers with older generation products would seek alternative sources such as the Company's competitors or seek to renegotiate their contracts with FormFactor placing serious pressure on the Company's future revenue.

27.    As a result of defendants' false statements, FormFactor's stock price traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 28% from their Class Period high.

### FORMFACTOR'S FALSE FINANCIAL REPORTING DURING THE CLASS PERIOD

28.    In order to inflate the price of FormFactor's stock, defendants caused the Company to falsely report its results for fiscal 2006 through the second quarter of 2007 through improper accounting entries, which inflated the Company's reported inventory, gross margin, operating margin and net income. The Company subsequently has admitted that it will be required to take a charge and possibly restate its prior financial results due to these accounting violations.

29.    The results for fiscal 2006 through the second quarter of 2007 were included in Forms 10-Q and a Form 10-K filed with the SEC. The results were also included in press releases disseminated to the public.

30.    FormFactor has now admitted that it improperly accounted for its inventory valuation, such that its previous financial statements were not a fair presentation of FormFactor's results and were presented in violation of Generally Accepted Accounting Principles ("GAAP") and SEC rules.

31.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular

1  time. SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the

2  SEC which are not prepared in compliance with GAAP are presumed to be misleading and

3  inaccurate, despite footnote or other disclosure. Regulation S-X requires that interim financial

4  statements must also comply with GAAP, with the exception that interim financial statements need

5  not include disclosure which would be duplicative of disclosures accompanying annual financial

6  statements. 17 C.F.R. §210.10-01(a).

7      32.     Ultimately, on October 24, 2007, FormFactor announced that its third quarter 2007

8  results would be delayed as the Company was currently reviewing its historic practices with respect

9  to inventory valuation and that based upon the review, management believed that adjustments to

10  inventory valuations may be required in periods prior to the third quarter of 2007. In the Company's

11  conference call held on that date, defendant Foster admitted: "It appears that in certain prior periods

12  in the current fiscal year and prior years, the approach followed for valuing inventory and

13  establishing valuation reserves was inconsistent with our accounting policies." Foster further

14  acknowledged that the Company would likely be either taking a one-time charge in the third quarter

15  of 2007 due to the accounting improprieties or it may have to restate its prior period financial

16  statements.

17      33.     The fact that FormFactor may restate its financial statements for the first and second

18  quarters of 2007, as well as for prior years, would be an admission that the financial statements

19  originally issued were false and that the overstatement of income was material. Pursuant to GAAP,

20  as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement

21  announced by FormFactor was to correct for material errors in its previously issued financial

22  statements. *See* APB No. 20, ¶¶7-13. Moreover, FASB Statement of Financial Accounting Standard

23  ("SFAS") No. 154, *Accounting Changes and Error Corrections*, states: "Any error in the financial

24  statements of a prior period discovered subsequent to their issuance shall be reported as a prior-

25  period adjustment by restating the prior-period financial statements." SFAS No. 154, ¶25. Thus,

26  GAAP provides that financial statements should be restated in order to correct an error in previously

27  issued financial statements. FormFactor's possible restatement is due to an error. Thus, the

28

1   restatement would be an admission by FormFactor that its previously issued financial results and its
2   public statements regarding those results were false.

3       34.     Due to these accounting improprieties, the Company presented its financial results
4   and statements in a manner which violated GAAP, including the following fundamental accounting
5   principles:

6           (a)     The principle that interim financial reporting should be based upon the same
7   accounting principles and practices used to prepare annual financial statements was violated (APB
8   No. 28, ¶10);

9           (b)     The principle that financial reporting should provide information that is useful
10  to present and potential investors and creditors and other users in making rational investment, credit
11  and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

12          (c)     The principle that financial reporting should provide information about the
13  economic resources of an enterprise, the claims to those resources, and effects of transactions, events
14  and circumstances that change resources and claims to those resources was violated (FASB
15  Statement of Concepts No. 1, ¶40);

16          (d)     The principle that financial reporting should provide information about how
17  management of an enterprise has discharged its stewardship responsibility to owners (stockholders)
18  for the use of enterprise resources entrusted to it was violated. To the extent that management offers
19  securities of the enterprise to the public, it voluntarily accepts wider responsibilities for
20  accountability to prospective investors and to the public in general (FASB Statement of Concepts
21  No. 1, ¶50);

22          (e)     The principle that financial reporting should provide information about an
23  enterprise's financial performance during a period was violated. Investors and creditors often use
24  information about the past to help in assessing the prospects of an enterprise. Thus, although
25  investment and credit decisions reflect investors' expectations about future enterprise performance,
26  those expectations are commonly based at least partly on evaluations of past enterprise performance
27  (FASB Statement of Concepts No. 1, ¶42);

28

1            (f)     The principle that financial reporting should be reliable in that it represents

2  what it purports to represent was violated. That information should be reliable as well as relevant is

3  a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

4            (g)     The principle of completeness, which means that nothing is left out of the

5  information that may be necessary to insure that it validly represents underlying events and

6  conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

7            (h)     The principle that conservatism be used as a prudent reaction to uncertainty to

8  try to ensure that uncertainties and risks inherent in business situations are adequately considered

9  was violated. The best way to avoid injury to investors is to try to ensure that what is reported

10  represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

11       35.     Further, the undisclosed adverse information concealed by defendants during the

12  Class Period is the type of information which, because of SEC regulations, regulations of the

13  national stock exchanges and customary business practice, is expected by investors and securities

14  analysts to be disclosed and is known by corporate officials and their legal and financial advisors to

15  be the type of information which is expected to be and must be disclosed.

16                                        **LOSS CAUSATION/ECONOMIC LOSS**

17       36.     By misrepresenting its financial statements, the defendants presented a misleading

18  picture of FormFactor's business and prospects. Thus, instead of truthfully disclosing during the

19  Class Period that FormFactor's business was not as healthy as represented, FormFactor falsely

20  overstated its net income.

21       37.     These claims of profitability caused and maintained the artificial inflation in

22  FormFactor's stock price throughout the Class Period and until the truth was revealed to the market.

23       38.     Defendants' false and misleading statements had the intended effect and caused

24  FormFactor stock to trade at artificially inflated levels throughout the Class Period, reaching as high

25  as $49.45 per share.

26       39.     On October 24, 2007, defendants were forced to publicly disclose that FormFactor

27  would be restating its financial statements, causing its stock to drop to $35.54 per share.

28

1  40.   As a direct result of defendants' admissions and the public revelations regarding the

2  truth about FormFactor's overstatement of income and its actual business prospects going forward,

3  FormFactor's stock price plummeted 20%, falling from $46.72 per share on October 2, 2007 to

4  $35.54 per share on October 25, 2007 – a drop of $11.18 per share. This drop removed the inflation

5  from FormFactor's stock price, causing real economic loss to investors who had purchased the stock

6  during the Class Period.

7  <center>COUNT I</center>

8  <center>**For Violation of §10(b) of the 1934 Act and Rule 10b-5**<br>**Against All Defendants**</center>

9

10  41.   Plaintiff incorporates ¶¶1-40 by reference.

11  42.   During the Class Period, defendants disseminated or approved the false statements

12  specified above, which they knew or deliberately disregarded were misleading in that they contained

13  misrepresentations and failed to disclose material facts necessary in order to make the statements

14  made, in light of the circumstances under which they were made, not misleading.

15  43.   Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

16    (a)   employed devices, schemes and artifices to defraud;

17    (b)   made untrue statements of material facts or omitted to state material facts

18  necessary in order to make the statements made, in light of the circumstances under which they were

19  made, not misleading; or

20    (c)   engaged in acts, practices and a course of business that operated as a fraud or

21  deceit upon plaintiff and others similarly situated in connection with their purchases of FormFactor

22  common stock during the Class Period.

23  44.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

24  the market, they paid artificially inflated prices for FormFactor common stock. Plaintiff and the

25  Class would not have purchased FormFactor common stock at the prices they paid, or at all, if they

26  had been aware that the market prices had been artificially and falsely inflated by defendants'

27  misleading statements.

28

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

45.    Plaintiff incorporates ¶¶1-44 by reference.

46.    The Individual Defendants acted as controlling persons of FormFactor within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of FormFactor stock, the Individual Defendants had the power and authority to cause FormFactor to engage in the wrongful conduct complained of herein. FormFactor controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired FormFactor common stock during the Class Period (the "Class"). Excluded from the Class are defendants.

48.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. FormFactor has more than 48 million shares of stock outstanding, owned by hundreds if not thousands of persons.

49.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      (a)    whether the 1934 Act was violated by defendants;

      (b)    whether defendants omitted and/or misrepresented material facts;

      (c)    whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

      (d)    whether defendants knew or deliberately disregarded that their statements were false and misleading;

      (e)    whether the price of FormFactor's common stock was artificially inflated; and

1        (f)     the extent of damage sustained by Class members and the appropriate measure

2  of damages.

3      50.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class

4  sustained damages from defendants' wrongful conduct.

5      51.     Plaintiff will adequately protect the interests of the Class and has retained counsel

6  who are experienced in class action securities litigation. Plaintiff has no interests which conflict

7  with those of the Class.

8      52.     A class action is superior to other available methods for the fair and efficient

9  adjudication of this controversy.

10                     **PRAYER FOR RELIEF**

11      WHEREFORE, plaintiff prays for judgment as follows:

12     A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

13     B.     Awarding plaintiff and the members of the Class damages, including interest;

14     C.     Awarding plaintiff reasonable costs and attorneys' fees; and

15     D.     Awarding such equitable/injunctive or other relief as the Court may deem just and

16   proper.

17                     **JURY DEMAND**

18      Plaintiff demands a trial by jury.

19   DATED: October 31, 2007         COUGHLIN STOIA GELLER

20                            RUDMAN & ROBBINS LLP

                               SHAWN A. WILLIAMS

21

22

                               SHAWN A. WILLIAMS

23

24                          100 Pine Street, Suite 2600

                           San Francisco, CA 94111

25                          Telephone: 415/288-4545

                           415/288-4534 (fax)

26

27

28

1

2          COUGHLIN STOIA GELLER
             RUDMAN & ROBBINS LLP
3          DARREN J. ROBBINS
           DAVID C. WALTON
4          CATHERINE J. KOWALEWSKI
           655 West Broadway, Suite 1900
5          San Diego, CA 92101
           Telephone: 619/231-1058
6          619/231-7423 (fax)

7          ROY JACOBS & ASSOCIATES
           ROY L. JACOBS
8          60 East 42nd Street 46th Floor
           New York, NY 10165
9          Telephone: 212/867-1156
           212/504-8343 (fax)

10         PASKOWITZ & ASSOCIATES
           LAURENCE D. PASKOWITZ
11         60 East 42nd Street, 46th Floor
           New York, NY 10165
12         Telephone: 212/685-0969
           212/685-2306 (fax)
13
           Attorneys for Plaintiff
14
S:\CptDraft\Securities\Cpt Formfactor_1.doc
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 16 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2    Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3  named parties, there is no such interest to report.

4
                                    _____
5                                   ATTORNEY OF RECORD FOR PLAINTIFF
                                    DANNY McCASLAND
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint of FormFactor Inc. ("FormFactor") and certain other defendants.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.      Plaintiff made the following transactions during the Class Period (April 26, 2006 and October 24, 2007) in the common shares of FormFactor:

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 7/5/06 | 2000 | 43.90 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.      I declare under penalty of perjury, this 30 day of October, 2007 that the information above is accurate.

Danny McCasland            _____

                                              e-signed