Exhibit G

FILED by ____ D.C.
DKTG

FEB 2 2 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

NIGHT BOX
FILED ESC

JAN 0 9 2002

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

98-8258-Civ.- Middlebrooks

IN RE SUNBEAM SECURITIES LITIGATION :

98-8773-Civ- Middlebrooks
99-8275-Civ.- Middlebrooks
MDL No. 1297

CAMDEN ASSET MANAGEMENT, L.P.; :
FROLEY REVY INVESTMENT COMPANY, :
INC.; JMG CONVERTIBLE INVESTMENTS :
L.P.; and HAMILTON PARTNERS, LTD., :
:
Plaintiffs, :
v. :
:
ARTHUR ANDERSEN LLP; ALBERT J. :
DUNLAP; RUSSELL A. KERSH; and ROBERT :
C. GLUCK, :
:
Defendants. :

---

## BRIEF OF THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION AS AMICUS CURIAE REGARDING DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EVIDENCE OF THE RESTATEMENT AND RESTATEMENT REPORT



The United States Securities and Exchange Commission ("Commission") submits this brief as amicus curiae in response to certain defendants' motions in limine filed in the two above-referenced actions on or about December 10, 2001. These defendants have filed motions in limine seeking to exclude from evidence Sunbeam Corporation's ("Sunbeam") Form 10-K/A, publicly filed November 12, 1998, for the fiscal year ended December 28, 1997. In that filing, Sunbeam for the first time restated its financial results for 1996, 1997 and the first quarter of 1998 (the "Restatement"). Defendants also seek to exclude the Report to Sunbeam's Board of Directors dated October 16, 1998 that summarizes and explains the restated adjustments (the "Restatement Report").

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION

The Commission is the agency principally responsible for the administration and enforcement of the federal securities laws, which are designed to protect investors and to preserve the integrity of our capital markets. The Commission devotes much of its resources to investigating possible violations of those laws, prosecuting violators, obtaining disgorgement of ill-gotten funds, and distributing disgorged funds to defrauded investors. See, e.g., 15 U.S.C. 78u.

In furtherance of those essential enforcement activities, the Commission often seeks to enter into evidence restated financial statements, and the documentation behind those restatements, in its securities fraud enforcement actions in order, inter alia, to prove the falsity and materiality of the original financial statements, to demonstrate that persons responsible for the original misstatements acted with scienter and, when appropriate under the facts of the case, to show that the auditors should have detected the errors requiring the restatement in their original audit. Thus, the Commission has a strong interest in the outcome of defendants' motions in limine because a holding that the Restatement and Restatement Report are inadmissible would create a precedent which may harm the Commission's efforts in other enforcement litigation focusing on material misstatements in

registrants' financial statements.[1]

## PRELIMINARY STATEMENT

Defendant Arthur Andersen LLP's ("Andersen") motion in Camden Asset Mgmt. v. Sunbeam

Corp., 99-8275-Civ., relies primarily on Federal Rule of Evidence ("Rule") 407, which bars the

introduction into evidence of subsequent remedial measures to prove a defendant's culpability.

Andersen also relies on Rule 403, arguing that introduction of the Restatement and Restatement

Report would be more prejudicial than probative. As no circuit court has yet addressed whether

restated financial statements or a memorandum prepared in connection with the audit of restated

financial statements should be excluded under either Rule 407 or 403, those issues present cases of

first impression for the Court.[2]

Defendants Dunlap's and Kersh's motion in In re Sunbeam Secs. Litig., 99-8258-Civ., argues

primarily that the Restatement is hearsay and is not admissible as a business record under Rule

803(6), but like Andersen also raises Rules 407 and 403 defenses. As with the Rules 407 and 403

issues, the issue of whether restated financial statements filed with the Commission, or the reports

---

[1]  As the Court is doubtless aware, one such enforcement case that may be directly and adversely impacted by a ruling on defendants' motions in limine is the Commission's civil securities fraud enforcement action pending before this Court against Albert Dunlap, Russell Kersh and Phillip E. Harlow (the Andersen partner who was responsible for issuing the firm's unqualified audit opinions on Sunbeam's original 1996-97 financial statements), SEC v. Dunlap, 01-8437-Civ.

[2]  However, as reflected by trial transcripts, two district courts have issued bench rulings on these issues, without opinion and without the benefit of briefing by the parities or an amicus presentation by the Commission. See In re Health Mgmt. Sec. Litig., 96 Civ. 889 (E.D.N.Y. Oct. 14, 1999) (holding that an auditor's memorandum prepared during the audit of restated financial statements was inadmissible under Rule 407); United States v. Moscowitz, 97 Cr. 1122 (S.D.N.Y. Oct. 7, 1998) (holding that restated financial statements apparently filed after the defendant had left the company were inadmissible).

from the auditors concerning those restatements, qualify as admissible business records has not been addressed by the courts.

The Commission respectfully submits that Rules 403, 407, 803 and 807 favor admission of the evidence at issue here. Rule 407 applies only to voluntary remedial measures, not to corrective actions that are required by law. Here, both Sunbeam and Andersen were subject to pre-existing obligations pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 thereunder, generally accepted accounting principles ("GAAP"), and generally accepted auditing standards ("GAAS") to correct material errors in Sunbeam's 1996-97 financial statements and audit opinions once they became aware that the prior statements were misleading when made. Accordingly, the Restatement cannot be deemed voluntary. Sunbeam's November 1998 Restatement is thus not a typical remedial measure taken merely as an attempt to repair a condition that had arisen in the past. Rather, it is a present statement of historical fact that conflicts with the version of these same facts given earlier. While the Restatement did acknowledge that the earlier statement was materially wrong, it responded to a legal obligation to speak truthfully. Rule 407 does not apply to such responses.

Also, Rule 407 can be invoked only by the party that undertook the remedial measure. In this instance, Sunbeam's new directors ordered preparation of the Restatement and Restatement Report, not Kersh and Dunlap. Indeed, both Kersh and Dunlap had left Sunbeam before the Restatement and Restatement Report were prepared. Thus, neither can invoke Rule 407 to preclude admission of the Restatement and Restatement Report as evidence.

With respect to Rule 403, defendants' arguments that introduction of the Restatement and Restatement Report would be "prejudicial" because the jury will confuse the documents for evidence

3

of scienter, and that the alleged risk of "prejudice" outweighs any probative value the Restatement and Restatement Report may have, are not credible. Defendants make no allegations that would support a finding that introduction of the Restatement and Restatement Report would result in "undue prejudice." In fact, what the defendants call "prejudice" is nothing more than highly probative evidence that happens to be harmful to their cases. The Restatement and Restatement Report are highly probative that Sunbeam's original financial statements contained misrepresentations and that the misrepresentations were material, two essential elements of a securities fraud claim under Section 10(b) and Rule 10b-5 thereunder. Indeed, a primary reason for a restatement of prior financial statements is that the prior statements contained material errors. Andersen's arguments to the contrary (see, e.g., Andersen Mot. at 16 & 22) are inconsistent with GAAP. In any event, the highly probative value of the Restatement and the Restatement Report more than outweigh defendants' alleged claims of "prejudice."

With respect to Rule 803 (which defines certain exceptions to the rule against admitting hearsay), the Restatement and Restatement Report satisfy the criteria for admitting hearsay documents as business records under Rule 803(6). Both documents were prepared near the time of Andersen's 1998 re-audit of the 1996-97 financial statements. Preparing and filing financial statements with the Commission (including those necessary to correct errors in previously filed financial statements) is part of Sunbeam's regular business practice, and it is part of Andersen's regular business practice to audit financial statements. As Sunbeam had a statutory duty to file the Restatement, and as both documents -- by announcing repeated material misstatements by Sunbeam on Andersen's watch -- exposed their authors to potential government investigation and private lawsuits, the Restatement and Restatement Report were produced under circumstances that indicate

4

their trustworthiness. Moreover, both documents are admissible under Rule 807's residual hearsay exception.

## STATEMENT OF FACTS

Because the parties have briefed the facts extensively, the Commission will not address them in its brief.

## DISCUSSION

## I. RULE 407 DOES NOT BAR ADMISSION OF THE RESTATEMENT AND RESTATEMENT REPORT.

Rule 407[3] does not bar the admission of the Restatement and Restatement Report into evidence, as they (1) were corrective actions required by law, not voluntary acts, (2) were undertaken at the behest of Sunbeam, not Dunlap or Kersh, and (3) are admissible for purposes permitted by Rule 407.

### A. Sunbeam and Andersen Were Required to Correct The Material Errors in Sunbeam's 1996-97 Financial Statements Under Section 10(b) and Rule 10b-5.

Rule 407 applies to voluntary subsequent remedial measures, not to corrective actions that are required by law. See Rozier v. Ford Motor Co., 573 F.2d 1332, 1343 (5th Cir. 1980) (document reflecting remedial measures was admissible under Rule 407 where its preparation was required by

---

[3]   Rule 407 reads in full that:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

5

NHTSA); see also O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990); In re Aircrash in

Bali, Indonesia, 871 F.2d 812, 816 (9th Cir. 1989); Herndon v. Seven Bar Flying Service, Inc., 716

F.2d 1322, 1331 (10th Cir. 1983); Lolie v. Ohio Brass Co., 502 F.2d 741, 744 (7th Cir. 1974)

(evidence that a state inspector required mine operators to give added support to power cable after

mine accident was admissible under Rule 407); Kociemba v. G.D. Searle & Co., 683 F. Supp. 1579,

1581 (D. Minn. 1988) (IUD warning required by FDA regulation was admissible under Rule 407

as it was mandated by a superior authority).[4]

Under Section 10(b) and Rule 10b-5 (as well as under GAAP and GAAS),[5] Sunbeam is

required to correct material misstatements in its prior financial statements when those statements are

currently being relied upon or are likely to be relied upon by investors (i.e., by virtue of re-

publication of past false and misleading statements in current financial statements by incorporating

or comparing to the past false financial statements, or when the past false and misleading financial

statements have an effect otherwise on subsequent periods). See, e.g., In re IBM Corporate Secs.

---

[4]  See generally Wigmore on Evidence (Chadbourn Revision) §1050(2) ("[a]dmissions made
under a duty imposed by law stand on a peculiar footing. It would seem that nothing in the
principles governing admissions excludes them"); 23 Charles A. Wright & Kenneth C.
Graham, Federal Practice and Procedure §5284 at 114 & n.63 (2d ed. 1980) (analyzing why
Rule 407 should not apply to measures "undertaken under the compulsion of some statutory
provision requiring it").

[5]  The Commission, pursuant to its rulemaking authority under the Exchange Act, imposes
affirmative obligations upon issuers to disclose specific information in periodic reports
which must be filed with the Commission. 15 U.S.C. 78m. One such obligation, imposed
by Commission Regulation S-X, requires issuers to file financial statements that comply with
GAAP and are audited in accordance with GAAS. See 17 C.F.R. 210.2-02 & 210.4-01.
Liability may be imposed under Section 10(b) and Rule 10b-5 where a materially false or
misleading statement or omission in a report filed with the Commission is made or omitted
with scienter. 15 U.S. C. 78j(b) & 17 C.F.R. 240.10b-5.

6

Litig., 163 F.3d 102, 109 (2d Cir. 1998) (holding that a duty to correct arises "if and when a speaker learns that a prior statement was misleading when made") (emphasis added); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1331 (7th Cir. 1995) (The duty to correct applies when "a company makes a historical statement that at the time made, the company believed to be true, but as revealed by subsequently discovered information actually was not."); Weiner v. Quaker Oats Co., 129 F.3d 310, 316 (3d Cir. 1997) ("In general, Section 10(b) and Rule 10b-5 do not impose a duty on defendants to correct prior statements * * * so long as those statements were true when made. * * * However, '[t]here can be no doubt that a duty exists to correct prior statements, if the prior statements were true when made but misleading if left unrevised'") (citing In re Phillips Petroleum Secs. Litig., 881 F.2d 1236, 1244 (3d Cir. 1989)). See also McCauley v. IBM Corp., 165 F.3d 1038, 1046 (6th Cir. 1998) (finding that ERISA encompasses a duty to correct analogous to the "duty to correct [that] can be found in the federal securities laws: offering materials must be correct and non-misleading at the time of sale, not just at the time they are written, and a duty to correct the materials continues as long as does the offering") (citing Ackerman v. Schwartz, 947 F.2d 841, 848 (7th Cir. 1991)).[6]

    Section 10(b) and Rule 10b-5 are broad enough to impose such a "duty to correct." See, e.g.,

---

[6]    The Commission for years has stressed this duty. See, e.g., SEC v. Mesa Ltd. Partnership, Litig. Release No. 12,637, Fed. Sec. L. Rep. (CCH) ¶ 95,492, 47 S.E.C. Docket 273 (Sept. 27, 1990); In re Carnation Co., [1984-1985 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 83,801, at 87,595-96 n. 6 (July 8, 1985), Exchange Act Release No. 22214, 33 S.E.C. Docket 874, 1985 WL 547371, at *4 (1985) ("The importance of accurate and complete issuer disclosure to the integrity of the securities markets cannot be overemphasized. To the extent that investors cannot rely upon the accuracy and completeness of issuer statements, they will be less likely to invest, thereby reducing the liquidity of the securities markets to the detriment of investors and issuers alike").

Chiarella v. United States, 445 U.S. 222, 230 (1980). The "duty to correct" is also consistent with the legislative history of Section 10(b), which indicates unequivocally that the purpose of Section 10(b) is to ensure accurate and prompt dissemination of material corporate information to the investing public so that market forces can determine the price of an issuer's securities based on that information. See, e.g., SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 858-59 (2d Cir. 1968).

Likewise, under Section 10(b) and Rule 10b-5 (and GAAP and GAAS), Andersen is required to withdraw its audit opinion on financial statements that it has become aware contain materially false statements, and disclose (to the issuer, and when appropriate to the market and/or the Commission) such materially false statements -- when the financial statements it audited are currently being relied upon or are likely to be relied upon by investors. See, e.g., Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1044 (11th Cir. 1986); Wright v. Ernst & Young LLP, 152 F.3d 169, 177 (2d Cir. 1998), cert. denied, 525 U.S. 1104 (1999) ("Accounting firms 'do have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying'") (citing IIT v. Cornfeld, 619 F.2d 909, 927 (2d Cir. 1980)) (emphasis added). In Rudolph v. Arthur Andersen & Co., the Eleventh Circuit explained the rationale for recognizing a cause of action under Section 10(b) against accountants for failing to comply with their "duty to correct":

> This duty arises from the fact that investors are likely to rely on an accountant's work. Where it gives an opinion or certifies statements, an auditing firm publicly assumes a role that carries a special relationship of trust vis-a-vis the public. The auditor in such a case holds itself out as an independent professional source of assurance that the audited company's financial presentations are accurate and reliable * * *. The importance of the act of certifying is such that a continuing duty to disclose has been imposed where the auditor learns facts revealing that a certification believed correct when issued was actually unwarranted.

8

800 F.2d at 1144 (citing <u>Fischer v. Kletz</u>, 266 F. Supp. 180, 186 (S.D.N.Y. 1967)).

Under GAAS, an auditor has no obligation to inquire into the accuracy of an audit opinion after it is rendered. <u>See</u> AU § 561.03. However, when "the auditor becomes aware of information which relates to financial statements previously reported on by him, but which was not known to him at the date of his report, and which is of such a nature and from such a source that he would have investigated it had it come to his attention during the course of his audit, he should, as soon as practicable, undertake to determine whether the information is reliable and whether the facts existed at the date of his report." AU § 561.04. If the auditor determines that (a) his report would have been affected had the information been known to him at the date of his report, (b) the information had not been reflected in the financial statements, and (c) there are persons, who are currently relying on or likely to rely on those statements (<u>i.e.</u>, the market), who would find the misstatements material, then the auditor has a duty under GAAS to (i) advise the client to make appropriate disclosure of the newly discovered facts and their impact on the financial statements to the market (including revising the financial statements and auditor's report); (ii) advise the Board of Directors if the client refuses to cooperate; and (iii) take steps to prevent future reliance upon his report (including informing the market and Commission when appropriate). <u>See</u> AU §§ 561.06-.08.

Given the duty to correct imposed on both issuers and auditors, Sunbeam's issuance of the Restatement and Anderson's repudiation of its original audit opinions on Sunbeam's 1996-97 financial statements cannot be construed as voluntary. Rather, both were mandated by a superior authority -- the Commission's governing statutes and regulations (which incorporate GAAP and GAAS). For this reason alone, admission of the Restatement against those who undertook to prepare

9

it is not barred by Rule 407.[7]

## B.    The Policy Behind Rule 407 Has No Applicability To Restated Financial Statements.

The Advisory Committee Notes to Rule 407 indicate that the rule largely rests on "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Courts have held that this policy has no applicability where the measures are required in any event. See, e.g., Rozier, 573 F.2d at 1343. That is, a defendant cannot

---

[7]    The two appellate cases relied upon by defendants in arguing that Rule 407 applies here are distinguishable in that neither addressed the admissibility of restated financial statements. Dunlap & Kersh Mot. at 65-66; Andersen Mot. at 25. In addition, the first case, SEC v. Geon Industries, Inc., 531 F.2d 39, 52 (2d Cir. 1976), did not involve the superior authority exception. In Geon, the court affirmed the rejection of the Commission's effort to introduce a brokerage firm's revised internal compliance manual. Nothing in Geon suggested that the brokerage firm's revision to its compliance manual, unlike Sunbeam's corrections to its original 1996-97 financial statements, was mandated by law.

In the second case, Malone v. Microdyne Corp., 26 F.3d 471, 480 (4th Cir. 1994), the court affirmed the exclusion of defendant's 1992 Form 10-K that contained disclosures regarding its merchandise return policies omitted from two earlier Form 10-Qs because plaintiffs had other evidence sufficiently probative of whether the company granted unconditional rights of return and extraordinary credit terms to its distributors. The Fourth Circuit in Malone did not address the superior authority exception to Rule 407, as it is the only circuit court of appeals that has declined to recognize that exception. See Werner v. Upjohn Co., 628 F.2d 848 (4th Cir. 1980). In contrast, as noted above, the Eleventh Circuit recognizes the superior authority exception. See Rozier v. Ford Motor Co., 573 F.2d at 1343; see also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (holding that Fifth Circuit cases prior to September 30, 1981 are binding in the Eleventh Circuit). In any event, it is the Commission's position that Malone was wrongly decided.

Similarly, defendants' reliance on the bench ruling in In re Health Mgmt. Sec. Litig., 96 Civ. 889 (E.D.N.Y. Oct. 14, 1999), (Dunlap & Kersh Mot. at 66-68; Anderson Mot. at 27), is misplaced. See note 2, above. That bench ruling was made without opinion and without the benefit of briefing by the parities or an amicus presentation by the Commission. In addition, the excerpt from the trial transcript in that case attached to Andersen's brief provides the Court with insufficient facts to rely upon that bench ruling.

10

be discouraged from voluntarily taking remedial measures if he must make them by law. See, e.g., Herndon, 716 F.2d at 1331. Sunbeam's November 1998 Restatement is not a remedial measure taken to attempt to repair a condition that arose in the past. Rather, it is a present statement of historical fact that conflicts with the version of these same facts given earlier. Thus, the policy behind Rule 407 has even less applicability here than in most superior authority cases because, contrary to Andersen's assertions (Andersen Mot. at 24), GAAP and GAAS do not permit auditors and issuers to "rethink" their valuations of the issuer's assets and liabilities and "improve" upon them based on subsequent information that did not and could not have existed at the time the original financial statements were prepared. The Commission, through its rulemaking authority under the federal securities laws, has incorporated GAAP and GAAS, which prescribe when and how issuers and auditors may correct past errors so that investors can rely on the periodic and annual reports filed with the Commission.

As noted by the bondholder plaintiffs in their opposition memorandum (Mem. at 6-7), the pronouncements of the Accounting Principles Board ("APB")[8] make it clear that restatements should not be used to make any adjustments to take into account subsequent information that did not and could not have existed at the time the original financial statements were prepared. That is, GAAP does not allow a change in an accounting estimate resulting from new information or subsequent developments to be accounted for as a restatement of previous financial statements. See APB Opinion 20, ¶ 31. The APB has defined the kind of "errors" that may be corrected through a

---

[8]     The APB preceded the Financial Accounting Standards Board ("FASB"). Both the APB and the FASB have been recognized by the Commission as the private sector body with authority to set GAAP. See Accounting Series Releases 4 & 150.

11

restatement: "Errors in financial statements result from mathematical mistakes, mistakes in the application of accounting principles, or oversight or misuse of facts that existed at the time that the financial statements were prepared." See id. at ¶¶ 13, 36-37 (emphasis added). In accordance with APB Opinion 20, the Commission does not condone the use of restatements by public companies or auditors to make any adjustments (particularly to judgmental reserves) to take into account subsequent information that did not and could not have existed at the time the original financial statements were prepared.

As a result, Andersen's argument in its motion that exclusion of the Restatement squares with the policy considerations behind Rule 407 (Andersen Mot. at 24), is erroneous as Andersen completely ignores both its and Sunbeam's duties under Section 10(b), GAAP and GAAS to restate past financial statements to correct for errors resulting from oversight or misuse of facts that existed at the time that the financial statements were prepared. See APB Opinion 20 at ¶¶ 13, 36-37.[9] Andersen further ignores the fact that, as the auditor of the Restatement, it had a duty under GAAS to ensure that the restated financial statements complied with GAAP, i.e., that Sunbeam restated for errors based only on information that existed at the time the original financial statements were prepared.[10]

---

[9]  In fact, Andersen goes so far as to claim not only that "many of the numbers recorded in the Restatement could not have been recorded during the original 1997 audit" but also that "[t]he evidence relied upon in preparing the Restatement was of events which could not have been foreseen or estimated at that time". Andersen Mot. at 29 (emphasis in original).

[10]  If Andersen truly believed the argument it is making in its motion, then it would have (and should have) withdrawn its October 16, 1998 audit opinion on the Restatement. The fact that it has not done so -- and has not announced (either publicly to the market or to the Commission) that it disagrees with the Restatement -- highlights the specious nature of its
(continued...)

12

In sum, Andersen's position cannot be correct. It essentially argues that both Sunbeam's

original 1996-97 financial statements and its restated financial statements for that same period were

correct under GAAP. In these circumstances, that result is not possible under GAAP, since GAAP

only allows a restatement of prior financial statements based upon information "that existed at the

time the financial statements were prepared." See APB Opinion 20 at ¶ 13; see also id. at ¶¶ 31, 36.

## C.     The Restatement Report Was Prepared as Part of Sunbeam's and Andersen's Duty to Correct.

Although neither Sunbeam nor Andersen was required under Section 10(b), GAAP or GAAS

to prepare a report to comply with their "duty to correct," both were required to investigate whether

to correct past errors by restating Sunbeam's 1996-97 financial statements after they became aware

that prior statements may have been misleading when made. See pages 6-9, above. It is indisputable

that the Restatement Report was created and used by Sunbeam's management and Andersen to

explain the necessity of the Restatement to the Board of Directors and obtain its approval for the

filing of the restated financial statements for 1996 and 1997. It is also indisputable that the

investigation that culminated in the preparation of the Restatement Report was an integral part of

Sunbeam's and Andersen's efforts to comply with each entity's respective "duty to correct" under

Section 10(b) and Rule 10b-5. Because both the investigation and the resulting Restatement were

required by law, the Restatement Report should be admitted under the superior authority exception

to Rule 407.

In addition, those parts of the Restatement Report that analyze Sunbeam's 1996-97 financial

---

[10]     (...continued)
argument.

13

statements are nothing more than a "post-event" analysis. Although the Eleventh Circuit has not

ruled yet on this issue, many other courts have held that such analyses are not be excluded under

Rule 407 because subsequent remedial measures include "only the actual remedial measures

themselves and not the initial steps towards ascertaining whether any remedial measures are called

for." Fasanaro v. Mooney Aircraft Corp., 687 F. Supp. 482, 487 (N.D. Cal. 1988); See also Rocky

Mountain Helicopters, Inc. v. Bell Helicopters Textron, 805 F.2d 907, 918 (10th Cir. 1986).

## D.    The Restatement and Restatement Report Were Not Undertaken at the Instruction of Kersh or Dunlap.

Even if the Restatement and/or Restatement Report are deemed voluntary measures, they are

still admissible under Rule 407 against Dunlap and Kersh as neither made the decision to restate.

"Rule 407 only applies to a defendant's voluntary actions;" it does not apply to subsequent remedial

measures by non-defendants. Mehojah v. Dummond, 56 F.3d 1213, 1215 (10th Cir. 1995); Pau v.

Yosemite Park & Curry Co., 928 F.2d 880, 888 (9th Cir. 1991). Kersh and Dunlap were no longer

with Sunbeam when its Board of Directors directed the Restatement Report to be prepared and

issued the Restatement. As they had nothing to do with the decision to take this remedial measure,

they have no standing to invoke Rule 407.

## E.    The Restatement And Restatement Report Are Admissible For Purposes Expressly Permitted by Rule 407.

Finally, the Restatement and Restatement Report are admissible for purposes expressly

allowed by Rule 407. The Rule allows subsequent remedial measures to come into evidence to

prove, among other things, feasibility of undertaking the remedial measures (if controverted) and

for impeachment. See, e.g., Wood v. Mobark, 70 F.3d 1201, 1208 (11th Cir. 1995) (reversing and

remanding case for a new trial where trial court improperly excluded evidence of design

14

modifications to a wood chipper for the purpose of impeaching defendant's expert who testified that the seventeen-inch chute on the chipper was the "safest length chute you could possibly put on the machine"). The Rule has also been held to allow evidence of those measures if that evidence would show relevant knowledge on the defendant's part. See, e.g., Rozier, 573 F.2d at 1343 (subsequent remedial writing would be admissible for issues such as knowledge of the dangerous condition); Stecyk v. Bell Helicopter Textron, Inc., 1998 WL 744087, *12 (E.D. Pa. Oct. 23, 1998).

The Commission endorses bondholder plaintiffs' arguments that the Court has reasons other than Andersen's culpability to admit the Restatement and Restatement Report into evidence. Bondholders' Mem. at 16-19. For example, in its motion in limine, Andersen claims that the facts that would have shown that Sunbeam violated GAAP in its 1996-97 financial statements were unknown to Andersen when it audited those financial statements, or that revisions found in the Restatement were purely the result of changes in approach mandated by Sunbeam's new management. See, e.g., Andersen Mot. at 16, 22. However, on certain issues the Restatement and Restatement Report (together with Andersen's other Restatement workpapers) show that the facts evidencing GAAP and GAAS violations were known at the time of the original audits. Thus, the Restatement and Restatement Report would show Andersen's prior knowledge of these facts, would be relevant to whether it was feasible for Andersen to have contemporaneously corrected certain of the errors in the 1996-97 financial statements, and would be relevant to whether Andersen may be impeached on its assertions that these facts were unknown or that the revisions were not required by GAAP.

For all of these reasons, the Court should find the Restatement and Restatement Report admissible under Rule 407. None of the defendants has offered any legitimate basis for their

15

exclusion under that rule.

## II.    RULE 403 DOES NOT BAR ADMISSION OF THE RESTATEMENT AND RESTATEMENT REPORT.

Rule 403[11] does not bar the use of the Restatement and Restatement Report as evidence against company officers like Dunlap and Kersh, or against auditors like Andersen, because such evidence is (a) highly relevant to proving at least two of the elements of a securities fraud claim; and (b) does not create a risk of (i) "unfair prejudice" or (ii) jury confusion.

### A.    The Restatement and Restatement Report Are Highly Probative Evidence for a Claim of Securities Fraud Under Section 10(b) and Rule 10b-5.

In support of their Rule 403 arguments, defendants in both actions first assert generally, without citing any legal support, that the Restatement and Restatement Report are "minimally probative" of the issues in the litigation. See Dunlap & Kersh Mot. at 59-61; Andersen Mot. at 29-30. However, corrected financial statements are highly probative of at least two of the elements of a private action under the federal securities laws:[12] whether there was a misstatement in the original financial statements and whether the misstatement was material. See, e.g., In re Telxon Corp. Secs. Litig., 133 F. Supp. 2d 1010, 1025 (N.D. Ohio 2000) (when ruling on defendants' motion to dismiss

---

[11]    Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[12]    See, e.g., Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1201-02 (11th Cir. 2001) ("[i]n order to state a claim under § 10(b) and Rule 10b-5," a private plaintiff must show a misstatement or omission, of a material fact, made with scienter, on which plaintiff relied, that proximately caused injury).

action under PSLRA, court held that company defendant was not in a position to dispute that it misstated material facts in its financial disclosures because company admitted its prior disclosures were materially misstated when it issued the restatements which gave rise to the litigation) (citing In re Peritus Software Servs., Inc. Secs. Litig., 52 F. Supp. 2d 211, 223 (D. Mass. 1999) ("after the fact accounting admissions may suffice to show that material misstatements occurred")). Restated financial statements are probative of these two issues because under GAAP and GAAS they cannot be filed unless the original financial statements contained material errors as defined in GAAP. See pages 11-12, above. Thus, under GAAP, restated financial statements must constitute an admission of past errors.

As a result, Andersen's broad assertion that the Restatement should be considered only minimally probative as to whether the original financial statements were materially misleading because many parts -- if not all -- of the Restatement made adjustments (particularly to judgmental reserves) to take into account subsequent information that did not and could not have existed at the time the original financial statements were prepared -- is inconsistent with GAAP and not well-founded. See Andersen Mot. at 29; see also pages 11-13, above.

## B.    Admission of these Documents Would Not Create Unfair Prejudice on the Issue of Defendants' Scienter.

As a second ground for their Rule 403 motion, defendants argue that introduction of the Restatement and Restatement Report would permit the jury to infer scienter improperly -- solely from the fact that a Restatement occurred and/or its magnitude.[13] They claim that the risk of this

---

[13]    Plaintiffs in both actions appropriately dismiss defendants' arguments on this issue as misguided because they do not intend to use the Restatement or Restatement Report as
(continued...)

improper inference constitutes both "unfair prejudice" and potential "jury confusion." Defendants'
assertions are not credible.[14]

With respect to their "unfair prejudice" claim, the Advisory Committee Notes to Rule 403
define "[u]nfair prejudice" as "an undue tendency to suggest decision on an improper basis * * *."
Similarly, a case cited by Andersen makes it clear that evidence creates an "unfairly prejudicial"
effect only "by the tendency of the evidence to prove some adverse fact <u>not properly in issue</u> or
unfairly to excite emotions against the defendant." See United States v. Figueroa, 618 F.2d 934, 943
(2d Cir. 1980) (emphasis added). The fact that the jury may infer scienter improperly -- solely from
the fact that a Restatement occurred and its magnitude -- does not mean that the evidence proves
"some adverse fact not properly in issue" or has an "undue tendency to suggest a decision on an
improper basis" (such as sympathy or bias). Indeed, scienter is properly in issue in a securities fraud
claim. See, e.g., Ziemba v. Cascade Int'l, Inc, 256 F.3d at 1201-02 ("[i]n order to state a claim under
§ 10(b) and Rule 10b-5," a private plaintiff must show a misstatement or omission, of a material fact,

---

[13]     (...continued)
         evidence of scienter.

[14]     In addition, defendants cite no apposite cases to support their argument.  Dunlap & Kersh
         Mot. at 61-64; Andersen Mot. at 30-31.  The trial court's bench ruling in United States v.
         Moscowitz, 97 Cr. 1122 (S.D.N.Y. Oct. 7, 1998), is distinguishable because although the
         court appeared to exclude from evidence the magnitude of a restatement for use against a
         former officer, the trial transcript excerpt provided by Andersen did not provide sufficient
         facts to understand the basis of the court's ruling.  The U.S. Attorney seeking to admit the
         evidence could not explain the purpose for which the evidence was sought to be entered and
         cited no cases in support of admitting the evidence to the court.  Counsel for the defendant
         made a motion to strike the evidence at the suggestion of the court.  Counsel did not explain
         the basis for the motion to strike or cite any cases in support of that motion to the court.
         Finally, the court did not explain its ruling, and did not cite to any rule of evidence or case
         to support its ruling.  Thus, contrary to Andersen's assertions, (Andersen Mot. at 30-31),
         there is no basis to conclude that the court excluded the evidence based on Rule 403.

18

made with scienter, on which plaintiff relied, that proximately caused injury).

Furthermore, the mere risk of the jury's improper inference of scienter based solely on the fact that a Restatement occurred and its magnitude cannot amount to an unfair tendency to "excite emotions against the defendant" in this case. Figueroa, 618 F.2d at 943. If Andersen's argument is taken to its logical conclusion, it asks the Court to exclude from the jury (a) the fact that a Restatement occurred; (b) the fact that Andersen audited the Restatement; and (c) the magnitude of the Restatement. Neither the letter nor the spirit nor the policy behind Rule 403 would be served by exclusion of this evidence in its entirety from the jury, as the evidence is highly probative to virtually every other element of a securities fraud claim (i.e., falsity of the original financial statements; the materiality of the false statements; and damages in private securities actions). In fact, exclusion of this evidence in its entirety would unfairly prejudice the plaintiffs' ability to prove their cases. In contrast, it would not unfairly prejudice the defendants. The fact that highly probative evidence is harmful to their defense does not amount to an "unfairly prejudicial" effect.

With respect to defendants' claims that there is a risk that the jury will be confused and draw an improper inference, the Commission endorses bondholder plaintiffs' argument (Mem. at 21-22) that the fact that parts of the Restatement may reflect a later judgment does not change the fact that other parts of the Restatement correct past errors, and this will not confuse the jury. The distinctions to be made with respect to parts of the Restatement are no different from other determinations that juries routinely make.

In sum, defendants should not be entitled to have the Restatement or Restatement Report excluded in their entirety under Rule 403.

19

## III.   THE RESTATEMENT AND RESTATEMENT REPORT ARE ADMISSIBLE UNDER EXCEPTIONS TO THE HEARSAY RULE.

Contrary to Dunlap and Kersh's arguments for excluding the Restatement and Restatement

report as hearsay, the principles supporting the admission of these documents against Andersen

under Rule 407 also support admitting them as business records subject to the Rule 803(6) hearsay

exception. In addition, Sunbeam's duty under the federal securities laws to provide restated financial

statements to correct material misstatements, and Andersen's duties to correctly report to Sunbeam

what those misstatements were and how they should be corrected, are indicia of trustworthiness that

also warrant their admission under the residual exception to the rule against hearsay found in Rule

807.[15]

### A.   Both Documents Should Be Admissible As Business Records Under Rule 803(6).

Rule 803(6) states that one type of document that is not excluded under the hearsay rule, even

though the person who wrote the document is available as a witness, is:

> [a] memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, * * * , unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

"Rule 803(6) 'favor(s) the admission of evidence rather than its exclusion if it has any probative

value at all.'" In re Ollag Constr. Equip. Corp., 665 F.2d 43, 46 (2d Cir. 1981) (citing United States

---

[15]   The Commission also endorses the shareholder plaintiffs' argument that the Restatement is admissible for non-hearsay reasons, such as to prove the market reaction to it, i.e., to prove that the false statements in Sunbeam's original 1996-97 financial statements were material. As the Restatement is admissible for such purposes, then by definition it is not hearsay excludable under Rule 802.

v. Carranco, 551 F.2d 1197, 1200 (10th Cir. 1977)). As the Restatement and Restatement Report are highly probative (as shown above), and meet each of the Rule 803(6) criteria disputed by Dunlap and Kersh, they should be admitted.

### 1.    The Restatement is a Business Record of Sunbeam's.

Periodic corporate reports such as ordinary periodic filings with the Commission are admissible business records under Rule 803(6). Indeed, Dunlap and Kersh concede that "a 'traditional financial statement audit * * * is generally admissible as a business record of the audited entity'" under Rule 803(6). See Dunlap & Kersh Mot. at 46 (citing Paddack v. Christensen, 745 F.2d 1254, 1257 n.3 (9th Cir. 1983)).[16] The Restatement stands on the same legal footing as those filings because companies as a matter of course are expected to file restated financial statements with the Commission when errors discovered in their original financial statements so warrant. Indeed, Sunbeam's Restatement was made in a Form 10-K/A filed with the Commission on November 12, 1998, and subject to the same accuracy requirements as any other periodic filing with the Commission. At any rate, the Restatement meets the requirements of Rule 803(6), despite Dunlap and Kersh's protestations to the contrary.

---

[16]    See also Van Zant v. Todd Shipyards Corp., 847 F. Supp. 69, 71 n.2 (S.D. Tex. 1994) (corporation's annual report admissible under Rule 803(6)) also In re Zodiac Enterprises, 84 B.R. 874 , 877-78 (Bankr. S.D. Fla. 1988) (audited financial statements of corporation admitted under Rule 803(6)); In re Vaniman Int'l, 22 B.R. 166, 192 (Bankr. E.D.N.Y. 1982).

## a. The Restatement is Sufficiently Contemporaneous to Andersen's Related Audit.

As the Restatement was prepared close in time to the Andersen investigation that commenced in the summer of 1998, it satisfies Rule 803(6)'s contemporaneity requirement. Dunlap and Kersh argue that the Restatement is not admissible under Rule 803(6) because it (along with the Restatement Report) were made between several months to almost two years after some of the events they review. See Dunlap & Kersh Mot. at 47-48. As this is the wrong frame of analysis, however, their argument must fail. For financial statements, and for reports like the revised Andersen audit report and the Restatement Report, the document is sufficiently contemporaneous for Rule 803(6) purposes if the statement or report was made shortly after the conclusion of the investigation that it reflects, not the events being audited. See, e.g., In re The National Trust Group, Inc., 98 B.R. 90, 92 (Bankr. M.D. Fla. 1989) (for an audit report, "the contemporaneousness requirement relates to the event of the audit and the subsequent report, not the records and information relied upon by the auditor").[17] The Andersen investigation was not started until after June 25, 1998, (see October 16, 1998 letter from Andersen to Sunbeam Board of Directors (attached to the Restatement Report)), Andersen's audit report and the Restatement Report were dated October 16, 1998, and the

---

[17] See also Wilson v. Chrysler Motors Corp., 1998 WL 83098, *1 (N.D. Ill. Feb. 25, 1998) (memoranda written contemporaneously with investigation were admissible under Rule 803(6)), rev'd in part on other grounds, 172 F.3d 500 (7th Cir. 1999); Condus v. Howard Savings Bank, 986 F. Supp. 914, 918 (D.N.J. 1997) (report on quality of bank's credit administration process was contemporaneous under Rule 803(6) where report was finished over two months after investigation was initiated, and investigation continued "right up until the presentation of the final report"); Pfeffer v. Southern Tex. Laborers Pension Trust Fund, 679 S.W.2d 691, 694 (Tex. App.–Houston [1st Dist.] 1984) (applying parallel Tex. R. Evid. 803(6)); cf. Ford Motor Co. v. Auto Supply Co., 661 F.2d 1171, 1175 (8th Cir. 1981) (business report made at end of business year was admissible under Rule 803(6)).

22

Restatement was publicly filed on November 12, 1998. Given this close proximity in time, the documents clearly meet the contemporaneity requirement. See, e.g., In re National Trust Group, 98 B.R. at 93; Condus, 986 F. Supp. at 919.

## b. It is the Regular Practice of Sunbeam, Like Any Other Company, to Prepare Financial Statements to be filed with the Commission.

It is the regular practice of companies like Sunbeam to prepare financial statements, such as the Restatement, which are filed with the Commission. It is equally the regular practice of auditors like Andersen to audit financial statements which are to be filed with the Commission. Indeed, in the Sunbeam Form 10-K/A filed with the Commission, see id. at page F-2, Andersen confirms that it conducted its audit "in accordance with generally accepted auditing standards," as per its regular practice. Moreover, Sunbeam has a statutory duty to file accurate financial statements and to correct misleading ones and Andersen has legal duties to withdraw its audit report on materially misleading financial statements upon which it knows people may rely. As discussed above, GAAP and GAAS impose a duty upon Andersen to (1) investigate information material to investors that would have affected its audit opinion after it becomes aware of the information; (2) advise the client to make appropriate disclosures of the information, including a restatement if appropriate under APB Opinion 20; and (3) take steps to prevent future reliance upon its report. See pages 11-12, above. Certainly it is the regular business practice of Sunbeam and Andersen, as with any company or auditor, to prepare financial statements and conduct audit activities required by law. For these reasons, the Form 10-K/A containing the Restatement, which was filed with the Commission, is every bit as much a business record as the other "traditional financial statement audit[s]" that Dunlap and Kersh concede are admissible.

23

Straining to escape this logical analysis, Dunlap and Kersh claim that because Sunbeam's Restatement was prepared following the discovery of past improprieties, rather than as an ordinary periodic financial statement, it was not prepared in the regular course of business. Dunlap & Kersh Mot. at 49-57. This argument is without merit. Even though the preparation of a given document arises under non-routine circumstances, it can still be deemed prepared in the regular course of business. See United States v. Jacoby, 955 F.2d 1527, 1537 (11th Cir. 1992) (admitting attorney memorandum that was "not a routine type of thing"). Indeed, Paddack, the case upon which Dunlap and Kersh primarily rely for this point, actually supports the shareholder plaintiffs' argument. There the court found that the "special audit" report done by Deloitte was not done pursuant to its regular business practice because the Deloitte "accountants were not requested to undertake a traditional financial statement audit," but were asked to conduct a one-time inquiry into the extent of management's compliance with its collective bargaining agreements with the union. Id. at 1257. In short, Deloitte was not engaging in its usual line of business. Here, in contrast, Andersen's auditing of the Restatement (and preparation of its Restatement Report), albeit not for an ordinary periodic financial statement, are the product of a "traditional" financial statement audit, and were thus prepared as part of Andersen's regular business practice. See also Jacoby, 955 F.2d at 1537 (noting that non-routine attorney memorandum was prepared in the regular course of business when attorney habitually wrote memoranda to file to explain or record an unusual circumstance).

### c. The Circumstances Surrounding the Preparation of the Restatement Demonstrate Its Trustworthiness.

Finally, the circumstances present here do not call into question the Restatement's trustworthiness. Rather, the Restatement was done under circumstances which tend to reinforce its

24

reliability. By filing restated financial statements with the Commission, a company announces that it had previously materially misstated its financial condition or its results of operations. This exposes it to a high risk of civil and criminal investigations and legal actions by the federal government -- as Sunbeam and Andersen can doubtless attest to here -- with the attendant costs and potential liability. It also exposes the company to private litigation, and often causes the value of its securities to drop precipitously -- as also happened here. These adverse consequences of filing restated financial statements counsel against a company overstating its past errors in restated financial statements since those overstatements would be against its interest.[18] Moreover, Sunbeam is under a legal duty to provide accurate information in the Restatement, see pages 6-7, above, and Andersen similarly can incur legal liability as well if it falsely attests that the Restatement complies with GAAP. This risk of legal sanction for filing false information with the Commission likewise is an indicium of reliability of the Restatement.[19]

Given these multiple indicia of trustworthiness, the Court should exercise its broad discretion to admit the Restatement. See United States v. Metallo, 908 F.2d 795, 798-99 (11th Cir. 1990) (affirming trial court's broad discretion under Rule 803(6) to admit Dun & Bradstreet report that

---

[18] Cf. Macuba v. Deboer, 193 F.3d 1316, 1327 (11th Cir. 1999) (in Rule 804(b)(3) context, allowing admission of statements "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless believing it to be true").

[19] See, e.g., United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (rejecting claim that audit report was untrustworthy where it was prepared, at request of government, to assure auditee's compliance with federal regulations); In re Ollag Constr. Equip. Corp., 665 F.2d at 46 (financial statements provided to a bank in regular course of its business qualified as business records, in part because providing false information under such circumstances is subject to criminal sanctions).

25

suggested that defendant had exaggerated his corporation's financial success, as trial court found document was trustworthy); United States v. Bueno-Sierra, 99 F.3d 375, 378 (11th Cir. 1996) (admitting document pursuant to Rule 803(6), noting that "[t]he touchstone of admissibility under the business records exception to the hearsay rule is reliability").

In disputing admissibility on this point, Dunlap and Kersh again rely primarily on Paddack, which held that an audit report of a pension fund was not admissible under Rule 803(6) because, among other things, the report had been commissioned by plaintiffs with an eye to litigation and was deemed self-serving. 745 F.2d at 1258-59. In contrast, here Sunbeam and Andersen, as discussed above, had incentives to produce an accurate Restatement. Also, unlike in Paddack, here the party seeking to introduce the Restatement did not commission its preparation, but wants to use it as admissions by its preparers. This is not a self-serving purpose. Nor can it fairly be said to have been prepared for litigation – it was prepared for filing with the Commission, a regular (and required) business activity of Sunbeam's, and the information contained therein will be relied on in Sunbeam's future periodic filings with the Commission and in its statements concerning trends in its business fortunes. This point, too, weighs heavily in favor of the Restatement's admissibility.[20] Indeed, even if the Restatement could somehow be deemed to have been prepared for litigation, its concurrent

---

[20] See, Jacoby, 955 F.2d at 1537-38 (citing Advisory Committee Note to Rule 803(6) for proposition that "[t]he element of unusual reliability of business records is * * * supplied by * * * actual experience of business in relying upon them"); United States v. Ullrich, 580 F.2d 765, 771-72 (5th Cir. 1978) (business records were admissible under Rule 803(6) as they were integrated into company's records and relied upon in its day-to-day operations); Doe v. United States, 805 F. Supp. 1513, 1517 (D. Hawaii 1992) (hospital blood test records admitted under 803(6) where they were prepared under duty of accuracy knowing that they would be relied on by government).

26

(indeed, overriding) business purpose supports its admission under Rule 803(6).[21] With regard to Dunlap and Kersh's assertion that they find the Restatement (along with the Restatement Report) inaccurate in some respects, see Dunlap & Kersh Mot. at 55 (alleging that restatement here was not prepared in accordance with GAAP), the contention that a business record offered as evidence is inaccurate "is an assault on its weight, not its admissibility." Crompton-Richmond Co., Inc. Factors v. Briggs, 560 F.2d 1195, 1202 n.12 (5th Cir. 1977). It certainly provides scant reason for excluding the document.

For all of these reasons the Restatement, as a set of financial statements filed with the Commission, accompanied by an audit opinion from Andersen, is admissible as a business record.

### 2. The Restatement Report is a Business Record of Andersen's.

The Restatement Report is also admissible pursuant to Rule 803(6) for similar reasons as undergird the admissibility of the Restatement. As with the Restatement, because the Restatement Report followed closely on the heels of Andersen's 1998 investigation concerning Sunbeam's earlier financial statements, it satisfies the contemporaneity requirement of Rule 803(6). See pages 22-23, above.

While Dunlap and Kersh challenge the admissibility of the Restatement Report on the ground that, in their eyes, it is not an audit report conducted in the regular course of business, but a special audit conducted for litigation, see Dunlap & Kersh Mot. at 56, that rationale cannot withstand

---

[21] See, e.g., Frazier, 53 F.3d at 1110 (audit report had business significance apart from use in litigation because auditor was bound by contract to prepare the report and was interested in seeing that the report was accurate) (citing United States v. McIntyre, 997 F.2d 687, 700 (10th Cir. 1993)); Condus, 986 F. Supp. at 920; In re Memorex Telex Corp., 242 B.R. 826, 832 (D. Del. 1999).

27

scrutiny. As with the Restatement, what matters is not the non-routine nature of the Andersen audit which is reflected in the Restatement Report, but the fact that Andersen was conducting the type of "traditional financial statement audit," Paddack, 745 F.2d at 1257, that is its regular business. See pages 23-24, above.[22] Here, under GAAS, Andersen had a duty to investigate once it became aware of the facts that led it to withhold consent for use of its original 1997 audit opinion in connection with Sunbeam's registration statement for privately-placed debt in June 1998. See AU § 561.04 (describing an auditor's duty to investigate information he becomes aware of which relates to financial statements previously reported on by him if the information was not known to him at the date of his report and is of such a nature and such a source that he would have investigated it had it come to his attention during the course of his audit). Thus, Andersen's preparation of the Restatement Report documenting its investigation was part of its ordinary course of business as an auditor.[23] In the same way, the Restatement Report reflects an audit of financial statements that is

---

[22]    See also Frazier, 53 F.3d at 1110 (stressing that auditor had 10 years experience preparing regulatory compliance audit reports like the one at issue, and had audited that firm twice before); Condus, 986 F. Supp. at 918 (bank audit report was made in the regular course of business where auditor "specializes in precisely this type of consulting. It is their business to analyze banks and issue these types of reports"); United States v. Blackwell, 954 F. Supp. 944, 976 (D.N.J. 1997) (admitting financial audit where this type of record was created and maintained in the ordinary course of business); California Serv. Employees Health & Welfare Trust Fund v. G.C. Theatre Corp., 1998 WL 320846, *6 (N.D. Cal. June 15, 1998) (admitting audit report by Coopers & Lybrand of defendants' contributions to pension fund over a four-year period where report appeared to be prepared pursuant to a regular compliance audit procedure).

[23]    In contrast, the report at issue in Goldsmith v. Commissioner, 86 T.C. 1134, 1145 (1986), cited by Dunlap and Kersh, was a special report with no purpose other than in connection with possible litigation. As for Fusijawa Pharm. Co., Ltd. v. Kapoor, 1999 WL 543166 (N.D. Ill. July 21, 1999), also cited by Dunlap and Kersh, that case (unlike this one), involved a report which was not prepared in the normal course of the auditor's business. See
(continued...)

part of Andersen's regular business practice, and Andersen has considerable prior experience auditing Sunbeam.

Moreover, just as with the Restatement, Dunlap and Kersh fail to carry their burden, <u>see</u> <u>In re National Trust Group, Inc.</u>, 98 BR. at 93, of showing that the Restatement Report was produced under circumstances indicating that it is not trustworthy. In requesting the Restatement Report, Sunbeam was contracting with Andersen to provide an accurate report of what needed to be changed from prior financial statements and why. <u>See</u> <u>Frazier</u>, 53 F.3d at 1110 (auditor "was bound by contract to prepare the report and was interested in insuring the report was accurate"); <u>Condos</u>, 986 F. Supp. at 918 (it was auditor's duty under contract "to provide an accurate report so that the [bank's] Governance Committee could rely" on report assessing quality of bank's credit administration process).[24]   Andersen also knew that the Restatement Report, by identifying misleading statements in prior Sunbeam financial statements that Andersen had audited, and explaining the reasons why corrections were necessary, was exposing itself to possible government investigation and private litigation. Thus, Andersen had incentives in the Restatement Report not

---

[23]   (...continued)
   <u>id.</u> at *11. Moreover, to the extent that either of these cases can be read to counsel against admitting the Restatement Report under Rule 803(6), they are not binding and contrary to the vast weight of authority.

[24]   This point also distinguishes the Restatement Report from the reports at issue in <u>Goldsmith</u>, 86 T.C. at 1144, and <u>Allianz Ins. Co. v. Taylor</u>, 62 B.R. 846, 853 (Bankr. E.D. Va. 1986), and <u>SEC v. Price Waterhouse</u>, 797 F. Supp. 1217 (S.D.N.Y. 1992). In those cases, as Dunlap and Kersh note, the reports were excluded because they were prepared solely for litigation purposes. <u>See</u> Dunlap & Kersh Mot. at 54 (conceding that reports in <u>Goldsmith</u> and <u>Taylor</u> were prepared for litigation); <u>Price Waterhouse</u>, 797 F. Supp. at 1220 n.8 (noting that the report at issue was requested by party's counsel "in anticipation of the litigation that was expected").

29

to overstate the magnitude or scope of the revisions needed to correctly state Sunbeam's prior financial statements. These reasons counsel in favor, of finding the Restatement Report trustworthy and admissible under Rule 803(6).[25]

## B. Both Documents Are Admissible Under the Rule 807 Residual Exception to the Rule Against Hearsay.

Beyond their admissibility under Rule 803(6), the Restatement and the Restatement Report are admissible under the residual hearsay exception found in Rule 807.[26]    While courts have indicated Rule 807 should not be construed broadly, see United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977), it is equally true that admissibility of a document under the residual hearsay exception relies heavily on a judgment as to the reliability of that document, a judgment for which this Court is accorded broad discretion. See Balogh's of Coral Gables, Inc. v. Getz, 798 F.2d 1356, 1358 (11th Cir. 1986); SEC v. First City Fin. Corp., 890 F.2d 1215, 1225 (D.C. Cir. 1989); see also

---

[25]    See Condus, 986 F. Supp. at 920 (audit report was trustworthy, as auditor had no motive to be overly and unfairly critical); Frazier, 53 F.3d at 1110 (auditor had "nothing to gain from any possible litigation"); see also note 21, above (cases noting admissibility when document had non-litigation purpose).

[26]    That rule states that:

> [a] statement not specifically covered by Rule 803 or Rule 804 but having equivalent circumstantial evidence of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is being offered for a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

As noted above, see pages 16-17, the Restatement and Restatement Report are highly probative evidence against the Dunlap and Kersh, and it certainly would be in the interests of justice to allow the admission of such highly probative evidence.

Dunlap and Kersh Reply Br. at 14 (noting that the basic notion that underpins all of the hearsay exceptions is trustworthiness).

The Restatement and Restatement Report satisfy this criterion. As discussed above, both documents were produced under circumstances that are highly indicative of their trustworthiness, as Sunbeam and/or Andersen had legal duties to see that the Restatement was filed and was correct, and the publication of both documents would expose them to government scrutiny, lawsuits and legal damages, along with a drop in stock price for Sunbeam and possible loss of auditing business for Andersen. See pages 24-25, 29. Such circumstances have previously been held to justify the admission of documents offered into evidence by the government under the residual exception. See, e.g., United States v. White, 611 F.2d 531, 537-38 (5th Cir. 1980) (admitting under residual hearsay exception a claim form filed with the Treasury Department, finding that the form had indicia of reliability because it was made under threat of prosecution for false statements); First City Fin. Corp., 890 F.2d at 1225 (admitting chronologies submitted to Commission under residual exception, as corporation would have been subject to possible criminal liability for making false statements in chronology); cf. Macuba, 193 F.3d at 1327.

31

## **CONCLUSION**

For the foregoing reasons, the Commission requests that this Court deny defendants' motions

in limine.


Dated:  January 9, 2002                              Respectfully submitted,

                                                     DAVID M. BECKER[27]
                                                     General Counsel

                                                     RICHARD M. HUMES
                                                     Associate General Counsel

                                                     *Thomas Karr*

                                                     THOMAS KARR
                                                     Special Trial Counsel

                                                     MICHELE R. VOLLMER (FBN 854816)
                                                     Senior Counsel

                                                     SECURITIES AND EXCHANGE
                                                       COMMISSION
                                                     450 Fifth Street, N.W.
                                                     Washington, D.C.  20549-0207
                                                     (202) 942-0940
                                                     (202) 942-9537 (facsimile)


---

[27]    Counsel for the Commission are appearing pursuant to Rule 4(C) of this Court's Special
        Rules Governing Admission and Practice of Attorneys.

32

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing Brief of the Securities and Exchange Commission as Amicus Curiae Regarding Defendants' Motions in Limine to Exclude Evidence Of The Restatement and Restatement Report by fax upon the counsel of record listed on the attached Service List on this 9th day of January, 2002:

Michele R. Vollmer
_____
Michele R. Vollmer



# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
# OFFICE OF THE GENERAL COUNSEL
# WASHINGTON, D.C. 20549

## FACSIMILE COVER SHEET

THIS TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR EXEMPT FROM DISCLOSURE. IF THE READER OF THIS NOTICE IS NOT THE INTENDED RECIPIENT OR AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMISSION TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY PHONE AND AWAIT INSTRUCTIONS FOR HANDLING THE TRANSMISSION. THANK YOU.

**January 9, 2002**

### Please deliver immediately

| To: | Joseph Jamail | Fax: | 713-651-1957 |
|---|---|---|---|
| | Andrew Mytelka | | 409-766-6424 |
| | Jeff Ross | | 612-336-9100 |
| | Matthew Triggs | | 561-241-6145 |
| | C. Thomas Tew | | 305-536-1116 |
| | Brian Rosner | | 212-514-4677 |
| | Thomas J. McGonigle | | 202-659-4130 |
| | Donald S. Zakarin | | 212-326-0806 |
| | Brian Elias | | 305-789-2001 |
| | Roger W. Kirby | | 212-751-2540 |
| | Eliot Lauer | | 212-697-1559 |
| | Merrill Davidoff | | 215-875-4636 |
| | Abraham Rappaport | | 561-367-8400 |
| | M. Richard Komins | | 561-671-5969 |
| | Robert Kornreich | | 212-486-2093 |
| | Lance Harke | | 305-536-8220 |
| From: | Tom Karr, Michele Vollmer | Fax: | 202-942-9537 |
| | | Phone: | 202-942-0853 (Karr) |
| | | | 202-942-0818 (Vollmer) |

Total Number of Pages (including cover sheet): 32

**Remarks:**

The Commission's Amicus Brief on Motion In Limine is attached.

**If the complete transmission is not received, please call the sender as soon as possible.**