# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 1

▷
In re CV Therapeutics, Inc.
N.D.Cal.,2004.

United States District Court,N.D. California.
In re CV THERAPEUTICS, INC. Securities Litigation
**No. C 03-03709 SI.**

Aug. 5, 2004.

Patrick J. Coughlin, Reed R. Kathrein, Lerach Coughlin Stoia & Robbins LLP, Sylvia Wahba, Milberg Weiss Bershad & Shulman LLP, Robert A. Jigarjian, Green & Jigarjian LLP, San Francisco, CA, Darren J. Robbins, William S. Lerach, Lerach Coughlin Stoia & Robbins LLP, San Diego, CA, Sean M. Handler, Esq., Schiffrin & Barroway, LLP, Bala Cynwyd, PA, for Plaintiffs.
John C. Tang, Latham & Watkins, Paul H. Dawes, Latham & Watkins, Menlo Park, CA, Michele D. Johnson, Latham & Watkins, Costa Mesa, CA, for Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDICIAL NOTICE

ILLSTON, J.
*1 This Document Relates to All Actions

On June 25, 2004, this Court heard argument on the motions to dismiss the consolidated complaint by defendants CV Therapeutics, Inc., Louis Lange, Brent Blackburn, Daniel Speigelman, and Luiz Belardinelli. Having carefully considered the arguments of the parties and the papers submitted, the Court DENIES the motions to dismiss against CV Therapeutics and individual defendants Lange and Speigelman. The Court GRANTS the motion to dismiss by individual defendants Brent K. Blackburn and Luiz Belardinelli without leave to amend. The Court GRANTS in part and DENIES in part defendants' requests for judicial notice. Reasons for the Court's decisions are set forth below.

BACKGROUND

This is a securities class action against CV Therapeutics, Inc. ("the Company") and certain of its officers (the "individual defendants") under Sections 10(b) and 20(a), and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act"). The case is brought on behalf all purchasers of the publicly-traded securities of the Company between December 30, 2002 and December 5, 2003 ("the class period").

CV Therapeutics is a Palo Alto, California "biopharmaceutical company focused on the discovery, development and commercialization of new small molecule drugs for the treatment of cardiovascular diseases."ConsolCompl. ¶ 2, 16."Throughout the Class Period, defendants misled analysts, the investing public and even the FDA [Food and Drug Administration] into believing that their novel anti-anginal drug, Raxena, was safe and effective for public use in an unrestricted population, and that the Company had conducted sufficient clinical studies to prove it."Consol. Compl. ¶ 3. The complaint alleges that defendants' false and misleading statements artificially inflated the Company's stock. Consol. Compl. ¶ 4.

Plaintiffs allege that in July, 2003, defendants misrepresented that the FDA had scheduled Raxena for review by its Cardiovascular-Renal Advisory Committee (the "Advisory Committee") on September 15-16, 2003, "an event which signifies that the FDA is ready to act on the drug."Consol. Compl. ¶ 5. Yet, "[i]nternal FDA notes ... reveal that ... there was little likelihood that such a meeting could take place."*Id.* When the Company acknowledged on August 1, 2003, that "this alleged meeting was 'cancelled,' " the stock price fell 20.8%.*Id.* On October 23, 2003, the Company announced that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 2
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Advisory Committee would review Raxena on December 9, 2003, resulting in a stock price increase from $18.22 per share on October 22, 2003 to $22.45 per share on October 23, 2003. Consol. Compl. ¶ 6.

On October 30, 2003, "the FDA issued an 'approvable letter with conditions' indicating that 'additional clinical information is needed prior to approval." Consol. Compl. ¶ 7, citing Ex. 2. On this news the stock price fell 21.7%. Id. "On the eve of the December 9, 2003" hearing, the FDA released internal documents in connection with its review of the Company's Raxena New Drug Application (NDA). Documents released included the October 30, 2003 Approvable Letter. The "documents reveal that the FDA found major deficiencies pertaining to the Company's clinical studies, including the QT prolongation,[FN1] the efficacy in women, and the fact that 98% of the study population was Caucasian." Consol. Compl. ¶ 9, citing Ex. 4. On December 8, 2003, the stock price fell 27%, Consol. Compl. ¶ 10, and analysts "slashed their estimates for the Company." Consol. Compl. ¶ 11.

> FN1. According to the Complaint, "Raxena is an anti-anginaltherapy drug, known to extend the QT interval. Adverse pro-arrhythmic effects linked to QT interval prolongation are of concern to the FDA. Side effects linked to QT interval prolongation include torsade de pointes, ventricular tachycardia, ventricular arrhythmia, ventricular ectopy, ventricular fibrillation and flutter, cardiac arrest, sudden death, syncope, dizziness and palpitations." Consol. Compl. ¶ 34.

*2 According to the complaint, the defendants knew and concealed from the investing public the following information: first, the Company's July 7, 2003 announcement of a forthcoming Advisory Committee meeting was "misleading because neither the FDA nor CV Therapeutics had in fact yet decided to go ahead with a September 2003 Advisory Committee meeting for Raxena because of severe deficiencies in the NDA"; second, the Company "was aware that its data regarding its findings of QT interval prolongation posed serious concerns and had been portrayed in a misleading fashion to the investing public"; third, because "of the serious safety concerns regarding QT/QTc prolongation limiting chances of approval for the drug, the FDA had encouraged CV Therapeutics to study the drug as a second-line therapy"; finally, defendants knew that "the safety and efficacy data of Raxena were so flawed and deficient that the NDA would not be approved without additional clinical trials." Consol. Compl. ¶ 14.

The lead plaintiff in this action, appointed by this Court on November 21, 2003, is David Crossen. The individual defendants are Louis G. Lange, a Company founder and its Chairman and Chief Executive Officer ("CEO"); Brent K. Blackburn, the Company's Senior Vice President of Drug Discovery and Pre-Clinical Development; Daniel K. Speigelman, a Senior Vice President of the Company and its Chief Financial Officer (CFO); and Luiz Belardinelli, the Company's Vice President of Drug Research and Pharmacologic Sciences. Consol. Compl. ¶¶ 20-23. Plaintiff alleges that each defendant is liable for making false statements or for failing to disclose "adverse facts known to him" about the Company.

Plaintiffs partly relied on four confidential witness interviews (CW 1-4) for the complaint's factual allegations. According to the witness interview statement, each confidential witness is a former employee or independent contractor of the Company. Furthermore, each witness had "direct access to information that supports statements contained in the Complaint, and their accounts directly corroborate the independent testimony of one another." Consol. Compl. (Witness Interviews) at 53. Now before the Court are motions by the Company and by the individual defendants to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) and for the Court to take judicial notice of documents.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

LEGAL STANDARD

1. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *SeeScheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *SeeUsher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *SeeUnited States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

*3 If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."*Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

2. Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."15 U.S.C. § 78j(b).

Rule 10b-5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5

In order to state a claim under section 10(b) and Rule 10b-5, the plaintiff must allege (1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately caused the alleged loss. *SeeBinder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999). Generally, plaintiffs in federal court are required to give a short, plain statement of the claim sufficient to put the defendants on notice. Federal Rule of Civil Procedure also requires that "the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b).

3. Private Securities Litigation Reform Act

The Private Securities Litigation Reform Act of 1995 (the "Reform Act" or the "PSLRA") was enacted as an amendment to the Exchange Act. *SeeIn re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 973 n. 2 (9th Cir.1999). Under the Reform Act:

In any private action arising under his chapter under which the plaintiff may recover money damages only on proof that the defendant acted with a partic-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 4

ular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2).

The required state of mind is "at a minimum, deliberate recklessness." *In re Silicon Graphics,* 183 F.3d at 983. Scienter may be pled and proven by reference to circumstantial evidence. *SeeIn re Peoplesoft Sec. Litig.,* No. C 99-0472, slip op. at 5 (May 26, 2000). However, when pleading on information and belief, a plaintiff must plead with "particularity" by "provid[ing] all facts forming the basis for [plaintiff's] belief in great detail."*In re Silicon Graphics,* 183 F.3d at 983;*seealso*15 U.S.C. § 78u-4(b)(1). Therefore, the Reform Act has strengthened the pleading requirements of Federal Rule of Civil Procedure 9(b).

3. Rule 9(b)

*4 Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."Federal securities fraud claims, like common law fraud claims, are subject to the special pleading requirements of Rule 9(b).*Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985).

Rule 9(b) requires particularity in pleading the circumstances constituting fraud. The Ninth Circuit has interpreted this requirement to mean that allegations of fraud must be specific enough to give defendants notice of "the particular misconduct which is alleged to constitute the fraud."*Seeid.*In the securities context, a plaintiff may aver scienter generally, but must state the "time, place, and content" of the alleged misrepresentations, and "an explanation as to why the statement or omission complained of was false or misleading."*In re Glen Fed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 (9th Cir.1994)(en banc) (remanded to *In re Glen Fed, Inc. Sec. Litig.,* 60 F.3d 591 (9th Cir.1995).

4. Control person liability

Under Section 20(a) of the Exchange Act, "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."15 U.S.C. § 78t(a).

5. Request for judicial notice

Generally, when considering a motion to dismiss, a district court must consider only the facts stated in the plaintiffs' complaint, or in documents attached to the complaint as exhibits or incorporated into the complaint by reference. Under certain circumstances, the court may also consider matters that are appropriate subjects of judicial notice under Fed.R.Evid. 201.*Kramer v. Time Warner,* 937 F.2d 767, 773 (2d Cir.1991). While the general rule is that, "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," in a securities action a court may also consider documents that the defendant has attached to its motion to dismiss either as exhibits or accompanied by a request for judicial notice.*Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997).

DISCUSSION

1. The Company's motion to dismiss

In its motion to dismiss, the Company argues that defendants' statements concerning the efficacy and safety of Raxena and its ultimate FDA approval had a "reasonable basis," making the statements not false or misleading when made. The Company argues that plaintiffs' allegations demonstrate that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 5
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

FDA concluded that "Raxena works" and that "at least four independent Advisory Committee members providing FDA with expert advice concluded that Raxena is sufficiently safe to be approved without further study."Company's Motion at 1, *citing* Request for Judicial Notice (RJN) Ex. A at 361-67; 369-70; Compl. Ex. 7 at 1 (emphasis omitted). The Company argues that plaintiffs have failed to meet the PSLRA's heightened pleading standard for alleging fraud and that plaintiffs have failed sufficiently to allege scienter.

*5 The Company divides the 27 challenged statements during the class period into five categories, which the Court adopts for the purpose of analysis:

(1) Allegedly false or misleading optimistic statements regarding the likelihood of FDA approval, which statements fraudulently downplayed the existence and significance of certain problems, principally the significance of the QT prolongation issue;

(2) Allegedly false or misleading statements regarding the data in the NDA, principally data that related to QT prolongation;

(3) Allegedly false or misleading statements regarding the scheduling of the Advisory Committee meeting;

(4) Allegedly false or misleading statements regarding the Approvable Letter; and

(5) Allegedly false or misleading statements that failed to disclose the substance of ongoing discussions between CVT and the FDA between the time the NDA was filed and the time the FDA issued its Approvable Letter. Company's Motion at 12-13.FN2

> FN2. Plaintiffs' Opposition categorizes the allegedly false or misleading statements into four categories. The Court will use defendant's categorization in order to address the moving parties' arguments.

In order to state a claim under Section 10(b), a plaintiff must allege specific facts showing that a defendant's statements were false or misleading when they were made. See*Ronconi,* 253 F.3d at 431, 434. The Company argues that the complaint fails to allege contemporaneous facts contradicting the challenged statements, thus failing to show that the challenged statements were false or misleading when made. Company's Motion at 14.FN3

> FN3. For its argument concerning the PSLRA Safe Harbor and the Bespeaks Caution Doctrine, as well as for its argument regarding scienter, the Company relies on the arguments in the individual defendants' motion to dismiss. Company's Motion at 25.

In their Opposition, plaintiffs argue that "defendants have unwittingly provided plaintiffs with a smoking gun-the [FDA] Discipline Review Letter dated July 17, 2003."Oppo. at 1,FN4*citing* Defs.' Decl. Ex. J.FN5 Plaintiffs argue that their complaint adequately pled that "defendants continuously misrepresented to the market their belief that Raxena was well on its way to approval by the FDA, and that no significant issues posed a threat."In its Reply, the Company characterizes the Discipline Review Letter as "just a snapshot of the discussions during the evolving process of moving a drug toward a final regulatory decision ."Company's Reply at 12. As the Court explains below, the Complaint has survived the defendants' motions to dismiss, except with respect to defendants Blackburn and Belardinelli. Characterizations of the allegations and evidence will need to wait for the next stage of the litigation.

> FN4. Plaintiffs have filed a consolidated opposition to the two motions to dismiss.
>
> FN5. Plaintiffs seek incorporation of the Discipline Review Letter into the complaint under *Branch v. Tunnel,* 14 F.3d 449, 453-54 (9th Cir.1994). Alternatively, they seek leave to amend the complaint.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 6

Defendants have requested that the Court take judicial notice of the document, so the Court grants plaintiffs leave to amend because the letter contains four pages of very specific concerns that the FDA had regarding Raxena, which defendants allegedly concealed from the public. Consol. Compl. ¶ 70.

A. "A reasonable basis" for statements concerning efficacy and safety

The Company relies on *DeMarco v. DepoTech Corp.*, 149 F.Supp.2d 1212 (S.D.Cal.2001), *aff'd,* No. 01-55298, 2002 WL 461217 (9th Cir.2002) for its argument that having a reasonable basis for believing in Raxena's safety and efficacy precludes defendants' liability for any alleged false or misleading statements. According to the Company, plaintiffs "ignore numerous contemporaneous facts that provided ample factual support for Defendants' statements."Company's Motion at 15. For example, the Company argues that plaintiffs have ignored that the October 30, 2003 Approvable Letter stated, "there is evidence that ranolazine is an effective anti-anginal drug in an undifferentiated population of patients, including patients receiving submaximal treatment with other anti-anginals."Consol. Compl. Ex. 3. In their motion to dismiss, the individual defendants cite a comment during the December 9, 2003 Advisory Committee meeting made by Douglas Throckmorton, Director of the FDA's Division of Cardio-Renal Drug Products:

*6 I mean, Dr. Belardinelli, elegant presentation. Thank you for presenting an overview of the data from the sponsor's conclusions here. It's probably just worth noting that the FDA reviewers contested some aspects of the interpretation that you've presented today and just informed us, in fact, that the reviewers did conclude that there was evidence of transmural dispersion under conditions of hypokalemia. I understand that you and they have had an opportunity to talk about that and disagree with that interpretation. Individuals' Motion to Dismiss ("Ind.Mot.") at 7, *citing* RJN Ex. A at 167-68.

The complaint alleges that defendants "consistently downplayed the severity of the QT interval prolongation effect of Raxena."Oppo. at 9. As just one example, Lange stated in a CNBC interview on December 30, 2002, "we believe that for Ranolazine [FN6] (ph) [the QT effect] won't be a particular problem for review by the agency. It will be discussion item."Consol. Compl. ¶ 88. Plaintiffs argue that contemporaneous facts indicate that this statement was false or misleading when made. For example, plaintiffs point to an FDA Clinical Review Document, which summarizes agency meeting minutes. "[C]oncerns raised by the Agency in July, 2000 included ... QT prolongation, [which] remained a major concern and the company would have to prove that the clinical benefit outweighed the safety risks."On August 13, 2002, the minutes noted that "QT prolongation was a concern, and the Agency believed that additional safety data were needed."Consol. Compl. Ex. 4 at 13.

FN6. Both parties use the terms "Raxena" and "ranolazine" interchangeably.

Plaintiffs have alleged with particularity statements that were false and/or misleading when made; they have also demonstrated contemporaneous facts which demonstrate the falsity of the defendants' statements. As another Court held, "the concerns raised by the FDA ... were much more significant than a 'bump on the road' and shed serious doubt on the sufficiency of the trials. Accordingly, Defendants were obligated to disclose the FDA's concerns to render their statement not misleading."*Amylin Pharmaceuticals, Inc. Sec. Litig.,* 2003 WL 21500525 at *8 (S.D.Cal.2003). At a later stage, the issue of the reasonableness of defendants' belief in their statements will arise again; for now, the complaint has pled fraud with adequate particularity.

B. Company argues that representations of NDA data were accurate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 7

The Company argues that plaintiffs have taken quotations out of context, thus misrepresenting the Company's statements. For example, the complaint alleges that defendant Lange said in a July 17, 2003 conference call that "The QT affect [sic] that you see there continued to go up, and they will be in the 10 to 20 millisecond range, but at a very symptomatic level. So, we are very comforted by the findings in that study."Consol. Compl. ¶ 101. Ex. 42. The complaint further alleges that this statement was false when made because "there were scores of instances of QT prolongation above 20 milliseconds of prolongation and 500 msec of interval, contrary to defendant Lange's representations, as alleged in ¶¶ 62-70."Consol. Compl. ¶ 102(e). The Company argues that Lange "was explaining mean QT prolongation, not raw numbers, and was referring to an extremely high dose."Company's Motion at 17., *citing* Consol. Compl. Ex. 42 at 4; RJN Ex. C. According to the Company, Lange's statement, taken in context, was accurate. Company's Motion at 17. The Company also argues that "[n]othing in the Complaint or the confidential witness statements suggests that CVT scientists' alleged 'manipulation' of data was anything other than the proper application of different correction formulae to the QT data in conformity with accepted scientific practices and in a manner consistent with FDA's instructions."Company's Motion at 18.

*7 The Court will determine at a later stage, when the record is more fully developed, whether plaintiffs took statements out of context. For now, plaintiffs have pled fraud with adequate particularity.

C. Statements regarding the cancellation of September Advisory Committee Meeting

The Company argues that its July, 2003 statement regarding a meeting scheduled to occur on September 15, 2003 was accurate when made and the meeting's cancellation in August does not make the July statement inaccurate. Company's Motion at 19. The complaint alleges that Lange "admits to having prematurely announced the Advisory Committee meeting before it was published in the Federal Register."Consol. Compl. ¶ 83. In an August 4, 2003, conference call, Lange said, "obviously, today we wish we hadn't done it, but I want to say we were told by the FDA that we were going to a September panel. And, you know, that was in the queue for the federal registry."*Id.* The complaint alleges that when the Company made the July, 2003 statement, the FDA still awaited additional data from the Company. "CV Therapeutics likely received a discipline letter and had decided to amend the NDA. Defendants, therefore, knew or were at least deliberately reckless in announcing a September 2003 review meeting."Consol. Compl. ¶ 84. The Company argues that "[b]ecause the meeting was cancelled before notice was due to be published [August 31, 2003 for a September 15, 2003 meeting], the fact that the meeting was not formally noticed in the Federal Register or posted to the online calendar does not change the fact that in July, FDA had informed CVT that the meeting had been scheduled."Company's Motion at 19; 19, n. 33 (emphasis omitted).

On August 4, 2003, Lange and Speigelman conducted a conference call with analysts to discuss the Company's August 1, 2003 press release. Consol. Compl. ¶ 105. In the call, Lange explained that "more or less routine stuff" had led to the cancellation of the meeting. *Id.* Despite having received the Discipline Review Letter dated July 17, 2003, Lange said:

We have not received any kind of non-approval letter, *NOTHING,* for example, regarding QTC [sic] ... or other issues in that regard ... we have received detailed questions surrounding such areas as statistical methods, preclinical methods, metabolism, toxicology and so forth ... they're routine and we should be able to resolve them. [W]e do not believe the news impacts the potential approvability of Raxena in any way ... Consol. Compl. ¶ 105 (brackets and emphasis in the original).

Lange affirmed that nothing in the process so far

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 8
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

made him believe that another study would be needed. *Id.* Lange also expressed confidence that the Company would launch Raxena in 2004. "Now I want everyone to remember," he said, "we still believe that we're going to launch Raxena next year."*Id.* In light of what Lange knew of the FDA's reservations about Raxena when he made these statements, plaintiffs' complaint has pled fraud with sufficient particularity.

D. Statements regarding the Approvable Letter

*8 The complaint alleges that the Company's statements regarding its receipt of an Approvable Letter were false and misleading because they contained insufficient detail. The Company's October 30, 2003 press release disclosed that it had received an Approvable Letter which stated that "additional clinical information is needed prior to approval" of Raxena. Consol. Compl. Ex. 28. The complaint alleges that the company's stock price fell 21.7% in response to this news and would have fallen further had the contents of the letter been adequately disclosed. Consol. Compl. ¶ 114. The Company argues that its disclosure of the Approvable Letter's contents satisfied the requirements of *Basic v. Levinson,* 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (the omitted information would be deemed material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available") (citation omitted).

The Approvable Letter informed the Company that:

[S]ubstantial additional clinical data are needed ... the Agency has three specific safety concerns that will need to be addressed prior to approval: 1) [p]otentialtesticular toxicity, manifest as impaired fertility in rats ... 2) [d]elayed cardiac repolarization, manifest clinically as prolongation of the QT interval ... you have neither provided sufficient rationale for discounting this as a potential clinical concern nor devised dosing strategies that would avoid significant QT prolongation in some patients ... Given that you have demonstrated effects on a symptom (i.e., angina), and given the availability of other anti-anginal drugs that do not prolong the QT interval, there needs to be a clear reason to approve a therapy with what appears to be an additional, possibly life-threatening risk ... 3)[a]dequate safety exposure ... The available data suggest a smaller effect of ranolazine in women with angina; future clinical studies should further characterize this apparent gender difference ... Consol. Compl. ¶ 85, *citing* Approvable Letter (emphasis omitted).

The Complaint specifically alleges that the defendants fraudulently and misleadingly failed to reveal the depth of the FDA's concerns.

E. Disclosure of ongoing discussion with the FDA

The Company argues that it had no duty to disclose the substance of ongoing discussions between it and the FDA. Company's Motion at 22. For this argument, the Company relies on *Medimmune, Inc. Sec. Litig.,* 873 F.Supp. 953, 966 ("[d]efendant, as a general proposition, had no duty to report its ongoing discussions with FDA during the review process"). Furthermore, "[i]n order for there to be liability under 10b-5 for omissions or nondisclosure, ... a duty to speak must exist."*Id.* (internal quotation marks and citation omitted). Plaintiffs argue that once defendants started to reveal the contents of conversations with the FDA, they had the duty to be truthful. To support their argument, plaintiffs rely on *Amylin,*2002 U.S. Dist. LEXIS 19481 at *14 (S.D.Cal.2002), *order amended on denial of reconsideration* by *In re Amylin Pharmaceuticals, Inc. Sec. Litig.,* 2003 WL 21500525 (S.D.Cal.2003) and *In re Sepracor, Inc., Sec. Litig.,* 308 F.Supp.2d 20, 34 (D.Mass.2004) (motion to dismiss denied because defendants were required to disclose significant side effects pertaining to QT interval prolongation; animal studies revealing concerns undermined company's predictions of its drug's success).

*9 In the instant case, the complaint contains many

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 9

particularized allegations of defendants' representations of Raxena's safety and efficacy, despite their knowledge of the FDA's specific and serious reservations. The Court, therefore, DENIES the Company's motion to dismiss.

2. The individual defendants' motion to dismiss

The individual defendants have divided the challenged statements into three categories: "allegedly false statements regarding Raxena's efficacy and safety profile, including the extent and significance of QTc prolongation; allegedly false statements regarding the scheduling and postponement of the advisory committee meeting; and allegedly false forward-looking statements about the likelihood of FDA approval of Raxena." Ind. Mot. at 2-3, *citing* statements attributed in the Consol. Compl. to specific individual defendants (Lange at ¶¶ 88, 93, 101, 87, 94, 100, 105; Speigelman at ¶ 109). The individual defendants argue that plaintiffs have not "adequately attributed" any allegedly false or misleading statement to Blackburn or Belardinelli. Ind. Mot. at 3.

A. Group-published information

The individual defendants concede that plaintiffs have pleaded with particularity concerning the twelve statements above, specifically attributed to Lange and Speigelman. However, defendants argue that plaintiffs have failed to plead with particularity with regard to other statements allegedly attributed collectively to the individual defendants under the "group-published information doctrine." Consol. Compl. ¶ 24, 87-91, 93-96, 99-101, 105, 107, 109, 112-116. The group-published information doctrine "includes prospectuses, registration statements, annual reports, and press releases" and can excuse a plaintiff from attributing a statement to a particular defendant if the plaintiff pleads that a company officer was involved in the company's day-to-day affairs and in the preparation of its allegedly misleading statements. *In re Splash Tech. Holdings, Inc.*

*Sec. Litig.*, 2000 WL 1727377, at *25 (N.D.Cal.2000) (citations omitted). The plaintiff must still plead with particularly. *Id.* Defendants argue that plaintiffs have failed to allege any false or misleading statement with regard to Blackburn or Belardinelli, since the plaintiffs have failed to satisfy the requirements of the "group-published information doctrine" with regard to these two defendants.

The complaint has adequately pled Lange's and Speigelman's liability with respect to press releases and SEC filings under the group-published information doctrine. ¶¶ 20-22. As CEO and CFO, these two defendants had direct involvement in the Company's day-to-day operations and were responsible for the Company's representations in its press releases and SEC filings. *See GlenFed*, 60 F.3d 591, 593 (citation omitted); *Howard v. Everex Sys.*, 228 F.3d 1057, 1061-63 (9th Cir.2000).[FN7] With respect to the other individual defendants, Blackburn and Belardinelli, however, the Complaint does not provide the basis for individual liability under the group published information doctrine. Consol. Compl. ¶¶ 21, 23. As Senior Vice President of Drug Discovery and Pre-Clinical Development and Vice President of Drug Research and Pharmacological Sciences, respectively, Blackburn and Belardinelli might or might not have participated in the alleged misrepresentations in the press releases and SEC filings. The Court, therefore, GRANTS defendants' Blackburn's and Belardinelli's motions to dismiss as to group published information, without leave to amend.[FN8]

> FN7. Even assuming *arguendo* that the group-published information doctrine failed to survive the PSLRA, Lange and Speigelman were presumably directly responsible for the SEC filings and press releases and their liability for any misrepresentations in these documents would not depend on the doctrine.
> 
> FN8. The Court would ordinarily grant leave to amend at this point, as to these in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

https://web2.westlaw.com/print/printstream.aspx?prft=HTMLE&dest...   6/22/2008

Not Reported in F.Supp.2d                                                                                          Page 10
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

dividual defendants. However, plaintiffs' counsel represented at oral argument that he lacks any additional information regarding these two defendants and he therefore did not seek leave to amend.

B. Scienter

*10 The individual defendants challenge the adequacy of plaintiffs' allegations to establish the necessary scienter, on various bases. They argue that to the extent that plaintiffs have relied on confidential witness statements to establish scienter, the allegations are insufficient to do so and the confidential witnesses lack the necessary qualifications. They dispute plaintiffs' allegations regarding alleged "manipulation" of data by using "QT correction factors." Finally, they also argue that plaintiffs' allegations of insider trading fail to create a strong inference of scienter.

The Court disagrees. In a motion to dismiss, courts must consider "the larger question of whether [the] complaint, considered in its entirety, states facts which give rise to a strong inference of deliberate recklessness."*In re Silicon Graphics,* 183 F.3d at 985. As discussed above, the complaint pleads fraud with particularity. Considered as a whole, the complaint also pleads scienter. "To date, the Company has not received approval from the [FDA] for any of its drugs. Only one of the Company's drugs- Raxena ...-has even reached the stage of being considered for FDA approval."Consol. Compl. ¶ 2. "The Company's survival depends on the approval of Raxena."Consol. Compl. ¶ 50. Taken as a whole, the allegations of the complaint give rise to a strong inference of scienter with regard to the individual defendants. Since the complaint adequately pleads scienter, it is imputed to the Company.*Nordstrom, Inc. v. Chubb & Son, Inc.,* 54 F.3d 1424, 1435 (9th Cir.1995).

C. Safe harbor and bespeaks caution doctrines

The PSLRA contains a safe-harbor provision, so that no liability will attach to the making of a forward-looking statement "if [it is] accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement."*In re Vantive Corp. Sec. Litig.,* 110 F.Supp.2d 1209, 1215 (N.D.Cal.2000) (citation omitted). Similarly, the "bespeaks caution" doctrine can protect a forward-looking statement that contains sufficient cautionary language or risk disclosure. *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1413 (9th Cir.1994). Defendants argue that sufficient warnings accompanied all of its forward-looking statements. Ind. Mot. at 18 regarding press releases and conference calls, *citing* Consol. Compl. Exs. 28, 29, 32, 33, 38, 39, 40, 43, 45, 17, 19, 27, 34, 35, 42, and 44.

Plaintiffs correctly argue that the statements at issue were allegedly fraudulent and/or misleading statements of historical fact. Oppo. at 34. For example, when the defendants possessed and failed to disclose detailed information about the FDA's serious reservations concerning Raxena's safety and efficacy, they failed to disclose historical facts. The fact that defendants used those inadequately disclosed historical facts to support unsound projections does not shield their alleged misrepresentations as forward-looking statements. *See,e.g,Amylin,* 2003 U.S. Dist. LEXIS 7667, ----16-17 (defendants' statements regarding clinical trials were not forward-looking; instead, they were statements of "observed facts").

*11 Furthermore, even if the statements were construed as forward-looking, the warnings accompanying the statements fail to shield the statements from liability, since they did not indicate that the Company already knew that the FDA harbored serious doubts about Raxena. *See,e.g.,* RJN Ex. U at 14 (SEC Form 10-Q, filed for the Quarter ended June 30, 2002) ("Regulatory authorities such as the FDA *may* interpret these data differently, which could delay, limit or prevent regulatory approval of ranolazine") (emphasis added). The FDA had already

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 11

informed the Company and its officers of its concerns with regard to the Company's data; the use of the word "may" was misleading. The "bespeaks caution" doctrine does not protect defendants' statements, either, since reasonable minds could find that the challenged statements were not accompanied by cautionary language sufficient to make them not misleading. *Amylin,*2002 U.S. Dist. LEXIS 19481 at *27-28 (citation omitted).

D. Analysts' statements

The individual defendants argue that analysts' statements cannot form the basis for liability because plaintiffs have failed to allege specifically that the analysts relied on conversations with the Company. Ind. Mot. at 19, *citing* Consol. Compl. ¶ ¶ 89, 95, 115. For liability to attach to the analysts' reports, according to defendants, plaintiffs would need to show that a defendant provided misleading information to an analyst, who relied on the information to prepare a report, which the insider then endorsed or approved.*Stack v. Lobo,* 903 F.Supp. 1361, 1372 (N.D.Cal.1995).

Plaintiffs argue, on the other hand, that liability for the analysts' statements can rest on a "conduit theory." Oppo. at 32. Under this theory, liability can attach when a defendant directly provides false or misleading information to an analyst with the intent that the analyst will communicate the information to the market. *See,e.g.,Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir.1997). The complaint adequately pleads this theory of liability. Consol. Compl. ¶¶ 89, 94-95, 113, 115. "A company may not lie to securities analysts and avoid liability for its misrepresentations by refusing to adopt the analyst reports incorporating the misrepresentations."*In re Cirrus Logic Sec. Litig.,* 946 F.Supp. 1446, 1467 (N.D.Cal.1996). Whether or not plaintiffs will ultimately demonstrate such liability remains to be seen, but they have adequately pled such a theory.

E. Control person liability

Finally, the individual defendants argue that plaintiffs have failed to plead "even the rudimentary facts necessary" to hold them liable as "control persons" under § 20(a) of the Exchange Act. Ind. Mot. at 23. The complaint alleges that "Speigelman, as CFO, was responsible for financial reporting and communications with the market" and that "Lange, as CEO and Chairman, was responsible for press releases issued by the Company."They both signed documents filed with the SEC. Consol. Compl. ¶ 58. The complaint also alleges that many of the press releases included Speigelman as the "contact person." Consol. Compl. ¶¶ 58, 87, 90, 91, 96.

*12 Whether or not a person is a "control person" is "an intensely factual question." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 945 (9th Cir.2003) (citation omitted). The Court will allow plaintiffs to proceed on a theory of "control person" liability.

3. Defendants' Request for Judicial Notice

In ruling on a motion to dismiss, a court may take judicial notice of a document if it is relied upon in the complaint (whether or not it is expressly incorporated therein) and its authenticity is not disputed. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1988). The Court may also consider Securities and Exchange Commission ("SEC") filings relied upon in the complaint. *SeeIn re Silicon Graphics,* 183 F.3d at 986. In their request that the Court consider the full text of certain documents attached to the complaint and/or certain documents referenced or relied upon in the complaint and for judicial notice, defendants ask the Court to take judicial notice of: Transcript, Cardiovascular and Renal Drugs Advisory Committee ("CRDAC") hearing, December 9, 2003 (Johnson Decl., Ex. A); FDA Background, Cardiovascular and Renal Drugs Advisory Committee meeting, December 9, 2003 regarding NDA 21-526 ("FDA Briefing Materials") (Johnson Decl., Ex. D); July 17, 2003 Discipline Review Letter

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.))**

Page 12

(Johnson Decl., Ex. J); SEC Filings (Johnson Decl. Exs. O, Z, AA, BB, T, V, U, CC, F, DD, EE, FF, GG, W, X, and Y); press releases forming part of SEC filings (Johnson Decl., Exs. S, E, HH, II, H, L, JJ and KK); FDA Documents (Johnson Decl. Exs. G and Q); and Federal Register Excerpts (Johnson Decl., Exs. P and R). The Court takes judicial notice of these documents, with the exception of Exs. KK and M. The Company issued these two press releases outside the class period and they are not referenced in the complaint. Similarly, the Court declines to take judicial notice of the Company's Form 10-Q for Q1 2004 (Johnson Supp. Decl., Ex. LL) and the Company's June 2, 2004 press release (Johnson Second Supp. Decl., Ex. MM). Finally, plaintiffs argue that the Court cannot consider any documents for the "truth of their contents." Oppo. at 1 (emphasis omitted). The Court does not restrict its taking of judicial notice in this way.

Defendants also ask the Court to take judicial notice of charts, prepared by defense counsel, containing portions of otherwise judicially noticeable facts (Johnson Decl., Exs. C, B, K, and N). The Court does not take judicial notice of these documents, since the Court is capable of synthesizing information.

## CONCLUSION

For the foregoing reasons, the Court DENIES CV Therapeutics' motion to dismiss. The Court DENIES the motion to dismiss by individual defendants Lange and Speigelman. The Court GRANTS the motion to dismiss by defendants Blackburn and Belardinelli. At oral argument, plaintiffs' counsel represented that he had no additional allegations to make against Blackburn and Belardinelli, so the Court does not grant plaintiffs leave to amend the complaint. The Court GRANTS in part and DENIES in part defendants' Request for Judicial Notice. [docket 54, 55, 56, 79, 82]

*13 IT IS SO ORDERED.

N.D.Cal.,2004.  
In re CV Therapeutics, Inc.  
Not Reported in F.Supp.2d, 2004 WL 1753251 (N.D.Cal.), 59 Fed.R.Serv.3d 251

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.