# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.))**

**C**
In re InterMune, Inc.
N.D.Cal.,2004.

United States District Court,N.D. California.
In re INTERMUNE, INC. Securities Litigation
**No. C 03-2954 SI.**

July 30, 2004.

Lynda J. Grant, Richard Joffe, Goodkind, Labaton, Rudoff & Sucharrow LLP, New York, NY, Kimberly C. Epstein, Lerach, Coughlin, Stoia & Robbins LLP, San Francisco, CA, Lionel Z. Glancy, Michael M. Goldberg, Peter A. Binkow, Glancy & Binkow LLP, Los Angeles, CA, Robert S. Green, Green & Jigarjian LLP, San Francisco, CA, for Plaintiffs.

Emilia J. Mayorga, Kerr & Wagstaffe LLP, San Francisco, CA, William S. Freeman, Cooley, Godward LLP, Palo Alto, CA, for Defendant.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT, WITH LEAVE TO
AMEND

ILLSTON, J.
**\*1** This Document Relates to All Actions.

On July 30, 2004, this Court heard argument on defendants' motion to dismiss the First Amended Consolidated Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having carefully considered the arguments of the parties and the papers submitted, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss for the reasons set forth below. In such instances where it is necessary, leave to amend is GRANTED.

BACKGROUND

This is a class action alleging violations of the federal securities laws. Plaintiffs are individuals who purchased stock of defendant InterMune, Inc. ("InterMune") between January 7, 2003, and June 11, 2003 ("the class period"). On January 30, 2004 plaintiffs filed their First Amended Complaint against InterMune. Plaintiffs also name as defendants W. Scott Harkonen ("Harkonen"), InterMune's Chief Executive Officer ("CEO") and President from the company's inception until June 30, 2004, and Sharon Surrey-Barbari ("Surrey-Barbari"), InterMune's Chief Financial Officer ("CFO") and Senior Vice President of Finance and Administration. Plaintiffs allege (1) violation of § 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and (2) violations of § 20(a) of the Exchange Act.

InterMune, a biopharmaceutical company headquartered in Brisbane, California, develops and commercializes products for the treatment of serious pulmonary, infectious and hepatic diseases. First Amended Complaint ("FAC") ¶ 13. In every year up to the class period, approximately 90% of InterMune's revenue was derived from the sales of a single product, Actimmune. ¶ 33.[FN1] Actimmune has been approved by the Food and Drug Administration (FDA) for certain uses, but the overwhelming majority of Actimmune sales are for unapproved use with idiopathic pulmonary fibrosis (IPF), a fatal disease that destroys the lungs. ¶ ¶ 36, 38, 41. Federal law permits physicians to prescribe FDA-approved drugs for "off-label" uses. ¶ 38. However, companies may not actively encourage sales of drugs for off-label uses;[FN2] they may only provide doctors with information and educational material on unapproved uses. ¶ 65.

> FN1. All references in the form "¶ __" are references to paragraphs in the FAC.

> FN2. The term "off-label" refers to the prescription of an FDA-approved drug for uses other than for those for which it has been approved.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.))**

Plaintiffs make three basic allegations. First, plaintiffs claim that defendants knowingly misrepresented the negative response of many doctors to data from Actimmune's clinical trials. ¶ 5. Second, plaintiffs allege that defendants knowingly exaggerated the number of patients taking Actimmune during the first quarter of 2003 and on that basis issued knowingly false revenue estimates for 2003. ¶ 3. Finally, plaintiffs claim that defendants misrepresented the true status of InterMune's sales force by expressing confidence in its salesforce while it was in fact shrinking. ¶ 4.

Plaintiffs contend that doctors' attitudes towards Actimmune are a good predictor of InterMune's stock value. Physicians' attitudes are even more crucial where the FDA has not approved a drug for a given use, thereby making it the doctor's decision as to whether to prescribe the drug for such use off-label. Plaintiffs allege that because doctors' attitudes are so important to the value of InterMune, the company made certain it knew what doctors thought of Actimmune. Pl.'s Opp'n at 4: 13-14. Plaintiffs also allege that defendants were either aware of or deliberately reckless in not knowing doctors' actual evaluations of Actimmune's clinical tests. Pls.' Opp'n at 19: 9-10. Further, plaintiffs claim that although defendants were aware of physicians' lukewarm reaction to Actimmune, they continued to make a number of misleading statements that, when taken in their full context, amount to falsities that had the effect of improperly raising InterMune's value. Id. at 20: 11-15.

**\*2** The value of InterMune's stock is largely reliant on revenue generated by Actimmune sales to IPF patients. The best predictor of Actimmune sales is the number of IPF patients actually taking Actimmune. Plaintiffs allege that defendants knowingly over-estimated the number of patients taking Actimmune by approximately 400 patients. InterMune received patient lists from its primary distributor on a weekly basis, which listed every prescription for Actimmune written by any doctor and which stated whether the drug had actually been shipped to the patient. ¶ 62. Plaintiffs argue that this information permits the allegation that defendants knew, or were deliberately reckless in not knowing, the actual number of patients.

Plaintiffs also claim that defendants deceived the public as to the size and strength of its sales force. ¶ 4. Plaintiffs argue that defendants hid the true condition of InterMune's sales force, essentially one of disarray, because the health of its sales force had a large impact on the value of the company. Plaintiffs argue that because the quantity of Actimmune sales depends on the rate at which physicians adopt the drug, and that rate depends in turn on the size and capabilities of InterMune's sales force, defendants had a vested interest in misleading the public into believing that their sales force was in robust shape. Pls.' Opp'n at 21: 10-15. Thus, plaintiffs argue that instead of making public its lay offs, defendants made knowing misrepresentations about the continued vitality of its sales force.

Plaintiffs filed this action alleging securities fraud in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission. Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## LEGAL STANDARDS

1. Motion to dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05545-SI    Document 44-5    Filed 06/24/2008    Page 4 of 8

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *SeeUsher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *SeeUnited States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."*Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

2. Section 10(b) and Rule 10b-5

*\*3* Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."15 U.S.C. § 78j(b).

Rule 10b-5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud

or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5

In order to state a claim under section 10(b) and Rule 10b-5, the plaintiff must allege (1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately caused the alleged loss. *SeeBinder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999). Generally, plaintiffs in federal court are required to give a short, plain statement of the claim sufficient to put the defendants on notice. Federal Rule of Civil Procedure also requires that "the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b).

3. Private Securities Litigation Reform Act

The Private Securities Litigation Reform Act of 1995 (the "Reform Act" or the "PSLRA") was enacted as an amendment to the Exchange Act. *SeeIn re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 973 n. 2 (9th Cir.1999). Under the Reform Act:

In any private action arising under his chapter under which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2).

The required state of mind is "at a minimum, deliberate recklessness." *In re Silicon Graphics,* 183 F.3 at 983. Scienter may be pled and proven by reference to circumstantial evidence. *SeeIn re Peoplesoft Sec. Litig.,* No. C 99-0472, slip op. at 5 (May 26, 2000). However, when pleading on information and belief, a plaintiff must plead with "particularity" by "provid[ing] all facts forming the basis for [plaintiff's] belief in great detail."*In re Silicon Graphics,* 183 F.3d at 983;*seealso*15 U.S.C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.))

Page 4

78u-4(b)(1). Therefore, the Reform Act has strengthened the pleading requirements of Federal Rule of Civil Procedure 9(b).

## DISCUSSION

### A. Statements of optimism: puffery

*4 Defendants argue that many of the challenged statements are merely "general statements of optimism," and are not actionable because they constitute vague and ambiguous "puffery." Defendants further argue that plaintiffs do not specifically allege any illegal and improper activity but, instead, merely resort to conclusory allegations. Defs.' Reply at 10: 3-5. Defendants assert that plaintiffs have failed to address why each individual statement is false.

"Projections and general statements of optimism may be actionable" under federal securities laws. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989). A projection or statement may be questioned if any of the following three factors are accurate: (1) the statement is not genuinely believed; (2) there lacks a reasonable foundation for the belief; or (3) the speaker is aware of undisclosed facts that tend to discredit the accuracy of the projection. *See id.*

A motion to dismiss requires the court to make all assumptions in favor of the non-moving party. Thus, assuming that defendants knew the actual number of patients, knew of physicians' lukewarm receptivity to Actimmune, and knew of the state of InterMune's sales force, defendants were either aware of facts that would undermine their statements or did not wholly believe the statements they made. Plaintiffs have made out a sufficiently detailed allegation of falsity regarding defendants' statements concerning physicians' receptivity to Actimmune, the number of patients actually purchasing Actimmune, and the state of InterMune's sales force. Accordingly, the Court concludes that these statements are not mere "puffery" and are, therefore, actionable.

### B. Safe harbor provision

Defendants assert that to the extent that their statements constitute forward-looking comments, they fall within the PSLRA's "safe harbor" provision and are, therefore, non-actionable. Defs.' Mot. at 16. Further, defendants assert that many of their statements are protected by the safe harbor because each is accompanied by meaningful, cautionary language. Moreover, defendants contend that InterMune repeatedly alerted consumers of the risks of investing in a biotechnology company that was attempting to bring unproven medications to the market. Defendants also argue that Actimmune's patient numbers were always "estimates," which are non-actionable. Finally, defendants assert that their financial forecasts were also labeled as estimates and were protected by cautionary safe-harbor language. *Id.* at 17: 12-15.

Plaintiffs respond that there are a number of false or misleading statements that are not labeled as estimates, including Katkin's statements during the April 27 and February 19 Conference Calls. Pls.' Opp'n at 13: 11-15. Further, plaintiffs argue that it is inconsequential whether the statements were labeled as estimates, because the complaint alleges that defendants "knew at all times, or could learn, the exact number of patients for whom Actimmune had been prescribed, and the exact number of patients to whom the drug had been shipped." ¶ 60. Thus, plaintiffs argue that even if defendants' statements could be viewed as forward-looking, defendants would still not be entitled to safe harbor protection because InterMune failed to caution investors that the announced numbers were not based on the most accurate source of information. Pls.' Opp'n at 15, n. 11: 24-27.

*5 Under the PSLRA's safe harbor provision, defendants cannot be liable for forward-looking statements if such statements are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements."15 U.S.C. § 78u-5(c)(1)(A)(I).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.))**

However, the safe harbor provision protects only forward-looking statements which, according to the Reform Act, include "projection[s] of revenues ... plans and objectives of management for future operations ... statement[s] of future economic performance ... any statement[s] of the assumptions underlying or relating to any statement described above ... or any report[s] issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer."15 U.S.C. § 78u-5(c)(1) and (i)(1).

The Court cannot conclude at this early stage as a matter of law that defendants' forward-looking statements are protected by the cautionary language. To the extent that a statement is forward-looking and is not based on the most accurate information available to defendants, it would not be protected by the general safe harbor provision. However, the Court cannot conclude at this early stage whether defendants relied on the most accurate information or whether they failed to discuss negative information, as alleged by plaintiffs.

C. Particularity of allegations

Defendants argue that plaintiffs fail to allege falsity with sufficient particularity. Defs.' Mot. at 17. Specifically, defendants argue that plaintiffs' reliance on unidentified witnesses, its allegations regarding the number of patients on Actimmune, its allegations regarding the morale of Actimmune's sales force, and its allegations regarding Actimmune's "illegal" marketing are insufficient to establish falsity under the PSLRA.

1. Plaintiffs' reliance on unidentified witnesses

Defendants contend that although plaintiffs rely heavily on a confidential source and an unnamed "regional sales director," plaintiffs fail to identify any of these sources with sufficient particularity to satisfy PSLRA standards. Defs.' Mot. at 18: 17-21. The Court agrees with defendant that plaintiffs fail to identify their confidential source with sufficient

particularity. Paragraph 16 of the FAC provides only general information describing the source as a "sales representative" employed "from December 2001 through June 2003."Further, the Court notes that plaintiffs are now prepared to name the confidential source, which is proper given that a significant portion of the FAC is based upon information gathered from this unnamed witness.

2. Plaintiffs' allegations relating to the number of patients on Actimmune

Defendants argue that plaintiffs' allegations regarding the number of patients on Actimmune are insufficient to establish falsity because (1) they rely on a confidential source, (2) the confidential source's account confirms defendants' argument that errors in patient numbers were caused by reporting of inconsistent information from third-party distributors, and (3) plaintiff fails to name or provide further information on a document that was allegedly distributed within the company. The Court will require that plaintiffs name their confidential source. As to the second alleged flaw in the complaint, the Court is unable at this early stage to determine whether the error in patient numbers was a result of some alleged wrongdoing on the part of defendants, as plaintiffs allege, or was a result of the reporting of inconsistent information from third-party distributors, as defendants claim; however, this early pleading stage is not the time at which the truth or falsity of the allegations is to be tested. On the third alleged defect in the complaint, the Court agrees with defendants that plaintiffs have failed to meet their burden of specificity. Plaintiff is required to name the document that was allegedly distributed within the company and provide a date for it.

3. Plaintiffs' allegations regarding morale of the sales force

*6 Defendants argue that plaintiffs' allegations regarding the morale of InterMune's sales force are insufficient to establish falsity. Defs.' Mot. at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.))**

21:6-14. Defendants specifically argue that it is plainly impossible to demonstrate how a single source would have knowledge of the entire sales force's morale. However, the Court is not persuaded by defendants' argument. The Court finds that plaintiffs have alleged their sales force disintegration argument with sufficient particularity. Plaintiffs have argued a motive, have identified witnesses who they will now name, and have provided dates for various events and statements. The Court finds that if indeed Harkonen had access to the information alleged to be available by plaintiffs, his statements cannot be evaluated without regard to what he omitted to say. See *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1064 (9th Cir.2000) (holding that an "actor is reckless if he 'had reasonable grounds to believe material fact existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary effort." ')

4. Plaintiffs' allegations regarding company's marketing of Actimmune

Defendants argue that plaintiffs' allegations regarding defendants' illegal marketing of Actimmune for IPF fail to state a claim or establish falsity. Defs.' Mot. at 21: 17-18. Defendants argue that plaintiffs (1) fail to show that the alleged activity had a negative impact on InterMune's stock value, and (2) rely too heavily on unsubstantiated allegations that fall short of PSLRA's pleading standards. *Id.* at 21-22.The Court agrees with defendants' arguments, and finds that plaintiffs' allegations of illegal or improper marketing fail to meet the PSLRA's standards. InterMune has never denied that the majority of its Actimmune revenues are derived from off-label sales and have, consequently, never hidden the risks involved in investing in InterMune. Plaintiffs fail to allege facts with the necessary particularity to suggest that InterMune's promotion of Actimmune went beyond what is the acceptable practice of providing doctors' with informational materialto the actual promotion of the drug for its off-label use. The Court also finds that an allega-

tion based on an unsent letter by an unidentified person is unreliable and does not meet the requirements to establish illegal activity. The fact that the letter was not sent may serve to discredit its con- tent.

D. Claims against the individual defendants

Plaintiffs seek to have the individual defendants found liable as "controlling persons" of InterMune under Section 20(a) of the Exchange Act. ¶¶ 142, 143. Section 20(a) provides that:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

*7 Thus, to establish "controlling person" liability, the plaintiff must show that a primary violation occurred, and that the defendant "directly or indirectly" controlled the violator. *Paracor Financing, Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1161 (9th Cir.1996). The plaintiff, however, is not required to demonstrate the controlling person's scienter, or that the controlling person "culpably participated" in the alleged wrongdoing. *Id.* Once the plaintiff establishes that the defendant is a controlling person, the defendant then bears the burden of proving that he or she acted in good faith.*Id.*

Defendants argue that even if plaintiffs have properly stated a primary violation of Section 10(b), they have not alleged facts sufficient to establish controlling person liability. Defs.' Mot. at 25: 1-3. The Court agrees with defendants that plaintiffs fail to present much beyond the theory that the individual defendants violated federal securities laws because they had the power and authority to control information released to the public by virtue of their

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.))**

position. Plaintiffs fail to plead specific facts upon which a fact finder could reasonably conclude that the individual defendants violated federal securities laws. *Woolv. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987).

**E. Leave to amend**

Plaintiffs are granted leave to amend in conformity with Rule 9 and the PSLRA. To reiterate, where this Court has found the FAC lacking, plaintiffs should state "with particularity" facts giving rise to "a strong inference of, at a minimum, deliberate or conscious recklessness."*Silicon Graphics,* 183 F.3d at 979. Moreover, in pleading falsity, plaintiffs must "aver with particularity the circumstances constituting the fraud."*In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1545 (9th Cir.1993). Plaintiffs should state specific false or misleading statements and state whether the statement was written or oral. If the statement was written, plaintiffs should identify with specificity the document in which it appeared, and if the statement was oral, plaintiffs should state the circumstances under which it occurred and identify the person making the statement. Further, plaintiffs should state why the statement was false when made, and should identify any written or oral statements that support their allegations. Plaintiffs should additionally state facts giving rise to a strong inference of a degree of recklessness that strongly suggests actual intent to deceive.

CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss the First Amended Consolidated Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs may file an amended complaint on or before August 21. [docket # 62]

IT IS SO ORDERED.

N.D.Cal.,2004.
In re InterMune, Inc.
Not Reported in F.Supp.2d, 2004 WL 1737264 (N.D.Cal.), Fed. Sec. L. Rep. P 92,894

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.