# EXHIBIT G

**Westlaw.**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))**

Page 1

**H**
In re Nextcard, Inc. Securities Litigation
N.D.Cal.,2006.
Only the Westlaw citation is currently available.NOT FOR CITATION
United States District Court, N.D. California, San Jose Division.
In re NEXTCARD, INC. SECURITIES LITIGATION.
No. C 01-21029 JF (RS).

March 20, 2006.

Christopher Paul Seefer, Milberg Weiss et. al. LLP, Jeffrey W. Lawrence, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA, Eric J. Belfi, Murray, Frank & Sailer LLP, New York, NY, Marc A. Topaz, Schiffrin & Barroway LLP, Radnor, PA, William S. Lerach, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA, for Russell Ballati on Behalf of Himself and All Others Similarly Situated.
Joy Ann Bull, Jeffrey W. Lawrence, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Christopher Paul Seefer, Milberg Weiss et. al. LLP, San Francisco, CA, Eric J. Belfi, Murray, Frank & Sailer LLP, New York, NY, Tamara J. Driscoll, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Seattle, WA, Alan Schulman, Alicia M. Duff, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, for Jacksonville Police and Fire Pension Fund.
Adam J. Levitt, Mary Jane Edelstein Fait, Wolf Haldenstein Adler Freeman Herz LLC, Chicago, IL, Eric J. Belfi, Murray, Frank & Sailer LLP, Fred T. Isquith, Wolf Haldenstein Adler Freeman & Herz, Gustavo Bruckner, Thomas Hamilton Burt, Wolf Haldenstein Adler Freeman Herz LLP, New York, NY, Marc S. Henzel, Law Offices of Marc S. Henzel, Bala Cynwyd, PA, for Market Street Securities Inc. on Behalf of Himself and all Others Similarly Situtated.
Ira M. Press, Kirby Mcinerney & Squire LLP, Eric J. Belfi, Murray, Frank & Sailer LLP, New York, NY, Lionel Z. Glancy, Michael M. Goldberg, Glancy & Binkow LLP, Los Angeles, CA, Patrick V. Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, Chicago, IL, for Edward Toptani on His Own Behalf and on Behalf of All Others Similarly Situated Plaintiff.
Eric J. Belfi, Murray, Frank & Sailer LLP, Laurence M. Rosen, The Rosen Law Firm, P.A., New York, NY, Jeffrey C. Block, Berman Devalerio & Pease LLP, Boston, MA, Joseph J. Tabacco, Jr., Berman Devalerio Pease Tabacco Burt & Pu, San Francisco, CA, for Kerri Vittimberga.
Laurence M. Rosen, The Rosen Law Firm, P.A., Eric J. Belfi, Murray, Frank & Sailer LLP, New York, NY, Nicole Lavallee, Berman Devalerio Pease Tabacco Burt & Pu, San Francisco, CA, for Frank Vittimberga.
John S. Yun, Securites & Exchange Commission, San Francisco, CA, for Securities and Exchange Commission.
Bruce J. Highman, Highman, Highman & Ball, San Francisco, CA, for Richard Goebel, Daniel Springer.
Jonathan C. Dickey, Paul J. Collins, Gibson, Dunn & Crutcher LLP, Palo Alto, CA, for Nextcard, Inc., Robert Linderman.
Shirli Fabbri Weiss, Paul A. Reynolds, DLA Piper Rudnick Gray Cary U.S. LLP, San Diego, CA, Paul J. Collins, Gibson, Dunn, Crutcher LLP, Palo Alto, CA, for Jeremy R. Lent.
Jordan David Eth, Margaret L. Wu, Morrison & Foerster, San Francisco, CA, Paul J. Collins, Gibson, Dunn, Crutcher LLP, Palo Alto, CA, for Yinzi Cai.
David M. Jolley, Richard Allen Jones, Covington & Burling, San Francisco, CA, Jonathan C. Dickey, Paul J. Collins, Gibson, Dunn & Crutcher LLP, Palo Alto, CA, for John V. Hashman.
James McManis, William Faulkner, McManis Faulkner & Morgan, San Jose, CA, Charles Thomas Kimmett, J. Andrew Keyes, Williams & Connolly LLP, Washington, DC, for Safi U. Qureshey.
Bruce A. Ericson, Jacob R. Sorensen, Kristin M. Lefevre, Pillsbury Winthrop Shaw Pittman LLP,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 2
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))**

San Francisco, CA, Paul J. Collins, Gibson, Dunn, Crutcher LLP, Palo Alto, CA, for Bruce Rigione.
Jeffrey W. Lawrence, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA, for Stephen Schleicher, M.D.
Joy Ann Bull, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Alan Schulman, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, Christopher Paul Seefer, Milberg Weiss et. al. LLP, Jeffrey W. Lawrence, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA, Tamara J. Driscoll, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Seattle, WA, for M. Richard Andrews.

ORDER DENYING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANTS LENT, HASHMAN, RIGIONE AND CAI; AND GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND AS TO DEFENDANT QURESHEY

JEREMY FOGEL, J.
*1 THIS DOCUMENT RELATES TO ALL ACTIONS.

[Doc. Nos. 263, 266, 267, 269, 272, 277, 278]

Before the Court are motions to dismiss Plaintiffs' consolidated second amended class action complaint ("SAC") brought by Defendants Jeremy Lent ("Lent"), John Hashman ("Hashman"), Bruce Rigione ("Rigione"), Yinzi Cai ("Cai"), and Safi Qureshey ("Qureshey"). The Court has considered the parties' papers as well as the oral arguments presented at the hearing on October 28, 2005. For the reasons discussed below, the motions to dismiss will be denied as to Defendants Lent, Hashman, Rigione and Cai, and granted without leave to amend as to Defendant Qureshey.

I. BACKGROUND

This is a stock-drop securities class action suit originally filed against NextCard, Inc. ("NextCard") and several of its officers and directors. The Court dismissed Plaintiffs' first amended consolidated class action complaint ("FAC") with leave to amend on February 7, 2005, and Plaintiffs filed the operative SAC on April 27, 2005, alleging in great detail a scheme by which NextCard and several of its officers and directors used "accounting gimmickry" to inflate the company's financial results. In broad outline, Plaintiffs' claims are as follows:

NextCard was an Internet-based provider of consumer credit that offered an online credit approval system for a Visa card through its wholly-owned subsidiary, NextBank.[FN1] SAC ¶ 2. Between April 19, 2000 and October 30, 2001 ("the class period"), NextCard and several of its officers and directors made false or misleading statements to the market indicating that the Internet credit card business was a success and was growing at a dramatic rate. *Id.* at ¶¶ 143-166. Form 10Qs and 10Ks filed during this period misrepresented the company's financials and were not prepared in accordance with GAAP.[FN2] *Id.* at ¶¶ 132-39. Specifically, the company "understated its loan loss allowances, provision for loan losses and charge-off rates by improperly reclassifying certain credit losses as fraud losses and employing inappropriate methodology for determining loan loss allowances." *Id.* at ¶ 135. These practices allowed the company to overstate its reported net interest income and understate its net losses during the class period. *Id.* The company also understated its risk-weighted assets and overstated its risk-based capital ratio by failing to include in its risk-weighted assets credit losses that had been classified as fraud losses and sold to third parties. *Id.*

> FN1. For ease of reference, NextCard and NextBank are referred to collectively as "NextCard" or "the company."

> FN2. Generally Accepted Accounting Principles.

On October 31, 2001, the company issued a press

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))**

release stating that, as a result of discussions with the Office of the Comptroller of the Currency ("OCC") and the Federal Deposit Insurance Corporation ("FDIC"), the company needed to take several steps to increase its reserves and limit its lending activities. *Id.* at ¶ 113. These steps included substantially increasing loan loss allowances; tightening underwriting criteria; reclassifying previously recognized fraud losses as credit losses; and increasing risk weighted assets by more than $500 million. *Id.* at ¶¶ 113-14. These disclosures caused NextCard's stock to decline 84% to $.87 per share. *Id.* at ¶ 117. On February 7, 2002, the OCC closed NextBank and appointed the FDIC as Receiver. *Id.* at ¶ 121. The company was delisted from NASDAQ on March 18, 2002 and filed for bankruptcy on November 14, 2002. *Id.* at ¶ 123. The OCC, FDIC and SEC initiated separate investigations into the events leading up to the company's demise. *Id.* at ¶ 122.

*2 Plaintiffs allege a claim under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants Lent, Hashman, Rigione and Cai, and a control person claim under to § 20(a) against these four individuals plus Defendant Qureshey.[FN3]

> FN3. Plaintiffs do not assert claims against NextCard because of the company's bankruptcy. Plaintiffs have reached settlement with respect to claims against NextCard's outside auditor, Ernst & Young, LLP.

## II. DISCUSSION

B. Section 10(b) Claim

1. Elements Of A § 10(b) Claim

The United States Supreme Court has clarified that only two types of conduct give rise to liability under § 10(b) and Rule 10-b(5) promulgated thereunder: (1) the making of a material misstatement or omission or (2) the commission of a manipulative act. *Central Bank of Denver v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). While Plaintiffs assert that Defendants engaged in a "fraudulent scheme" during the class period, *see* SAC ¶ 4, a straightforward reading of the SAC makes clear that the gravamen of Plaintiffs' § 10(b) claim is that Defendants committed fraud on the market by means of material misstatements or omissions. Under the fraud on the market theory, it is assumed that an investor who buys or sells stock at the price set by an efficient market does so in reliance on the integrity of that price. *Basic, Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Because publicly available information is reflected in the market price, an investor's reliance on the price necessarily means that the investor is relying upon any public material misrepresentations or omissions. *Id.*

Plaintiffs do not use the term "fraud on the market," and cast a number of their allegations in terms of the alleged "scheme" entered into by Defendants. However, Plaintiffs identify the common class questions as: (a) whether Defendants issued false and misleading statements during the class period; (b) whether Defendants acted with scienter in issuing such statements; (c) whether Defendants are liable as control persons of the company; (d) whether the market price of NextCard stock during the class period was artificially inflated because of Defendants' conduct; and (e) whether class members have been damaged. SAC ¶ 19. Accordingly, while allegations that Defendants were involved in a "scheme" are relevant to paint a picture of what was going on at the company during the class period, and may be relevant to the question of scienter, the Court's focus must be on the alleged misrepresentations and omissions made by Defendants.

The elements of a § 10(b) claim involving publicly traded securities are as follows: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in fraud on the market

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))**

Page 4

cases as "transaction causation"; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005).

A dispute has arisen between the parties as to whether Plaintiffs may use the "group published pleading doctrine." Prior to the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104-67 (1995), the Ninth Circuit held in a number of cases that when false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other group published statements, it is reasonable to presume that the statements are the result of the collective actions of the company's officers. *See, e.g., Blake v. Dierdorff,* 856 F.2d 1365, 1369 (9th Cir.1988); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987). It is an open question in this circuit whether the group published pleading doctrine survives the PSLRA. Some district courts within the circuit have concluded that the group published doctrine is alive and well. *See, e.g., In re Secure Computing Corp. Sec. Litig.,* 120 F.Supp.2d 810, 821-22 (N.D.Cal.2000) (collecting cases); *Silicon Graphics Sec. Litig.,* 970 F.Supp. 746, 759 (N.D.Cal.1997). Other district courts have concluded the opposite. *See, e.g., In re Immune Response Sec. Litig.,* 375 F.Supp.2d 983, 1031 (S.D.Cal.2005); *In re Syncor Intern. Corp. Sec. Litig.,* 327 F.Supp.2d 1149, 1171-72 (C.D.Cal.2004).

**\*3** The Fifth Circuit, the only circuit squarely to address the issue, has concluded that the group published pleading doctrine does not survive the PSLRA because the doctrine is inconsistent with PSLRA requirements that statements or omissions be set forth with particularity as to *each* defendant and that scienter be pleaded in a manner sufficient to give rise to a *strong inference* that each defendant acted with the required state of mind. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 364-65 (5th Cir.2004).

This Court adopts the reasoning of the decisions concluding that the group published pleading doctrine no longer is viable after the PSLRA. As noted by the Fifth Circuit, it appears to be totally inconsistent with the particularity requirements of the PSLRA to hold corporate officers "responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded."*Southland,* 365 F.3d at 365.

The Court's conclusion makes little difference in the present case, because Plaintiffs do not rely solely on the group published pleading doctrine, but also allege explicitly that Defendants Lent, Hashman, Rigione and Cai participated in the preparation of the company's press releases and SEC filings. Section 10(b) liability extends to those who substantially contribute to the drafting of the allegedly misleading statements. *See In re Homestore.com, Inc. Sec. Litig.,* 252 F.Supp.2d 1018, 1041 (2003) (holding that § 10(b) extends only to those "connected in some material way to the drafting of the statements made to the investing public"). Plaintiffs allege that Lent, Hashman, Rigione and Cai "participated in the preparation and review of the Company's press releases and SEC filings. Thus, the false and misleading statements included in press releases and SEC filings were made by and are attributable to all of the defendants because the press releases and SEC filings were the collective actions of these defendants."SAC ¶ 16.

2. Pleading Standards For § 10(b) Claim

Claims asserted under the Exchange Act as amended by the PSLRA must meet heightened pleading requirements. For example, a claim based upon a material misrepresentation or omission must "specify each statement alleged to have been misleading" as well as "the reason or reasons why the statement is misleading."15 U.S.C. § 78u-4(b)(1)(B). If an allegation regarding the statement or omission is made on information and belief, the complaint "shall state with particularity all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 5
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))**

facts on which that belief is formed."*Id.* In addition, a claim based upon a material misrepresentation or omission must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."15 U.S.C. § 78u-4(b)(2). When a claim is based upon a forward-looking statement, the required state of mind generally is "actual knowledge" that the statement is false or misleading. 15 U.S.C. § 78u-5(c)(1)(B). Otherwise, the required state of mind is, at a minimum, "deliberate recklessness." *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 977 (1999).

*4 In order meet the pleading standard for scienter, the plaintiff "must provide, in great detail, all the relevant facts forming the basis of her belief."*Silicon Graphics,* 183 F.3d at 985. " '[T]he complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or deliberately reckless false or misleading nature of the statements when made." ' *In re Read-Rite Corp. Sec. Litig.,* 335 F.3d 843, 846 (9th Cir.2003) (quoting *Ronconi v. Larkin,* 253 F.3d 423, 432 (9th Cir.2001)). It is insufficient that the allegations raise a "reasonable inference" that the defendants acted with the requisite state of mind; the allegations must be sufficiently particularized to raise a "strong inference." *Id.* at 848-49.

Unusual or suspicious stock sales may constitute circumstantial evidence of scienter. *Silicon Graphics,* 183 F.3d at 986. However, "insider trading is suspicious only when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." ' *Id.* (quoting *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1117 (9th Cir.1989)). A plaintiff relying upon stock sales therefore must allege specific facts regarding the circumstances of the alleged stock sales, such as the amount of shares sold, the percentage of shares sold in comparison to the volume of shares that could have been sold, the timing of the sales and whether the sales were consistent with prior trading history. *Id.* When determining the percentage of shares sold, stock options must be considered; there is no reason to distinguish vested stock options from shares because the former easily can be converted to shares and sold immediately.*Id.*

3. Statements Of Lent, Hashman, Rigione and Cai

In its order dismissing the FAC with leave to amend, the Court identified a number of material misstatements alleged to have been made by Defendants, but concluded that Plaintiffs had not sufficiently alleged that the statements were false or misleading, or that Defendants had acted with the requisite scienter. The Court concludes that Plaintiffs have cured these defects in their SAC. Plaintiffs adequately allege a number of statements and why those statements were false or misleading when made. SAC ¶¶ 142-166. They describe in detail the alleged financial difficulties of the company and Defendants' attempts to conceal these difficulties through inappropriate accounting practices. Finally, Plaintiffs identify the specific accounting practices, explain why those practices violated GAAP and why the company's resulting financials were misleading. *Id.* at ¶¶ 132-139.

Plaintiffs also allege in detail facts demonstrating that the individual defendants knew about, and participated in, the allegedly inappropriate accounting practices. SAC ¶¶ 11-14. Defendants argue that even if Defendants knew about the accounting practices that ultimately were deemed inappropriate-for example, that the company was reclassifying credit losses as fraud losses-the SAC does not allege facts demonstrating that Defendants knew the accounting practices were inappropriate *at the time.*Defendants claim that the OCC's later determinations that the company had acted inappropriately surprised Defendants and the industry. While Defendants certainly may re-assert this argument in future motion practice, the Court concludes that for purposes of the instant motions to dismiss Plaintiffs have alleged facts sufficient to raise a strong inference that Defendants knew that the accounting practices were inappropriate. For example, Plaintiffs point to De-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))

Page 6

fendant Hashman's handwritten notation regarding "2/3 more quarters of accounting gimmickery," along with numerous internal emails, reports and memoranda focused on ways to reclassify loans to make the company's financial picture look better. *Id.* at ¶ 11(h)-(m). Plaintiffs also allege that Defendants *changed* the company's accounting practices during the class period, for example, the ways in which the company calculated loan loss reserves, in order to make the company's financial picture look better. *Id.* at ¶ 11(o). Plaintiffs describe how the individual defendants met daily to devise ways to reduce loan losses. *Id.* at ¶ 12(e). Defendant Cai was warned by a senior officer of the company that the new treatment of fraud losses and credit losses was inappropriate. *Id.* at ¶ 12(f). Defendant Lent received weekly status reports regarding the need to reclassify more credit losses into fraud losses. *Id.* at ¶ 13(e). Defendant Rigione received memoranda informing him that the company was adjusting its charge-off rates after excluding delinquent loans that had been categorized as loans for sale, and Rigione knew that this methodology was improper. *Id.* at ¶ 14(f)-(g).

*5 The Court concludes that the factual allegations in the SAC, taken as a whole, are sufficient to give rise to a strong inference of Defendants' scienter. The Court is not persuaded by Defendants' argument that the certification of the company's financials by its outside auditor, Ernst & Young, LLP ("E & Y"), negates or weakens the inference of scienter. Plaintiffs originally named E & Y as a defendant in this action based upon allegations that E & Y was a knowing participant in a scheme to defraud the market and in colluded in accounting improprieties. E & Y has settled with Plaintiffs. Under these circumstances, the fact that E & Y certified the financials does not raise an inference that the financials were appropriate or that Defendants were entitled to rely upon E & Y's certification.

The Court notes that three of the four Defendants named in the § 10(b) claim sold stock during the class period. While the stock sales resulted in large monetary profits (approximately $7.5 million for Lent), the percentage of stock sold was not excessive (less than 15% for Lent) and it is not clear that the sales were out of line with prior activity. Plaintiffs do allege, however, that the sales occurred after Lent instructed company employees not to sell stock for fear of depressing the stock price. SAC ¶ 142. It is somewhat suspicious that three out of the four individual defendants sold anyway.

In summary, the Court concludes that Plaintiffs have cured the defects noted in the Court's prior order, and have alleged facts sufficient to state a § 10(b) claim against Defendants Lent, Hashman, Rigione and Cai.

B. Section 20(a) Claim

Section 20(a) of the Exchange Act imposes joint and several liability on any "person who, directly or indirectly, controls any person liable" for securities fraud, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violations. 15 U.S.C. § 78t(a). Plaintiffs allege a § 20(a) claim against Lent, Hashman, Rigione and Cai, and also against Qureshey.

The Court concludes that Plaintiffs have alleged a sufficient factual basis to impose control person liability against Lent, Hashman, Rigione and Cai. Plaintiffs allege with particularity what positions each of these individuals held, and how and to what extent these individuals participated in the day to day workings of the company. SAC ¶¶ 11-14.

However, the Court concludes that Plaintiffs have not alleged a sufficient factual basis to impose control person liability against Qureshey. Unlike the other individual defendants, Qureshey was an outside director of the company and a member of the Audit Committee and Compensation Committee. SAC ¶ 15(a). The Court is unaware of any authority for the proposition that an outside director may be held liable under § 20(a). Moreover, while Plaintiffs do allege that Qureshey met with the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.))**

company's CFO to review accounting policies, financial statements and the like, Plaintiffs do not allege that Qureshey was involved in the day to day management of the company. *See* SAC ¶¶ 15(b)-(g). Accordingly, the § 20(a) claim against Qureshey is subject to dismissal.

*6 Leave to amend is to be granted with extreme liberality in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA are so difficult to meet. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003). The United States Supreme Court has articulated the applicable standard as follows:

In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Here, given the nature of Qureshey's position with the company, and the absence of authority for holding an individual in his position liable under § 20(a), together with the fact that Plaintiffs have failed to assert a viable claim against Qureshey on two separate occasions, the Court concludes that granting leave to amend the § 20(a) allegations against Qureshey would be futile. Accordingly, the Court concludes that leave to amend is not appropriate notwithstanding the liberal standards set forth above.

### III. ORDER

(1) The motions to dismiss of Defendants Lent, Hashman, Rigione and Cai are DENIED; and

(2) The motion to dismiss of Defendant Qureshey is GRANTED WITHOUT LEAVE TO AMEND.

N.D.Cal.,2006.

In re Nextcard, Inc. Securities Litigation
Not Reported in F.Supp.2d, 2006 WL 708663 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.