# EXHIBIT H

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.), Fed. Sec. L. Rep. P 91,035
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.))**

Page 1

▷
In re Peoplesoft, Inc.
N.D.Cal.,2000.

United States District Court, N.D. California.
In re PEOPLESOFT, INC., Securities Litigation
No. C 99-00472 WHA.

May 25, 2000.

William S. Lerach of Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, California, Nadeem Faruqi of Faruqui & Faruqui, New York, New York, Mark C. Gardy and Karin E. Fisch of Abbey Gardy & Squitieri LLP, New York, New York, James Jay Seirmarco of Abbey, Gardy & Squitieri, San Francisco, California, Reed R. Kathrein of Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, California, Stephen R. Basser of Barrack Rodos & Bacine, San Diego, California, for plaintiff Gulio Scottovia.
William S. Lerach of Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, California, Reed R. Kathrein of Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, California, Paul F. Bennett and Steven O. Sidener of Gold Bennett Cera & Sidener LLP, San Francisco, California, Stephen R. Basser of Barrack Rodos & Bacine, San Diego, California, for plaintiff Nienke Lels-Hohmann.
Scott A. Fink and Steven S. Kimball of Gibson Dunn & Crutcher LLP, San Francisco, California, and Jonathan C. Dickey of Gibson Dunn & Crutcher LLP, Palo Alto, California, for defendant David A. Duffield and Ronald E. Codd.
Scott A. Fink and Steven S. Kimball of Gibson Dunn & Crutcher LLP, San Francisco, California, Jonathan C. Dickey of Gibson Dunn & Crutcher LLP, Palo Alto, California, Bruce G. Murphy of the Law Offices of Bruce G. Murphy, Vero Beach, Florida, for defendant Peoplesoft, Inc.
Kevin J. Yourman and Michelle R. Johnson of Weiss & Yourman, Los Angeles, California, Michael D. Braun and Patrice L. Bishop of Stull Stull & Brody, Los Angeles, California, for movant the Gross Group.

Opinion

ALSUP, J.

INTRODUCTION

*1 This order sustains the consolidated complaint in part against defendant's motion to dismiss and holds the rest of the pleading is insufficient. Leave to amend will not be allowed.

STATEMENT

Since it went public in 1992, PeopleSoft, Inc., has been in the business of developing, selling and servicing enterprise resource planning (ERP) software. ERP software provides businesses with accounting, manufacturing, finance, customer service, human resource and other business functions. The stock price fell in early 1997 but rebounded, soaring to a high of 58 in mid-1998 but declining thereafter in fits to about twenty by year-end 1998 and to about twelve by April 1999. Throughout 1998, PeopleSoft issued forecasts for strong growth in 1999 over 1998. On January 28, 1999, however, PeopleSoft revealed it was firing 400 employees, did so, and then fired yet another 400 (Compl. P 2). [FN1] Revenue did not grow in 1999 and 1999 EPS was a very small fraction of 1998 EPS. Management was sacked or resigned, including David Duffield, a co-founder and chairman and CEO at all material times. A large number of securities suits followed. They were consolidated. Julio Sottoavia and others were named lead plaintiffs (before the case was reassigned to the present judge). Class counsel are Milberg, Weiss, Bershad Hynes & Lerach LLP, and Barrack, Rodos & Bacine. Now pending are motions to dismiss the consolidated complaint.

> FN1. This and all subsequent references are to the consolidated complaint.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 2
Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.), Fed. Sec. L. Rep. P 91,035
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.))**

ANALYSIS

The Court has read the consolidated complaint a number of times and heard argument. Two rounds of supplemental submissions were requested. Based on the allegations made and the supplemental submissions, the Court holds that the consolidated complaint (as supplemented) states a claim as to the earnings forecasts and certain statements made after the April 1998 sales representatives meetings described in Paragraph 92(r). Those include the:

. May 27, 1998, forecast by David Duffield and Ronald Codd for 40% to 45% three-to-five-year revenue and EPS growth with 1999 revenues of $ 1.7-2.0 billion and 1999 EPS of $ .88 to $ .92, to be followed by further growth in revenues and EPS in 2000 (P 93).

. June 23, 1998, forecast by Ronald Codd to the same effect (P 100).

. July 21-23, 1998, forecasts by the same two defendants to the same effect (P 103).

. September 3, 1998, forecast virtually to the same effect (P 105).

. October 20, 1998, forecast for 1999 by Ronald Codd of 25% to 35% growth in revenue over 1998 levels (P 120).

. October 21-23, 1998, forecasts by the same two defendants for 35% three-to-five-year revenue and EPS growth with revenues for 1999 of $ 1.7 to $ 2 billion and 1999 EPS of $ .75 to $ .80 to be followed by further growth in revenues and EPS in 2000 (P 119).

. November 2-3, 1998, forecast by David Duffield and Ronald Codd to the same effect (P 122).

Significantly, each of these statements was jointly made in person by Messrs. D. Duffield and R. Codd (except for the June 23 forecast and the October 20 forecast by Mr. Codd).

*2 At all of these conferences (or virtually all), Messrs. Duffield and Codd also made the following factual representations (PP 93, 100, 103, 105, 119, 120). They represented that the Red Pepper acquisition was a success and that the Red Pepper ERP manufacturing module, as adopted by PeopleSoft, was performing well and succeeding in the marketplace. This was untrue based on the allegations about widespread product rejection and loss of customers such as Coca Cola and Texas Instruments and the allegation concerning the disastrous failure of the Red Pepper acquisition (PP 10, 14(a), 36, 37). Messrs. Duffield and Codd also represented that PeopleSoft was successfully competing in the highend of the ERP market due to the technological superiority of PeopleSoft 7.0, which provided as good or better functionality as counterparts from the competition. This statement was false in light of the allegations, convincingly set forth at least as a matter of pleading, concerning saturation of PeopleSoft's products with defects (PP 14, 34-37, 92, 116, 124). All of these statements were material or so it would appear based on the pleadings.

With respect to scienter, the PLSRA provides:

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*15 U.S.C. 78u-4* (b)(2). This provision imposed a higher pleading standard with respect to scienter in 1934 Act cases, as the Ninth Circuit recently and emphatically held in *In re Silicon Graphics, Inc., Securities Litigation, 183 F.3d 970 (9th Cir.1999)*. The Court finds, however, that the consolidated complaint raises a "strong inference" of the required degree of scienter with respect to defendants David Duffield, Ronald Codd and the company itself. This finding is based on allegations that:
1. PeopleSoft's flagship software products were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.), Fed. Sec. L. Rep. P 91,035
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.))**

laced with an abnormally large number of bugs and limitations because, beginning in 1997, management rushed versions 7.0 and 7.5 to the marketplace prematurely, under pressure to meet intense competition from Oracle, SAP and Baan. The unavoidable result was customer dissatisfaction and declining revenue. This problem was compounded by management's decision to eliminate its on-staff of "customer advocates," whose function had been to interface with large customers and to anticipate and to cure implementation problems (P 34). Even the company has admitted that, in retrospect, the products were released with too many bugs (P 18).

2. The defects with PeopleSoft's core products were so bad that major customers were complaining, refusing to pay, and even banding together and threatening to sue PeopleSoft over the defects (PP 36, 37). The complaint was vague as to *when* management would have been aware of the severity of the marketplace's grievances. The supplemental submissions, while not fully responsive, convince the Court that management would have been well aware by May 1998. In the case of the governmental customers, the threats to sue came as early as 1997. Bugs in the university module surfaced in 1997 and continued to be reported to management throughout 1998. A major customer, Coca Cola, refused to buy the manufacturing module in April 1998, which had to be a significant setback known in the highest circles. The alleged reason was its fragility and defects. (So too with Texas Instruments, although the timing of its rejection of PeopleSoft is unclear.)

*3 3. By April 1998, field representatives were telling management in loud and "highly confrontational" terms that quotas and budgets could not be met, so contentiously that management fired the naysayers (PP 12, 40). Whether or not these quotas were public is not the issue. What is important is that the field representatives were plainly telling management that their expectations were unattainable. Top management was on notice.

4. Senior management affirmatively touted its long-term "high visibility" to see into the future and to make reliable forecasts based on the long lead time needed to design and to implement ERP installations. This same visibility can be presumed to have given them the ability to see the downturn before it was reported (PP 4, 29, 41). PeopleSoft named its forecasting system the "Sales Pipeline Forecast."

5. David Duffield, the co-founder, president and CEO, has admitted publicly *that by mid-1998*, he realized that he "just didn't have the skill set to manage the day-to-day activities of a billion-dollar company" (P 17).

6. Ronald Codd was the Senior Vice President-Finance and Administration and CEO (P 24(c)). By virtue of that position and his key role in management, the Court presumes that Mr. Codd knew the foregoing alleged facts, as set forth below.

7. David Duffield received over $ 158 million from the sale of PeopleSoft stock held by him during 1997-1999, a large part of which was sold after May 27, 1998.

Scienter may be proven and pled by reference to circumstantial evidence, for it is rare that perpetrators of a fraud would confess outright. *Silicon Graphics* itself recognizes this (in allowing insider trading to support the inference) (*Silicon Graphics, 183 F.3d at 986*). To be sure, the circumstantial evidence (plus any other direct evidence) must still give rise to a "strong inference," but once it does so, no more is required to satisfy the PSLRA's scienter threshold.

Scienter includes *knowledge* of falsity. Examples of circumstances from which guilty knowledge may be inferred are: contemporaneous receipt of a report with information directly at odds with an alleged misrepresentation, the inference being that the conflicting data was timely read and remembered; and statements by witnesses that they told the actor the true facts before the false statement was made, the inference being that the actor heard and remembered the information, saw the discrepancy,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.), Fed. Sec. L. Rep. P 91,035
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.))**

Page 4

and made the statement anyway.

To these obvious types of circumstantial evidence of scienter, plaintiffs would add a presumption that facts critical to a business's core operations or an important transaction are known to the company and its key officers. In *Epstein v. Itron, Inc., 993 F.Supp. 1314 (E.D.Wash.1998)*, Judge Whaley held:

As the Second Circuit has noted, the fact that a particular matter constitutes a significant source of income to a company can establish a strong inference that the company and its relevant officers knew of easily discoverable additional facts that directly affected that source of income. *See Cosmas v. Hassett, 886 F.2d 8, 10 (2d Cir.1989)* (attributing to directors knowledge of recently imposed import restrictions that directly affected company's prospective sales). In other words, facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers. In this case, plaintiff's allegations regarding the incompatibility of Itron's ERTs and its Fixed Network AMR are these types of facts. If it is true, as plaintiff alleges, that Itron's core product is technologically incapable of meeting requirements that are central to Itron's continued arrival as a business entity, it can be strongly inferred that key officers like Humphreys had knowledge of this fact.

*4 *993 F.Supp. at 1325-26.* Although this decision predated *Silicon Graphics,* the decision was issued after the PSLRA and expressly took the PSLRA scienter standard into account. *See also Cosmas v. Hassett, 886 F.2d 8, 12-13 (2d Cir.1989); Cohen v. Koenig, 25 F.3d 1168, 1174 (2d Cir.1994).* This Court agrees with Judge Whaley's analysis with the following proviso. Like all other circumstantial inferences, the persuasive force of each situation must be evaluated individually. Rote allegations about "hands-on" managers and "important" transactions should not, by themselves, be enough to demonstrate a strong inference of scienter. Each set of "important transactions" must be assessed based on the specificity alleged. Here, the Court finds that it is reasonable to conclude that Messrs. Duffield and Codd were aware of the loss of major customers and the massive defects in their flagship products.

With respect to loss causation, the Court agrees with plaintiff that the consolidated complaint adequately alleges that the stock price was inflated during the class period due to the failure to disclose known bad news and due to forecasts for 1999 that were unrealistic when made. *Basic, Inc. v. Levinson, 485 U.S. 224, 99 L.Ed.2d 194, 108 S.Ct. 978 (1988).* The Court also agrees with plaintiff that the misstatements were sufficiently material, at least at the pleading stage. *TSC Indus. v. Northway, Inc., 426 U.S. 438, 449, 48 L.Ed.2d 757, 96 S.Ct. 2126 (1976).* An investor in PeopleSoft would have wanted to know, for example, that its flagship products were riddled with bugs and were floundering in the marketplace.

It is true that many of the statements challenged were made to third-party securities analysts. Defendants are wrong, however, that plaintiff must plead "entanglement." It is enough to plead that defendants made the statements *to analysts* with the intent, as here, that analysts communicate them to the market. *Cooper v. Pickett, 137 F.3d 616, 624 (9th Cir.1997).* Analysts have such clear and immediate influence on the stock market that, under the fraud-on-the-market theory approved by the Supreme Court, misleading the analysts is tantamount to misleading the market.

Finally, it is also true that these forecasts were forward-looking. The safe harbor of the PSLRA, however, does not immunize them from suit, at least based on the present record. The complaint itself admits little that would come close to satisfying the PSLRA safe harbor. *13 U.S.C. 78u-5* (c). As permitted by *15 U.S.C. 78u-5* (e), the motion to dismiss attaches a partial transcript of the September 3, 1998 conference call (Exh. L). The transcript, however, is not complete. And, *arguendo,* assuming judicial notice would be proper on this issue, it still

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 5
Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.), Fed. Sec. L. Rep. P 91,035
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.))**

is hard to conclude at the pleading stage that the risk disclosures incorporated by reference were adequate and "meaningful" in light of the alleged severe problems not disclosed in the risk factors. For the same reason, the "bespeaks caution" doctrine will not be applied at the pleading stage on this record.

**\*5** As to all other defendants and statements, the Court finds that the complaint fails to state a claim under the PSLRA, mainly due to the failure to allege a strong inference of scienter. Given the extremely long period of time plaintiffs had to compose the existing consolidated complaint, given the age of this case, and given the need to move it to resolution, leave to amend is DENIED.

N.D.Cal.,2000.
In re Peoplesoft, Inc.
Not Reported in F.Supp.2d, 2000 WL 1737936 (N.D.Cal.), Fed. Sec. L. Rep. P 91,035

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.