# EXHIBIT C

1 of 12 DOCUMENTS

**TEAMSTERS LOCAL 445 FREIGHT DIVISION PENSION FUND, Plaintiff-Appellee, -- v. -- DYNEX CAPITAL INC. and MERIT SECURITIES CORPORATION, Defendants-Appellants, STEPHEN J. BENEDETTI, THOMAS H. POTTS, LEHMAN BROTHERS, INC. and GREENWICH CAPITAL MARKETS, INC., Defendants.**

Docket No. 06-2902-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*2008 U.S. App. LEXIS 13449*

**January 30, 2008, Argued**
**June 26, 2008, Decided**

**PRIOR HISTORY:** [*1]
Interlocutory appeal from a partial denial of a motion to dismiss in a securities fraud action in the United States District Court for the Southern District of New York (Harold Baer, Jr., Judge). Defendants-Appellants Dynex Capital and Merit Securities argue that the district court erred in finding that plaintiff adequately pleaded scienter as to the corporate defendants even though it did not successfully plead scienter as to any specific individual defendant.
*In re Dynex Capital Secs. Litig., 2006 U.S. Dist. LEXIS 4988 (S.D.N.Y., Feb. 10, 2006)*

**DISPOSITION:** VACATED and REMANDED.

**COUNSEL:** JOEL P. LAITMAN (Kurt Hunciker and Frank R. Schirripa, on the brief), Schoengold Sporn Laitman & Lometti, P.C., New York, N. Y., for Plaintiff-Appellee.

EDWARD J. FUHR (Terence J. Rasmussen and Joseph J. Saltarelli, on the brief), Hunton & Williams LLP, New York, N.Y., for Defendants-Appellees.

Carter G. Phillips, Sidley Austin LLP, Washington, D.C., for Amici Curiae Business Roundtable, Chamber of Commerce of the United States of America, Financial Markets Association, and Securities Industry Association.

Daniel J. Popeo, Washington, D.C., for Amicus Curiae Washington Legal Foundation.

Edward Labaton, Goodkin Labaton Rudoff & Scharow, New York, N.Y., for Amicus Curiae National Association of Shareholder and [*2] Consumer Attorneys.

Eric Alan Isaacson, Coughlin Stoa Geller Rudman & Robbins LLP, San Diego, Cal., for Amicus Curiae Amalgamated Bank.

Stanley D. Bernstein, Bernstein Liebhard & Lifshitz, LLP, New York, N.Y., for Amici Curia States of Mississippi, New Jersey, New Mexico, and Rhode Island; Iowa Public Employees' Retirement System; Pennsylvania Public School Employees' Retirement System; Pennsylvania State Employees' Retirement System.

**JUDGES:** Before: WALKER, CALABRESI, and POOLER, Circuit Judges.

**OPINION BY:** JOHN M. WALKER, JR.

**OPINION**

JOHN M. WALKER, JR., *Circuit Judge*:

In this putative securities fraud class action, defendants-appellants Dynex Capital Inc. ("Dynex") and Merit Securities Corp. ("Merit") appeal an order entered on February 10, 2006 in the District Court for the Southern District of New York (Harold Baer, Jr., *Judge*) denying a motion by Dynex and Merit to dismiss the action as to them. On appeal, defendants argue that the district court erred when it found that plaintiff had successfully pleaded scienter against Dynex and Merit despite failing to find scienter pleaded as to any specific officer or employee of either company. They also assert that certain aspects of this action are barred by standing [*3] rules and the applicable statute of limitations.

Although there are circumstances in which a plaintiff may plead the requisite scienter against a corporate defendant without successfully pleading scienter against a specifically named individual defendant, the plaintiff here has failed to do so. As a result, we vacate the district court's order and remand with instructions to dismiss Teamsters' complaint but allow them an opportunity to replead. It is not necessary, on this interlocutory appeal, to reach defendants' arguments concerning standing and the statute of limitations.

## BACKGROUND

Dynex, a Virginia-based financial services company, invests in bonds secured by mortgages on manufactured housing. Merit is one of its subsidiaries. Stephen Benedetti served as president and CEO of Merit at all relevant times, and also held various officer and director positions at Dynex. Thomas Potts served as Dynex's president and principal executive officer from 1997 to June 2002.

Between 1996 and 1999, Merit made thousands of loans to people seeking to buy manufactured homes. In March and August of 1999, Merit pooled these loans and issued two sets of asset-backed securities secured by the loans, the [*4] Series 12 Bonds and the Series 13 Bonds, with the income generated by the loans as collateral. Each series was backed by a separate pool of loans, and each was divided into several classes.

After the bond issue, the value of the collateral began a sharp decline. Increasing numbers of borrowers defaulted on their loans: in August 1999, 1.35% of Merit's borrowers were delinquent, but, by November 2001, that figure had risen to 5.01%. During the same period, Merit's "loss severities," namely, the difference between amounts loaned to finance home purchases and the lesser amounts realized from the sale of those properties after foreclosure, also increased. In other words, not only were more people defaulting on their loans, but each default was becoming more financially damaging to Merit.

In October 2003, Dynex disclosed that it had understated the repossession rates on the Series 13 Bond collateral by approximately 34%. At the same time, Moody's Investor Service began a review of the bonds, with an eye toward downgrading their credit ratings. On February 24, 2004, Moody's downgraded the Series 13 Bonds' rating from "high quality" to "speculative," based partly on the collateral's rising [*5] repossession rates. In March, Fitch Ratings issued a similar downgrade for the Series 12 Bonds. In April 2004, Merit disclosed that it had identified "an internal control deficiency" related to the recording of loan losses, and would therefore restate its earnings for two periods in 2003. In the aftermath of these events, the prices of the various classes of Series 12 and 13 Bonds decreased by varying amounts, up to 85%.

In February 2005, plaintiff-appellee Teamsters Local 445 Freight Division Pension Fund ("Teamsters"), which had purchased approximately $ 450,000 worth of Dynex's Series 13 Bonds in early 2002, filed an action in the Southern District of New York alleging violations of *sections 10(b)* and *20(a)* of the Securities Exchange Act of 1934 ("Exchange Act"). Teamsters named Dynex and Merit as corporate defendants, and Benedetti and Potts as individual defendants. Teamsters brought the putative class action "on behalf of all open market purchasers of Series 12 and 13 bonds between February 7, 2000 and May 13, 2004." (the "class period"). *In re Dynex Capital, Inc. Sec. Litig.*, No. 05-civ-1897, 2006 U.S. Dist. LEXIS 4988, 2006 WL 314524, at *1 (S.D.N.Y. Feb. 10, 2006) (Dynex I). There is no allegation, however, [*6] that Teamsters purchased the Series 12 bonds.

The complaint alleged that Dynex, a late entrant to the manufactured homes financing market looking to increase its market share, had to purchase loans made to "uncreditworthy borrowers." *Id.* In order to do so, they "overtly" told dealers that they were willing to buy "bad paper" (i.e., very risky loans) and failed to disclose these practices in the offering materials that accompanied the 1999 bond issues. *Id.* After the initial offering and throughout the class period, Teamsters alleges, the defendants "misrepresented the cause of the bond collateral's poor performance; misrepresented the reasons for restating its loan loss reserves; and concealed the loans' faulty underwriting." *Id.* The defendants moved to dismiss the complaint, claiming, *inter alia*, that Teamsters had failed to adequately plead scienter.

The district court agreed with defendants that Teamsters "ha[d] failed to adequately plead scienter with respect to Potts and Benedetti," the individual defendants. *2006 U.S. Dist. LEXIS 4988, [WL] at *9.* Although Teamsters "aptly described a pattern of reckless corporate behavior," they did not "allege[] that Potts or Benedetti saw or had access to specific reports [*7] or statements that indicated malfeasance," nor "directly supervised or knew of any identified individual(s) who were engaged in specific wrongdoing," and therefore "failed to link that [reckless] behavior to any culpable individuals." *Id.* Because plaintiff's complaint did not show that Potts or Benedetti's "culpability [was] based upon more than [each man's] mere position in the corporate hierarchy," *2006 U.S. Dist. LEXIS 4988, [WL] at *8*, the district court determined that it did not satisfy the heightened scienter pleading requirement of the Public Securities Litigation Reform Act (the "PSLRA").

As to the corporate defendants Dynex and Merit, however, the district court found scienter adequately pleaded. "A plaintiff may, and in this case has, alleged scienter on the part of a corporate defendant without pleading scienter against any particular employees of the corporation." *2006 U.S. Dist. LEXIS 4988, [WL] at \*9*. The district court noted plaintiff's allegation that "Dynex systematically originated defective loans, despite clear signs that borrowers were not creditworthy." *2006 U.S. Dist. LEXIS 4988, [WL] at \*10*. In its view, these allegations allowed the inference that "officers and employees of the corporate defendants had the motive and opportunity to commit fraud." [\*8] *Id.* The district court found that, because plaintiff's allegations constituted strong circumstantial evidence of recklessness, a sufficiently culpable mental state, Teamsters had successfully alleged scienter as to Dynex and Merit. *Id.* The district court denied defendants' motion for reconsideration, but certified the issue for an interlocutory appeal. *In re Dynex Capital, Inc. Sec. Litig.*, No. 05-civ-1897, 2006 U.S. Dist. LEXIS 35386, 2006 WL 1517580 (S.D.N.Y. June 2, 2006).

## DISCUSSION

We review the denial of a motion to dismiss the complaint de novo, accepting the truth of each factual allegation it contains. *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 267 (2d Cir. 2006). While we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, *see id.*, section 21D(b)(2) of the PSLRA, which governs scienter pleading in securities fraud actions, establishes a more stringent rule for inferences involving scienter, and requires that a plaintiff's complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2)*.

Congress did not define "strong inference," but the Supreme Court has recently [\*9] held that, to qualify as "strong," an "inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-05, 168 L. Ed. 2d 179 (2007). The Court has also defined the required state of mind as "a mental state embracing intent to deceive, manipulate, or defraud." *Id. at 2507* (internal quotation marks and citation omitted). In addition to actual intent, the Second Circuit has also concluded that recklessness is a sufficiently culpable mental state in the securities fraud context. *See Novak v. Kasaks*, 216 F.3d 300, 308-09 (2d Cir. 2000). In *Novak*, we also summarized our case law in this area as suggesting that the required strong inference may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

*Id. at 311* (internal citations omitted).

Appellants [\*10] Dynex and Merit contend that the district court's finding that the Teamsters' complaint did not raise a strong inference of scienter with regard to the individual defendants, Potts and Benedetti, precludes as a matter of law the finding of such an inference with regard to the corporate defendants. Thus, they argue that the refusal to dismiss as against Dynex and Merit rests on a legal error; namely, the district court's belief that "[a] plaintiff may, and in this case has, alleged scienter on the part of a corporate defendant without pleading scienter against any particular employees of the corporation." *Dynex I 2006 U.S. Dist. LEXIS 4988, [WL] at \*10*. To accept this view, defendants contend, would be tantamount to endorsing a doctrine of "collective scienter," which posits, contrary to "settled principles of corporate liability," that a corporate entity can act with an intent that is not derivative of the intent of one of its agents. Appellants' Br. at 17.

In support of their position, defendants point to *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843 (2d Cir. 1981). In that case, we affirmed a grant of summary judgment for a securities-fraud defendant because "there [wa]s *no evidence* on the record...that [\*11] [Fluor director of investor relations] Russler *or any other Fluor officer* acted with scienter." *Id. at 853* (emphasis added). To the defendants, this demonstrates this court's view that "[t]he lack of scienter on the part of the corporation's agents precluded any finding of scienter on the part of the corporation." Appellants' Br. at 18.

The language emphasized above clearly distinguishes Fluor from the instant case. In *Fluor*, there was "no evidence" of scienter as to "Russler or any other Fluor officer." 654 F.2d at 853. In this case, by contrast, while the district court similarly found no evidence of scienter on the part of the specifically named officers, it did find sufficient allegations of scienter as to other unnamed "officers" of the company. *See Dynex I 2006 U.S. Dist. LEXIS 4988, [WL] at \*10*. Specifically, the district court found Teamsters' allegations "sufficient to infer that officers and employees of the corporate defendants had the motive and opportunity to commit fraud." *Id.* And under *Novak*, properly alleging an individual's mo-

tive and opportunity to commit fraud is one way of raising a strong inference of scienter as to that individual. *See 216 F.3d at 307.*

Furthermore, defendants' reliance on *Fluor,* [*12] a case decided over a decade before the enactment of PSLRA, and one involving a motion for summary judgment, rather than a motion to dismiss (as here), demonstrates the fundamental flaw in their argument: they improperly conflate pleading rules and liability rules. To prove liability against a corporation, of course, a plaintiff must prove that an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to the corporation. *See, e.g., Fluor, 654 F.2d at 853; Makor Issues & Rights, Ltd. v. Tellabs, Inc., 513 F.3d 702, 708 (7th Cir. 2008).*

To survive a Rule 12(b)(6) motion under the PSLRA, a plaintiff must only state facts "giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2).* When the defendant is a corporate entity, this means that the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter. In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant. But it is possible [*13] to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant. As the Seventh Circuit recently observed in the wake of the Supreme Court's remand in *Tellabs,*

> [I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud. Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

*Makor Issues & Rights, 513 F.3d at 710.* Accordingly, we reject appellants' contention that Teamsters failed as a matter of law to plead scienter against Dynex and Merit when it failed to plead scienter against Potts and Benedetti. Congress has imposed strict requirements on securities fraud pleading, but we do not believe they have imposed the rule urged by defendants, that in no case can corporate scienter be pleaded in the absence of successfully pleading scienter as to an expressly [*14] named officer.

Nevertheless, because we review the denial of a motion to dismiss de novo, we must still determine whether Teamsters has raised a "strong inference" of scienter against Dynex and Merit.

Teamsters argues that their complaint satisfies the pleading requirements of the PSLRA, as explained in *Novak,* in three ways. First, they claim that they have sufficiently pleaded that Dynex "knew facts or had access to information suggesting that their public statements were not accurate," *Novak, 216 F.3d at 311,* because senior executives such as Potts and Benedetti had access to "collection data" which "reflected the high percentage of Buy Fair [sic] Loans, First Payment Default delinquencies and failed or impaired repossessions." Complaint at 14-15, PP 27-28. These data, Teamsters claims, would reveal "that the true reason" for the underperforming bond collateral was "the manner in which the collateral was originated." *Id.* But, as we observed in *Novak,* "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *216 F.3d at 309.* Teamsters' broad reference to raw data lacks even an allegation [*15] that these data had been collected into reports that demonstrated that loan origination practices were undermining the collateral's performance. Accordingly, they have not raised an inference of scienter based on knowledge of or access to information demonstrating the inaccuracy of Dynex's public statements.

Teamsters' second contention fails for much the same reason. They argue that they have raised an inference of scienter by alleging that "the defendants failed to review or check information that they had a duty to monitor." *Id. at 308.* But again, they have not specifically identified any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements.

Finally, Teamsters argues it satisfied *Novak's* "motive and opportunity prong" by demonstrating that unspecified employees or officers of Dynex and Merit, and, by imputation, the corporate entities themselves, benefitted "in a concrete and personal way" from the alleged fraud. Appellee's Br. at 30 (citing *Novak, 216 F.3d at 311).* Their motive, according to Teamsters, was to avoid "fully disclos[ing] the [*16] impaired quality of the collateral." *Id.* This alleged motive is insufficient. In *Novak,* we observed that "[p]laintiffs could not proceed based on motives possessed by virtually all corporate insiders, including . . . the desire to . . . sustain the appearance of

corporate profitability, or of the success of an investment." *216 F.3d at 307* (internal quotation and citation omitted). Teamsters' proffered motive is the same desire to maintain the appearance of profitability that we have consistently rejected as insufficient in securities fraud pleading. *See Chill v. GE, 101 F.3d 263, 268 (2d Cir. 1996)* ("[I]f scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." (internal quotation marks and citation omitted)).

In sum, Teamsters fails to allege the existence of information that would demonstrate that the statements made to investors were misleading, e.g., information showing that the primary cause of the bonds' poor performance was *not* the general weakness in the mobile homes market. They have also failed to allege that anyone at Dynex or Merit [*17] had a compelling motive to mislead investors regarding the bonds. As a result, a number of competing inferences regarding scienter arise. One might infer that no one at Dynex or Merit found the statements misleading because they identified the cause of the bonds' performance as accurately as possible, or that no one responsible for the statements made to investors had reason to believe that Dynex employees were systematically flouting its underwriting guidelines or giving them false information about the cause of the bonds' poor performance. Teamsters would have us infer that *someone* whose scienter is imputable to the corporate defendants and who was responsible for the statements made was at least reckless toward the alleged falsity of those statements. We cannot say, based on the allegations in the complaint, that this inference is "at least as compelling" as the competing inference, *Tellabs, 127 S. Ct. at 2505*; i.e., that the statements either were not misleading or "were the result of merely careless mistakes at the management level based on false information fed it from below." *Makor Issues & Rights, 513 F.3d at 709*. Accordingly, the PSLRA requires dismissal of the complaint. [*18] We note, however, that before it authorized the interlocutory appeal at bar, the district court granted plaintiff leave to replead within 30 days. We believe this course to be proper on remand, with respect to both the individual and corporate defendants.

Finally, defendants argue that the plaintiff lacks standing to represent the Series 12 bondholders, and that the statute of limitations has run as to some of the statements plaintiff alleges to be fraudulent. While we have discretion to address these issues on an interlocutory appeal, *see Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996)*, we decline to do so at this stage, as the resolution of these issues will not "materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED insofar as it denied the motion to dismiss defendants Dynex and Merit. The case is REMANDED with instructions to dismiss as to these two defendants with leave to replead.