1   COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
2   JEFFREY W. LAWRENCE (166806)
    SHIRLEY H. HUANG (206854)
3   100 Pine Street, Suite 2600
    San Francisco, CA  94111
4   Telephone:  415/288-4545
    415/288-4534 (fax)
5   jeffreyl@csgrr.com
    shuang@csgrr.com
6
    Lead Counsel for Plaintiffs
7

8   ORRICK, HERRINGTON &
    SUTCLIFFE LLP
9   ROBERT P VARIAN (107459)
    JONATHAN B. GASKIN (203625)
10  AMY M. ROSS (215692)
    DANIELLE P. VAN WERT (218245)
11  ERIN H. REDING (252691)
    The Orrick Building
12  405 Howard Street
    San Francisco, CA 94105
13
    Attorneys for Defendants
14

15                 UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17  DANNY McCASLAND, Individually and On    )   No. C-07-05545-SI
    Behalf of All Others Similarly Situated,     )
18                                           )   **(Consolidated)**
                              Plaintiff,     )
19                                           )   <u>CLASS ACTION</u>
             vs.                             )
20                                           )   JOINT CASE MANAGEMENT
    FORMFACTOR, INC., et al.,                )   STATEMENT AND [PROPOSED] ORDER
21                                           )
                              Defendants.    )   DATE:            July 25, 2008
22  _____ )   TIME:            2:00 p.m.
                                                 COURTROOM:       The Hon. Susan Illston
23

24

25

26

27

28

1        Lead plaintiff, the City of Monroe Employees' Retirement System, and plaintiffs

2    (collectively "plaintiffs") and defendants FormFactor, Inc., Igor Y. Khandros, Ronald C. Foster,

3    Joseph Bronson, and Richard M. Freeman (collectively "defendants") jointly submit this Case

4    Management Statement in preparation for the July 25, 2008 Case Management Conference.

5    **1.    Subject matter jurisdiction and service**

6        The Court has subject matter jurisdiction over all of plaintiffs' claims based on the existence

7    of a federal question.  All parties are subject to the Court's jurisdiction, and no parties remain to be

8    served.

9    **2.    Factual and legal bases for plaintiffs' claims and defendants' defenses**

10        <u>Plaintiffs' Position</u>

11        This is a securities class action brought under §§10(b) and 20(a) of the Securities Exchange

12    Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule

13    10-5 promulgated thereunder, 17 C.F.R. §240.10b-5.  This suit is brought on behalf of all purchasers

14    of publicly-traded securities of FormFactor, Inc. ("FormFactor" or the "Company") between

15    February 1, 2006 and February 5, 2008 ("Class Period").  Plaintiffs allege that in order to be

16    competitive in the probe card industry, defendants knew that FormFactor needed to "not only be able

17    to deliver and execute the single touchdown technology, but be the front runner to develop and

18    define the industry's transition to one touchdown probe cards, as it had been during the transition

19    from nine to four touchdowns."  ¶3.[1]  In 2005, FormFactor announced development of its new,

20    proprietary "Harmony" one touchdown[2] architecture for wafer probe cards – a new technology that

21    could very well reshape the integrated circuit test industry.  ¶4.  Since this was a revolutionary

22    technology change and FormFactor's future prospects depended on it, defendants tracked it, reported

---

25    [1]    All paragraph ("¶") references are to Plaintiffs' First Amended Complaint for Violations of Federal Securities Laws ("FAC"), filed April 3, 2008.

26    [2]    A "touchdown" is the contact between the wafer probe card and the wafer, and a reduction in the number of touchdowns means a shorter lead time and testing process, thereby saving costs in the manufacturing process for the semiconductor customers.  ¶3.

1    on its progress to the market in virtually every conference call, and attempted to get Harmony into
2    production as soon as possible.

3         By February 1, 2006, defendants represented to the market, "We have completed our first
4    Harmony architecture probe card field trial . . . .  Product performance exceeded expectations.  We
5    expect to see significant revenues for our probe card based on Harmony platform in the second half
6    of '06 . . . .  Harmony will be the cornerstone of flash and then DRAM for the next several years."
7    ¶6.

8         Unbeknownst to the public, while the first Harmony product was introduced to the market in
9    June 2006, FormFactor in fact could not ramp up Harmony volume production on a timely basis
10   because of the chronic poor yields that pre-existed but exploded during the Class Period.  ¶¶55-57.
11   Five of plaintiffs' confidential witnesses confirm that the chronic, protracted problems with
12   Harmony's manufacturing had existed since 2006.  ¶¶55-57.  In order to conceal FormFactor's
13   underlying manufacturing problems, defendants engaged in a fraud scheme to mislead investors by
14   hiding the Company's manufacturing issues and chronic poor yields and by overstating its inventory.
15   Several witnesses who worked at FormFactor indicated that the poor yields in the manufacturing
16   process were chronic and widely known among Company management, but the senior executives
17   never publicly acknowledged them when making projections or forecasts.  ¶¶11, 53-64.

18        The chronic poor yields also led to the build-up of scrap, *i.e.* obsolete parts for wafer probe
19   cards.  Prior to and during the Class Period, defendants manipulated the Company's reported gross
20   margin by improperly accounting for excess and obsolete inventory as Research and Development
21   ("R&D") costs instead of as cost of revenues.  As part of the fraudulent scheme, defendants directed
22   lower-ranked personnel to improperly transfer the costs associated with scrap that accumulated from
23   poor yields from engineering and production from the manufacturing department to R&D.
24   Thereafter, the cost of scrap was written off as R&D.  As corroborated by several witnesses who
25   worked at FormFactor, the transfer of scrap was done in order to avoid recognizing the costs as
26   current period cost of revenues.  In fact, given the magnitude of the accumulated scrap, the Company
27   had a special task force of personnel from finance, operations and IT departments to work on a
28   "scrap project," which involved "moving a few million dollars [of scrap] here and there" on an on-

1  going basis, according to CW9, who was part of this task force.  ¶71.  The R&D group performed

2  very limited testing, if any, on scrap inventory.  As a result, the costs associated with scrap did not

3  qualify for R&D costs and should have been written off through the Company's cost of revenues.

4  This manipulation caused the Company's cost of revenues to be understated and its gross margin to

5  be overstated.  ¶¶12, 68-75.

6        To further smooth the appearance that the Company was successfully ramping its Harmony

7  products, defendants manipulated the Company's reported financials.  Specifically, in order to inflate

8  the price of FormFactor's stock, defendants caused the Company to falsely report its results for 2006

9  and the first half of 2007 through improperly accounting for its inventory valuation and the related

10  cost of revenue accounts, which misstated the Company's reported inventory, gross margin,

11  operating margin and net income.  The Company has restated its previously issued financial results

12  due to these accounting violations.  ¶¶179-203.  The Company is also in the process of completing

13  its remediation plan to address the design of controls over inventory valuation.  ¶¶208-218.

14        On February 5, 2008, almost three years after FormFactor introduced its Harmony

15  architecture for probe cards, defendants belatedly admitted to the market, "Due to the **protracted**

16  Harmony ramp issues we experienced in 2007, FormFactor was not the first full wafer contactor

17  probe card company qualified at some DRAM suppliers.  This resulted in the loss of business . . . ."

18  ¶161.  Defendants further admitted the impact of the Company's inability to execute and deliver its

19  new products.  "[O]ur new product ramp challenges with Harmony resulted in missed opportunities

20  with a few customers causing the major of the overall revenue shortfall in the quarter."  *Id.*  Upon

21  these disclosures, the stock price dropped 20% by the end of the following trading day, closing at

22  $21.06 per share.  Plaintiffs suffered economic loss as a result of defendants' scheme.

23        <u>Defendants' Position</u>

24        Defendants categorically deny the charges lodged against them in plaintiffs' FAC, which

25  they contend are unsupported by the facts or applicable law.  Defendants have made a motion

26  pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private

27  Securities Litigation Reform Act of 1995 (the "Reform Act").  Plaintiffs' FAC fails to state a claim

28

1    and fails to comply with Rule 9(b) and the Reform Act, and is a paradigm example of the

2    opportunistic lawsuits Congress targeted for dismissal in the Reform Act.

3        Plaintiffs' Section 10(b) and Rule 10b-5 claims should be dismissed for a number of reasons.

4    *First*, plaintiffs have made an impermissible attempt to plead fraud by hindsight.  *Second*, plaintiffs

5    have failed to allege that the purported misstatements were materially false or misleading with the

6    requisite particularity required by the Reform Act, including the reasons why statements at issue are

7    purportedly false or misleading.  *Third*, plaintiffs have failed to plead facts giving rise to a strong

8    inference of scienter because their allegations lack the specificity and reliability necessary to support

9    a strong inference of fraudulent intent.  *Fourth*, plaintiffs have failed to plead facts giving rise to a

10   strong inference of scienter because irrespective of particularity, their allegations do not support a

11   strong  inference of fraud under the weighing analysis mandated by the Supreme Court and the Ninth

12   Circuit, much less one that is "cogent and compelling."  Indeed, plaintiffs' allegations severely

13   undercut such an inference, and any inference of fraud would be overwhelmed by alternative

14   explanations in any event.  *Fifth*, the forward-looking statements attributed to defendants are

15   protected by the Reform Act's "safe harbor," and even if not protected, plaintiffs have failed to plead

16   specific facts showing actual knowledge of falsity.  *Sixth*, plaintiffs have failed to satisfy the

17   pleading requirements of the Reform Act with respect to forward-looking statements.  Finally,

18   plaintiffs' claims with respect to forward-looking statements are barred by the bespeaks caution

19   doctrine.

20       Moreover, plaintiffs claims under Section 20(a) should be dismissed because plaintiffs have

21   failed to allege that defendants committed a primary violation of Section 10(b) or were responsible

22   for or controlled the specific transaction or activity upon which the claim is predicated.

23   **3.    Factual and legal issues genuinely in dispute**

24       1.    Principal Factual Issues:

25       (a)    Whether defendants made materially false and misleading statements or

26   omissions during the Class Period;

27

28       (b)    Whether defendants' statements were made with scienter;

1    (c)    Whether defendants' statements caused the market price of FormFactor
2 securities to be artificially inflated during the Class Period;

3    (d)    Whether members of the class were damaged and, if so, the proper
4 measure of damages.

5    2.    Principal Legal Issues:

6    (a)    Whether defendants violated the federal securities laws; and

7    (b)    Whether the action may be certified as a class action under Fed. R. Civ. P.
8 23(a) and (b)(3).

**4.    Issues that can be narrowed by agreement or motion**

The parties believe it is premature to discuss issues that can be narrowed by agreement or motion pending the Court's ruling on defendants' motion to dismiss.

**5.    Anticipated motions**

Plaintiffs anticipate filing a motion for class certification.

**6.    Relief sought by plaintiffs**

Plaintiffs seek monetary damages.  The amount of damages sought shall be calculated by an expert and disclosed consistent with the requirements of Fed. R. Civ. P. 26.

**7.    Discovery**

Pursuant to the Court's June 30, 2008 Order Setting Case Schedule ("June 30, 2008 Order"), the parties will meet and confer regarding this matter no later than 14 days after entry of an order denying defendants' motion to dismiss, and submit a Fed. R. Civ. P. 26(f) Report no later than 14 days after completion of the meet and confer.

**8.    Reference to ADR**

Pursuant to the Court's June 30, 2008 Order, the parties will meet and confer regarding this matter no later than 14 days after entry of an order denying defendants' motion to dismiss, and submit a Joint ADR Certification with Stipulation to ADR Process or Notice of Need for ADR phone conference no later than 14 days after completion of the meet and confer.

**9.     Trial**

The parties believe that it is premature to discuss matters relating to trial.

**10.    Related cases**

The parties believe that there are no related cases pending before other judges or this Court.

**11.    Class action**

Plaintiffs believe that this action should be certified as a class action.

**12.    Earliest reasonable dates**

Pursuant to the Court's June 30, 2008 Order, the parties will meet and confer regarding this matter no later than 14 days after entry of an order denying defendants' motion to dismiss, and submit a Fed. R. Civ. P. 26(f) Report, including the earliest reasonable dates for discovery cutoff, pretrial conference, and trial, no later than 14 days after completion of the meet and confer.

**13.    Settlement**

The parties have discussed the prospects for settlement but did not reach any resolution.

**14.    Other matters that any party considers conducive to the just, speedy, and inexpensive determination of this action**

None.

DATED:  July 18, 2008                    COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
                                         JEFFREY W. LAWRENCE
                                         SHIRLEY H. HUANG


                                         _____
                                                s/ Shirley H. Huang
                                            SHIRLEY H. HUANG

                                         100 Pine Street, Suite 2600
                                         San Francisco, CA  94111
                                         Telephone:  415/288-4545
                                         415/288-4534 (fax)

                                         Lead Counsel for Plaintiffs

1

2          SULLIVAN, WARD, ASHER & PATTON, P.C.
           CYNTHIA J. BILLINGS
3          25800 Northwestern Highway
           1000 Maccabees Center
4          Southfield, MI  48075-1000
           Telephone:  248/746-0700
5          248/746-2760 (fax)

6          Additional Counsel for Plaintiff

7    DATED:  July 18, 2008          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                    ROBERT P. VARIAN
8                                   JONATHAN B. GASKIN
                                    AMY M. ROSS
9                                   DANIELLE P. VAN WERT
                                    ERIN H. REDING
10

11                                  _____/s/_____
                                            ROBERT P. VARIAN
12

13                                  The Orrick Building
                                    405 Howard Street
14                                  San Francisco, CA  94105-2699
                                    Telephone:  415/773-5700
15                                  415/773-5759 (fax)

16                                  Attorneys for Defendants

17

18          I, Shirley H. Huang, am the ECF User whose ID and password are being used to file this

19   JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER.   In compliance with General

20   Order 45, X.B., I hereby attest that Robert P. Varian have concurred in this filing.

21

22

23   T:\CasesSF\FormFactor\CMC00052686_7_18_08.doc

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following designated Internet site at:  http://securities.csgrr.com/.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 18, 2008.

s/ Shirley H. Huang
SHIRLEY H. HUANG

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

E-mail:shirleyh@csgrr.com

# Mailing Information for a Case 3:07-cv-05545-SI

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com,debh@csgrr.com

- **Shirley H. Huang**
  shirleyh@csgrr.com

- **Jeffrey W. Lawrence**
  jeffreyl@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com,GDarwish@csgrr.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Arthur L. Shingler , III**
  ashingler@scott-scott.com,ssawyer@scott-scott.com

- **Robert P. Varian**
  rvarian@orrick.com,bclarke@orrick.com

- **Shawn A. Williams**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Catherine J Kowalewski
Lerach Coughlin et al LLP
655 W Broadway #1900
San Diego, CA 92101

David C. Walton
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-3301